UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
………………………………………………………………………….………x
DAWN SUTTER

                Plaintiff,          Civ. Action No.

    -against-

JOESEPH DIBELLO, CAPTAIN, IN HIS
OFFICIAL AND PERSONAL CAPACITIES;
JOHN POSILLIPO, CAPTAIN, IN HIS OFFICIAL
AND PERSONAL CAPACITIES;
FERN FISHER, IN HER OFFICIAL AND PERSONAL
CAPACITIES; JOHN DEMARCO, MAJOR, IN HIS      **COMPLAINT**
OFFICIAL AND PERSONAL CAPACITIES;
NEW YORK STATE UNIFIED COURT SYSTEM/
OFFICE OF COURT ADMINISTRATION; JOHN BROWN,    **JURY TRIAL IS**
SERGEANT IN HIS OFFICIAL AND PERSONAL         **REQUESTED**
CAPACITIES.

               Defendants.
……………………………………………………………………………….x

Plaintiff, by her attorney, ALBERT VAN-LARE, ESQ., complaining of the Defendants alleges the following:

## PRELIMINARY STATEMENT

This case arises out of discriminatory and retaliatory conduct by Defendants against Plaintiff because of her race and disabilities.

Plaintiff, a court officer with almost two decades of meritorious services was subjected to a pattern of harassment and targeted for retaliatory treatment because she applied for reasonable accommodation as a result of a compensable injury she suffered. She was referred for an unnecessary mental health evaluation. She was also forced to travel with armed officers from Brooklyn to her home in Suffolk County, Long Island and to a train station in Long Island, and then to Manhattan all reflecting aspects of a

1

pattern of harassment and retaliation instituted by the Defendants against the Plaintiff.

Plaintiff seeks as set forth herein declaratory, injunctive and equitable relief, compensatory, liquidated and punitive damages, litigation costs and attorneys' fees for inter alia, defamation, race discrimination and retaliation suffered by her during her employment by Defendants in violation of and pursuant to 42 U.S.C §1981, Title VII, New York State Human Rights Law, New York Executive Law § 296, et seq.  ("NYSHRL"), and New York City Human Rights Law, New York City Administrative Code §§ 8-101, et seq. and 107 ("NYCHRL").

## JURISDICTION AND VENUE

1. Jurisdiction lies in this Court pursuant to 28 USC § 1331.
2. Venue is proper in this court pursuant to 28 USC § 1391.
3. State law matters in this complaint are brought pursuant to this court's supplemental jurisdiction to decide state law matters.

## PARTIES

4. Plaintiff, Dawn Sutter (herein after referred to as Plaintiff or Sutter) is employed by the Defendants as a Court Officer.
5. Sutter has been a Court Officer for over eighteen years.
6. Sutter has performed meritoriously as a court officer.

2

7. Defendant Dibello is employed by the New York Unified Court System herein after referred to (UCS.)

8. Dibello is employed as a captain by the U.C.S and retained supervisory jurisdiction over Sutter.

9. Defendant Posillipo is employed as a Captain by the U.C.S and has had supervisory jurisdiction over Sutter.

10. Fern Fisher was a former Deputy Administrative Judge for New York City Family Court, who authorized the illegal detention and discriminatory acts towards Plaintiff.

11. Upon information and belief Judge Fisher hereinafter referred to as Fisher retired from the U.C.S sometimes in 2017 after she authorized several illegal acts against Plaintiff, including the detention of Plaintiff, and illegal entry into Plaintiff's home.

12. Defendant Brown is employed by U.C.S as a Sergeant.

13. The unified Court System/ Office of Court Administration is a state agency established pursuant to the laws of the State of New York.

14. The Plaintiff and the individual Defendants were all employed by the U.C.S during the period of this complaint.

## FACTUAL ALLEGATIONS

15. Plaintiff Sutter is an employee with disabilities. Defendants are aware of Plaintiff's disabilities.

16. Sutter is able to perform her duties effectively with reasonable accommodation.

17. Sutter has suffered frequent bilateral cervical pain that radiates into her bilateral upper trapezius muscles. She suffers from stiffness and numbness/ tingling in this region of her body.

18. Sutter's pain is aggravated by prolong standing and sudden jolts she experiences during her commute to and from work.

19. Sutter also suffers from migraine and lower back pain.

3

20. The Defendants, U.C.S, Fern, Demarco, Dibello, and Posillipo are aware that Sutter suffers from the disabilities described above.

21. Defendants are also aware that these disabilities were a result of a compensable injury.

22. Plaintiff received a meritorious award for the actions which caused her compensatory injury.

23. Sutter's workers' compensation request was by the workers' compensation board based on the injuries that occurred while Sutter was at work in 2010.

24. The injuries were reaggravated and her migraine and pain began reoccurring in 2014.

25. The U.C.S was aware of these aggravated injuries and reoccurrences of Sutter's injury.

26. She was transferred to light duty as a result of the reoccurrence of the injury.

27. Although U.C.S, Fisher, Dibello, Posillipo, and Demarco (together referred to as management Defendants) were aware of Sutter's disabilities they ignored her requests to be accommodated and engaged in acts of discrimination and retaliation towards her, including refusal to honor reasonable accommodation, suspension from work, and disciplined that rendered Sutter unable to advance her professional career, because of her disabilities.

28. Sutter, on or about February 9, 2017, requested leave under the Family Medical Leave Act (FMLA) to cover intermittent use of sick time between February 2017 and December 31, 2017. The leave was only granted for one month.

29. Sutter was sent a letter informing her that she would need to reapply after the month was over to extend the FMLA.

30. The request for FMLA made on or about February 9, 2017 was based on her worsening condition including migraines, photophobia, smell sensitivity, nausea and vomiting that were associated with traveling to and from work.

31. The management Defendants refused, without any reasonable basis, to provide FMLA to Sutter.

4

32. Sutter was experiencing pain due to prolonged standing and long commute by train. In December 2016 she requested to be reassigned to a court in Nassau, Suffolk or Queens County so as to reduce her commuting time.

33. The U.C.S responded to the request to be reassigned by a letter dated December 22, 2016.

34. In the letter responding to Sutter's request to be reassigned U.C.S stated that reassignments are discretionary and usually occur with the graduation of a new recruit class. U.C.S also stated that Sutter's request was being provided to executive court managers in Queens, Nassau and Suffolk Counties for their reviews and considerations in the event an opportunity arises.

35. There have been several opportunities to affect the transfer of Sutter since December of 2016, but the management Defendants simply refused to do so notwithstanding the fact that Sutter has seniority and is eligible for the transfer as a form of reasonable accommodation.

36. The Management Defendants also chose to refer Sutter's case to the Deputy Chief Administrative Judge, for NYC Court for review as to Sutter's fitness for duty.

37. This referral was completely unnecessary and punitive because a simple request for reassignment does not warrant a referral to fitness for duty.

38. U.C.S. as a matter of official policy refers employees to fitness of duty examination of this nature that are unnecessary and inconsistent with ADA and FMLA.

39. The Deputy Chief Administrative Judge for NYC Courts at that time was Defendant, Hon. Fern Fisher.

40. By a letter dated December 22, 2016 officer Sutter's fitness for duty was referred to Hon. Fisher.

41. There was no reason to warrant a referral to Defendant Fisher because Sutter was simply requesting a reasonable accommodation.

42. Rather than reject the referral Fisher accepted it and acted in a retaliatory way by aggressively pursuing the referral and retaliatory discipline.

43. The management Defendants have developed a historic practice of referring officers who requested reasonable accommodation to fitness for duty examination.

44. Sutter and other officers who requested reasonable accommodation were routinely referred to fitness for duty examination solely on the basis of invoking reasonable accommodation pursuant to municipal state and federal anti-discrimination laws and laws protecting employees with disabilities from invidious discrimination.

45. Referring employees like Sutter who request reasonable accommodation to fitness for duty examination was calculated strategy by the management defendants to discourage court officers from benefiting from the protection and provisions of anti-discrimination laws pertaining to employees with disabilities.

46. The U.C.S as a routine and policy matter regularly referred officers who requested reasonable accommodation to fitness for duty examinations.

47. The U.C.S does not regularly refer other categories of employees including non-uniform, and administrative, and management staff to fitness for duty examination because they requested reasonable accommodation.

48. The purpose of the referral to fitness for duty examination was to frustrate officers and discourage them from applying for reasonable accommodation.

49. Sutter also applied for transfer to Queens in March 2016 based on her doctor's recommendation.

50. The March 2016 request was also to shorten her commuting time and allow her to travel without using public transportation.

51. Sutter's doctors believe that a shorter commute that does not involve Public transportation by train will avoid the risk of reoccurrence of Sutter's injury. She already suffered a reoccurrence in 2014.

52. The March 2016 request to transfer was unreasonably denied by the management Defendants.

53. Various other requests by Sutter to transfer as part of a reasonable accommodation request including a request on or about March 15, 2016 were unreasonably and summarily denied.

54. The disability for which Sutter seeks reasonable accommodation occurred on August 9, 2010 and U.C.S management Defendants are aware of the job-related injury the Plaintiff suffered and are also aware that the injury had been determined to be a compensable injury by the Workers Compensation Board.

55. In September 2016, Susan Maurer a case manager with NYS Insurance Fund Informed U.C.S that Sutter has successful established a Workers Compensation case for her neck, back, and left wrist based upon an accident that occurred on August 9, 2010.

56. On July 10, 2015, Dr. Tinari, a chiropractic doctor treating Sutter also informed U.C.S that Sutter had a compensable injury and is able to work subject to limitations involving no bending, twisting, lifting, climbing ladders or stairs, and no kneeling.

57. The report from Dr. Tinari dated July 10, 2015 was forwarded to the management Defendants on or about July 10, 2015.

58. Sutter was charged with violation of time and leave policy because she was not able to work as a result of her illness.

59. It was unnecessary and retaliatory to subject Sutter to discipline as Defendants did because she could not come to work as a result of a compensable injury.

60. Although Sutter protested the charges by explaining to the management Defendants that her absences were a result of her compensable injury, the defendants ignored Sutter's protests and chose to continue the prosecution of the charges preferred against her.

61. The charges were preferred against Sutter on or about January 13, 2016 and were approved by Defendant Fisher on or about January 13, 2016.

7

62. Defendants, including Fisher were fully aware that Sutter was on Workers Compensation and that the time for which she was charged as with "Lost Time" were periods that she was out of work due to workers compensation.

63. The Defendants did not care that Sutter's absences were as a result of a compensable injury, they decided to aggressively prosecute her for misconduct by charging her with the violation of not reporting to work at a time when she was out on Workers Compensation.

64. The management Defendants did not like the idea of a court officer applying for reasonable accommodation.

65. They have routinely subjected such officers, including Sutter to fitness for duty examinations, and referred them to charges for using compensable time.

66. Sutter among others were charged as follows:

67. Although Sutter was alleged in these charges to have engaged in misconduct by not presenting herself to work as scheduled this assertion is false as the absences cited in the charges were related to Sutter's injuries.

68. By a letter dated November 3, 2016 Gregory Salerno, Defendants Deputy Director for Court Officer Staffing and Security Services informed Sutter that her time previously marked as "Lost Time" by Defendants are being restored.

69. The restored time represented a period the Defendants charged Sutter with misconduct for not coming to work when that absence was for a compensable injury.

70. The restored time covered periods in 2014 and 2015 and are as follows:

    2014:  **Full Days:** July 21, July 23, September 2, September 3, September 4, October 23, October 24, November 6, November 26. (**7 hrs. each day).**

    **Intermittent Days:** July 22 (.30 hrs), July 24 (4.02 hrs), September 16 (3hrs), September 25 (1.59 hrs), October 17 (2.57 hrs), October 27 (1.55hrs).

    2015:  **Full Days:**  January 8, February 3, February 17, March 19, April 9, April 15, May

8

12, May 28, October 14, November 23, December 7.   (**7 hrs. each day**)

**Intermittent Days:** January 12 (2.54 hrs), January 16 (3.59 hrs), January 20 (2.52 hrs), February 4 (2.03 hrs), February 6 (2hrs), February 18 (1.21 hrs), March 6 (5.15 hrs), March 16 (1.16 hrs), March 20 (2.53 hrs), March 23 (1.59 hrs), March 25 (2.57hrs), April 13 (1.13 hrs), April 14 (2hrs), April 16 (2.52 hrs), May 13 (2.54hrs), May 27 (2.32 hrs), October 15 (3.01 hrs, October 16 (1.21 hrs), November 25 (1.21 hrs), December 4 (.39hrs).

71. Because of Defendants policy of disregarding Sutter's reasonable accommodation requests and punishing Officers for invoking their rights to request reasonable accommodation, Sutter was subjected to a needless disciplinary hearing procedure that was unnecessary and forcing Sutter to accumulate needless legal bills in the defense of the action.

72. The Defendants compelled Sutter to pay legal bills and to owe legal bills for her defense in the retaliatory discipline brought by Defendants.

73. Sutter has been outstanding in her work as a court officer.

74. Six or more judges and magistrates have written letters of recommendations for Sutter attesting to her exemplary work with them in the courtroom.

75. Sutter's integrity and professional conduct have never been questioned by the judicial officers she was assigned to work with.

76. It is the Defendants practice of ignoring and intimidating officers requesting reasonable accommodation that led to the situation where Sutter was unnecessarily brought up on charges.

77. Although Sutter settled the case with Defendants she was subjected to an unnecessary period of violation that unduly restricted her rights and ignored her rights and benefits under Anti-Discrimination laws that are applicable to employees with disabilities.

78. Sutter lost money, opportunities for promotion, and time as a result of disciplinary suspension imposed on her

79. The defendants issued a performance evaluation for Sutter in 2016 to cover Sutter's performance for the 2015 year.

80. In the evaluation Defendant U.C.S improperly punished Sutter because she was out sick due to her disabilities.

81. In improperly using absences due to workers compensation and illness against Sutter, George Cafasso the Chief Clerk noted as follows:

> Officer Sutter has been on light duty for the entire rating period and has been assigned to clerical duties under the supervision of the Clerk of Court. Officer Sutter's time and leave record is extremely poor. In 2015, Officer Sutter was absent for over 90 days and had 59 unexcused lateness's. Many of these lateness's were for an hour or more. She habitually has no leave balances and is consequently in "Lost Time' status. Additionally, there were 20 punch missed swipe entries during 2015. Despite formal and informal counseling sessions, there was no improvement in her attendance record during the 2015 calendar year. When Officer Sutter is at work she performs her clerical duties efficiently. Officer Sutter has been made aware of the Work/Life Assistance Program. Officer Sutter's 2015 Kronos record and a performance evaluation appeal forms are attached.

82. Sutter was rated unsatisfactory for this period (2015) and the basis of that rating was her absence that was due to a compensable injury. The time was eventually given back to her, but the unsatisfactory rating cost her significant amount of monetary loss.

## UNLAWFUL DETENTION AND ARREST

83. While Sutter was waiting for a determination on her reasonable accommodation request in January and February of 2016, she came into contact with Captain Joseph Dibello who asked Sutter to follow him (Dibello) into Dibello's office.

10

84. Dibello demanded Sutter's firearms then asked her to charge into uniform and come back so he and Sutter can talk to another Captain.

85. Sutter delivered her firearms to Dibello by placing it on Dibello's desk.

86. Sutter was directed and escorted into Captain Posillipo's office and instructed to close the door behind her and sit down.

87. Sutter was locked up in a room with Captain Posillipo and Dibello and subjected to a wide range of questions about her firearms she was told she was not free to leave and shown copy of a correspondence from Fisher stating that her firearms privileges were revoked, and her firearms were to be retrieved immediately.

88. When Sutter asked Captain Posillipo and Dibello why her firearms were being taken away the two captains said they don't know and that they were following orders from Fisher.

89. Fern Fisher is not uniformed personnel and upon information and belief she was not a trained Court Officer.

90. The two captains continued the aggressive questioning of Sutter within the closed confined space that is Posillipo's office.

91. Sutter was asked if she knows the residences of some of the Sergeants to which she replied no.

92. Sutter asked the captains if she was free to leave they said no and that they had instructions from Fisher to recover her firearms on that day, February 28, 2017.

93. She told the arresting officers that she felt like she was being treated like a criminal.

94. There was no security incident or any security necessities that warranted the arrest and aggressive force used in the quest to recover Officer Sutter's firearms.

95. Sutter in fact entered into a stipulation on or about February 10, 2017 to settle the charges brought against her by the Defendants.

96. Sutter was previously targeted by U.C.S management Defendants when she was brought up on charges and subjected to penalties including loss of pay and vacation time, some of which was later restored, because of the absences that were due to job related injuries.

97. Since signing the stipulation with the Defendants in February 2017, Officer Sutter only continued to faithfully request reassignment as an accommodation to relieve the pain associated with her long commute on Public transportation. Sutter volunteered to bring her other handgun in the next day, but the Defendants denied that gesture insisting she has to remain with them until the firearm is retrieved from her.

98. Sutter was subjected to additional questioning and asked multiple times whether she resides near Sergeant Brown or Sergeant Kennedy to which Sutter replied in the negative.

99. After protesting to Dibello and Posillipo that she felt like she was being treated like a criminal, she was told to go and get her duty magazine and wait to be called.

100. Her confinement in the office with Captains Dibello and Posillipo took approximately forty-five minutes.

101. After Sutter reported to Captain Posillipo's office, for the second time, she was informed that she will be escorted home to Suffolk County, Long Island.

102. Sutter was deeply concerned by this unnecessary intent of the Defendants to invade her home.

103. Sutter was directed to take off her uniform and put on civilian clothes.

104. Captain Posillipo and Dibello summoned MSP Officers to take custody of Sutter and drive her to her home in Suffolk County from Brooklyn.

105. Sutter drove with the MSP Officers in marked Patrol cars to a train station in Suffolk County to retrieve her house keys and then to her home.

106. The officers drove the car for most of the ride from Brooklyn at 85 miles per hour.

107. On arrival at Sutter's residence the Officers created a scene causing neighbors to watch through their windows and later approached her fiancé to ask what was happening.

108. Sergeant Brown entered Sutter's home without requesting any permission.

109. Sergeant Brown made his way into Sutter's home and stood by the stairs watching Sutter as she went downstairs and then upstairs, and his eyes looked around the interior of her house.

110. Sutter was then driven back to Manhattan from her house and her weapons were handed over to Major Demarco by Sergeant Brown.

111. Although Sutter repeatedly asked why she was forcefully subjected to a trip back to her home accompanied by MSP Officers, none of the Defendants would answer her.

112. Sutter was later informed by the Union that Major Demarco said her weapons were being taken from her due to medical reasons.

113. There was no medical reason that warranted the seizure of her firearms.

114. There is no medical reason that warranted the seizure of her person.

115. The only medical issue going on with Sutter in February 2016 was her request for reasonable accommodation and FMLA due to intermittent migraines.

116. Although Sutter's attorney wrote to the Defendants demanding explanation for the method employed in obtaining Sutter's weapon.

117. The Defendants abused their powers and privileges in invading the home and person of Sutter the way they did.

118. Fisher and her agents have no authority to authorize a warrantless entry and search of Plaintiffs home.

119. The Defendants have no authority to continue to detain, arrest, and restrict the movement of Sutter after they have taken custody of the guns they were allegedly seeking to possess.

120. The Defendants held Sutter against her will by preventing her from her freedom of movement, removing her from the performance of her duties without any reasonable or justifiable cause.

121. The Defendants have no authority to carry out their official function in Suffolk County.

122. Sutter never agreed to willingly drive with the Defendants and MSP officers from Brooklyn to Suffolk County where she resides.  She was told by her union rep Ted Kanton that she had to go.

123. The Defendants forced Sutter to return to Manhattan with them at an unreasonable speed of 85 miles per hour which put Sutter in fear of her safety and her life.

124. The Defendants violated their own policy and procedure relating to how to terminate a Courts Officers gun privilege.

125. Sutter, a white female has been treated differently from other officers who requested reasonable accommodations.

126. Fisher did not authorize actions against a non-white female who requested reasonable accommodation due to disabilities.

127. Non-white females who requested reasonable accommodations were rarely subjected to the kind of false imprisonment, mental torture, blatant denial of requests, and administrative charges of misconduct for absences directly linked to disabilities that resulted from compensable injury.

128. The judges and magistrates with whom Sutter worked have positive comments and admiration for her professionalism and her conduct at work.

129. Sutter, a white female was subjected to the scrutiny that non-white females did not experience.

130. Different court officers who are female and of different racial extractions were not subjected to different and discriminatory terms and conditions of service.

131. Race and sex of the employee should not be a factor in the official decisions that the defendants make.

132. The Defendants, however, allowed race to be a factor in the decision they make with regard to Sutter, who is a white female.

133. As a Non-Uniformed Court employee, Judge Fisher was too intricately and intimately involved in matters relating to Sutter's request for reasonable accommodations and the ill-informed decision that necessitated charges being preferred against her.

134. Sutter filed a timely complaint with the EEOC.

135. The EEOC issued Sutter a right to sue letter.

136. Sutter timely commenced this lawsuit after receiving her right to sue letter.

137. Sutter commenced this complaint within ninety days of receiving the EEOC right to sue letter

## AS AND FOR A FIRST CAUSE OF ACTION

138. Paragraphs 1 thru 137 are realleged as if set forth herein verbatim and incorporated by reference.

139. Defendants violated Sutter's rights under Article I Section 11 of the New York State Constitution which provides that no person shall be denied equal protection of the laws of this state or any subdivision thereof.  No person shall, because of race, color, creed or religion be subjected to any discrimination in his civil rights by any other person or by any firm corporation or institution or by the state or any agency or subdivision of the state.

140. Defendants violated Sutter's rights under the Due Process Clause of the State Constitution.

141. Defendants subjected Sutter to discrimination when they engaged in discrimination against her because of her race, sex and disabilities, as set forth above, amongst others.

142. The Defendants also subjected Sutter to hostile work environment and retaliation in violation of the State's Constitution.

## AS AND FOR A SECOND CAUSE OF ACTION

143. Paragraphs 1 thru 142 are realleged as if set forth herein verbatim and incorporated by reference.

144. Defendants violated Sutter's rights under Article 15 of the New York Executive Law, New York Executive Law Section 296(1) by engaging in unlawful discriminatory practices against Sutter.

145. Defendants discriminated against Sutter because of her race, sex and disabilities when she was subjected to unlawful discriminatory practices. The Defendants also subjected Sutter to hostile work environment and retaliation in violation of Article 15 of the NY Executive Law.

146. The Defendants subjected Sutter to Retaliation and hostile work environment.

## AS AND FOR A THIRD CAUSE OF ACTION

147. Paragraphs 1 thru 146 are realleged as if set forth herein verbatim and incorporated by reference.

148. Plaintiff was damaged by Defendants ongoing actions that denied her equal terms and conditions of employment as set forth above, in violation of section 8-107.1 of the Administrative Code of the City of New York.

149. Defendants violated Sutter's rights pursuant to section 8-107.1 of the Administrative Code of the City of New York when they engaged in discrimination against her because of her race, sex and disabilities.

150. Defendants also subjected Sutter to retaliation and hostile work environment.

## AS AND FOR A FOURTH CASE OF ACTION

151. Paragraphs 1 through 150 are realleged as if set forth herein verbatim and incorporated by reference.

152. Plaintiff was damaged by defendants' ongoing violation of the 14th Amendment to the U.S. Constitution. The equal protection clause of the 14th Amendment provides inter-alia; "nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

153. Defendants violated the equal protection clause of the 14th Amendment when they denied her equal protection of the law by subjecting her to terms and conditions of employment different from those offered to other non-White female employees.

## AS AND FOR A FIFTH CAUSE OF ACTION

154. Paragraphs 1 through 153 are realleged as if set forth herein verbatim and incorporated by reference.

155. Plaintiff was damaged by defendants' violation of Civil Rights Act of 1866, as amended, 42 U.S.C §1981. The Act provides in pertinent part, that "(a) ll persons shall have the same right to make and enforce contracts as is enjoyed by white citizens."

156. Although Sutter is White, Defendants treated her different because she is also a disabled and White female employee.

157. Defendants violated the Civil Rights Act of 1866 when they subjected Sutter to race discrimination in the work place.

158. The Defendants subjected Sutter to Retaliation and hostile work environment.

## AS AND FOR A SIXTH CAUSE OF ACTION

159. Paragraphs 1through 158 are realleged as if set forth herein verbatim and incorporated by reference.

160. Plaintiff was damaged by Defendants' violation of Plaintiff's federal rights. The violation of Plaintiff's federal rights are enforced through the Civil Rights Act of 1871, 42 U.S.C §1983. The Act protects against the deprivation of Federal Constitutional Rights, and rights under

federal law by persons acting under color of state or local law as defendants did in the instant case.

161. Defendants violated Sutter's federal constitutional and statutory rights when they used the power of their state offices to deny her equal protection of the law and violated her federal rights as referenced in the causes of action pertaining to violation of federal statutory and constitutional rights in this complaint.

## AS AND FOR A SEVENTH CAUSE OF ACTION

162. Paragraphs 1-through 161 are realleged as if set forth herein verbatim and incorporated by reference.

163. Plaintiff was illegally detained and falsely imprisoned by the Defendants when they compelled her with the powers of their offices to get into a car with armed law enforcement officers and follow them to a train station in Long Island New York and then further compelled her to follow the armed officers to her residence in Suffolk County, New York from Brooklyn, all against her will and while she was not free to walk away on her own.

164. Plaintiff's privacy was invaded when one of the armed officers entered her home, walk around the stairs, and then stationed himself by the stairs inside Plaintiff's home without a warrant or permission from Plaintiff or any other resident of the home.

165. Plaintiff was held against her will, and her freedom unduly restrained against her will in violations of State and federal Constitutional Rights.

166. Defendants also illegally entered the Plaintiff's home without permission and without a warrant in violation of State and Federal Constitutional requirements.

## AS AND FOR AN EIGHT CAUSE OF ACTION

167. Paragraphs 1-through 166 are realleged as if set forth herein verbatim and incorporated by reference

168. Plaintiff was put in fear of her life during the illegal operation when she was humiliated and unnecessarily subjected to needless fear for her life and safety due to the irresponsible and reckless acts of the Defendants.

169. The Defendants assaulted the Plaintiff through their use of unnecessary and unorthodox tactics.

## AS AND FOR A NINTH CAUSE OF ACTION

170. Paragraphs 1 thru 168 are realleged as if set forth herein verbatim and incorporated by reference.

171. Plaintiff was damaged by Defendants ongoing actions that denied her equal terms and conditions of employment as set forth above, in violation of Title VII of The Civil rights Act of 1964, Americans with Disabilities Act, FMLA.

172. Defendants violated Sutter's rights as provided for in Title VII when they engaged in discrimination against her because of her race, sex and disabilities.

173. Defendants also subjected Sutter to retaliation and hostile work environment.

## **RELIEF**

WHEREFORE, Plaintiff demands the following relief, jointly and severally against all the Defendants or as otherwise stated:

    a. A Declaratory judgment that the conduct, practices, and acts complained of herein are discriminatory and illegal.

b. A Declaratory judgment that Sutter was discriminated against on the grounds of race, sex and disabilities by Defendants.

c. A preliminary and permanent injunction preventing the Defendants from engaging in any and all forms of discrimination against Plaintiff.

d. An order granting damages totaling the greater of $10,000.000.00 or the amount to be proven at trial.

e. An Order granting punitive damages against the Defendants

f. An Order by the Court taxing the costs of this action against Defendants, including Plaintiff's attorneys' fees incurred in the prosecution of this case.

g. An order granting Plaintiff reasonable accommodation as appropriate.

h. Any and all further relief in law and equity deem necessary by the Court.

Dated: February 6, 2018

Respectfully submitted,

The Law Offices of Albert Van-Lare
125 Maiden Lane
Suite 510
New York, New York 10038
(212) 608-1400

By: _____

Albert Van-Lare