**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
DAWN SUTTER,

                         Plaintiff,

              -against-

JOSEPH DIBELLO, CAPTAIN, in his official and
personal capacities; JOHN POSILLIPO, CAPTAIN,
in his official and personal capacities; FERN
FISHER, in her official and personal capacities;
JOHN DEMARCO, MAJOR, in his official and
personal capacities; NEW YORK STATE UNIFIED
COURT SYSTEM, OFFICE OF COURT
ADMINISTRATION; JOHN BROWN,
SERGEANT, in his official and personal capacities;
MICHAEL DEMARCO, MAJOR, in his official
and personal capacities; and KEITH BROWN, in
his official and personal capacities,

                         Defendants.
-----------------------------------------------------------X

                                    **REPORT AND**
                                    <u>**RECOMMENDATION**</u>

                                    CV 18-817 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**      <u>P</u>RELIMINARY <u>S</u>TATEMENT

      Plaintiff Dawn Sutter ("Plaintiff") commenced this action against her employer, the New

York State Unified Court System ("UCS"), and five[1] of her supervisors and managers, asserting

multiple causes of action, including claims of sex, race, and disability discrimination.  *See*

*generally* Plaintiff's Amended Complaint ("Am. Compl.") [DE 12].  Plaintiff alleges that as a

white female Court Officer, she experienced harassment, discrimination, and retaliation at the

---

[1]   Although the caption lists seven Individual Defendants, counsel for the Defendants
state that "Michael Demarco" is incorrectly named as "John Demarco," and "Keith Brown" is
incorrectly named as "John Brown."  Plaintiff concedes that "John Demarco" and "John Brown"
are erroneously named and are not actual parties to the litigation.  Am. Compl. ¶¶ 14, 15.

hands of Defendants UCS Captain Joseph Dibello ("Dibello"), UCS Sergeant Keith Brown

("Brown"), UCS Captain John Posillipo ("Posillipo"), UCS Major Michael Demarco

("Demarco"), and Deputy Administrative Judge Fern Fisher ("Fisher") (collectively,

"Defendants" or "Individual Defendants") because of her race and gender.  *See id.*  Plaintiff also

claims she was mistreated because she applied for a reasonable accommodation based on a

disability from which she suffers.  *See id.*  The Amended Complaint purports to assert the

following nine causes of action:[2]  (1) denial of equal protection in violation of the New York

State Constitution, *id.* ¶¶ 141-45; (2) race, sex, and disability discrimination, hostile work

environment, and retaliation in violation of the New York State Human State Rights Law

("NYSHRL"), *id.* ¶¶ 146-49; (3) race, sex, and disability discrimination, hostile work

environment, and retaliation in violation of the New York City Human Rights Law

("NYCHRL"), *id.* ¶¶ 150-53; (4) violation of the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution, *id.* ¶¶ 154-56; (5) violation of 42 U.S.C. § 1981,

*id.* ¶¶ 157-61; (6) violation of Plaintiff's federal rights under 42 U.S.C. § 1983, *id.* ¶¶ 162-64; (7)

false imprisonment and warrantless entry into Plaintiff's home, *id.* ¶¶ 165-69; (8) assault, *id.* ¶¶

170-72; and (9) race, sex, and disability discrimination, hostile work environment, and retaliation

in violation Title VII of the Civil Rights Act ("Title VII"), the Americans with Disabilities Act

("ADA"), and the Family and Medical Leave Act ("FMLA").  *Id.* ¶¶ 173-76.

The Individual Defendants have moved to dismiss Plaintiff's Amended Complaint.

Specifically, Defendants Dibello, Brown, Posillipo, and Demarco filed a joint motion, *see*

*generally* Memorandum in Support of Dibello, Brown, Posillipo, and Demarco's Motion to

---

[2]  The Court simply lists these claims as asserted by Plaintiff and does not assess their
viability here as causes of action.

Dismiss the Amended Complaint ("Defs.' Mem.") [DE 17], while Defendant Fisher filed a

separate motion. *See generally* Memorandum in Support of Fisher's Motion to Dismiss the

Amended Complaint ("Fisher Mem.") [DE 25]; *see also* Defendants' Joint Memorandum in

Reply ("Defs.' Reply") [DE 31]. Plaintiff opposes both motions to dismiss. *See generally*

Plaintiff's Memorandum in Opposition ("Pl.'s Opp'n.") [DE 28]. Judge Spatt has referred both

motions to this Court for a Report and Recommendation as to whether the motions should be

granted. *See* DE 45. For the reasons set forth below, this Court respectfully recommends to

Judge Spatt that the Defendants' motions to dismiss the Amended Complaint be GRANTED, in

part, and DENIED, in part.

## II.    BACKGROUND

### A.    Plaintiff's Amended Complaint

The following factual allegations have been taken from Plaintiff's Amended Complaint.

All facts alleged by the Plaintiff are assumed to be true for purposes of deciding the motion to

dismiss and are construed in a light most favorable to Plaintiff as the non-moving party. *See,*

*e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009); *Matthews v. City of*

*N.Y.*, 889 F. Supp. 2d 418, 425 (E.D.N.Y. 2012).

Plaintiff has been employed by UCS as a Court Officer for over 18 years. Am. Compl.

¶¶ 4-5. The Amended Complaint states that Plaintiff is an employee with disabilities, that

Defendants are aware of those disabilities, and that Plaintiff is able to perform her duties

effectively with reasonable accommodation. *Id.* ¶¶ 18-19. In 2010, Plaintiff suffered an injury

while at work and as a result has suffered frequent bilateral cervical pain that radiates into her

bilateral upper trapezius muscles. *Id.* ¶ 20; *see id.* ¶ 26. She also suffers from migraines. *Id.*

¶ 22. Her pain is aggravated by prolonged standing which makes her daily commute to and from

work difficult.  *Id*. ¶ 21.  In 2014, Plaintiff's injuries "were reaggravated and her migraine and pain began reoccurring."  *Id*. ¶ 27.  As a result of this reoccurrence, Plaintiff was transferred to "light duty."  *Id*. ¶ 29.

On July 10, 2015, Plaintiff's chiropractor, Dr. Tinari, informed UCS that Plaintiff "had a compensable injury" and was able to work subject to limitations, such as no bending, twisting, lifting, climbing ladders or stairs, or kneeling.  Am. Compl. ¶ 59.  Dr. Tinari's July 10, 2015 report was forwarded to Defendants Dibello, Posillipo, Demarco, and Brown on the same date. *Id*. ¶ 60.

On or about January 13, 2016, Plaintiff was charged with violations of the UCS time and leave policy for absences which, Plaintiff asserts, were the result of her injury and resulting disability.  Am. Compl. ¶¶ 61, 64.  Those charges were approved by Defendant Fisher.  *Id*. ¶¶ 64. Plaintiff avers that the Defendants were aware that her absences were due to her injury.  *Id*. ¶ 65.

Based on her doctor's recommendation, in March 2016 Plaintiff applied for a transfer from the courthouse in Brooklyn to a courthouse in Queens County.  Am. Compl. ¶¶ 52, 107. According to the Amended Complaint, that transfer would have shortened Plaintiff's commuting time and allowed her to travel without using public transportation.  *Id*. ¶ 53.  That request was denied.  *Id*. ¶ 55.

In September 2016, Susan Maurer, a case manager with the New York State Insurance Fund, informed UCS that Plaintiff had successfully established a Workers Compensation claim for her neck, back, and left wrist stemming from the 2010 incident.  Am. Compl. ¶ 58.  Plaintiff claims that around this time, she "was subjected to a needless disciplinary hearing procedure that was unnecessary and forc[ed] [Plaintiff] to accumulate needless legal bills in the defense of the action."  *Id*. ¶ 74.  This disciplinary matter was eventually settled, and by letter dated November

3, 2016, Gregory Salerno, the Deputy Director for Court Officer Staffing and Security Services, informed Plaintiff that time which had previously been marked as "Lost Time" was being restored.[3]  *Id*. ¶¶ 71, 80.  However, Plaintiff claims that in her employment evaluations for the year 2015, she was given "unsatisfactory" ratings due to her absences despite the fact that these absences were the result of her 2010 injury.  *Id*. ¶¶ 82-85.  She avers that this "unsatisfactory rating cost her [a] significant amount of monetary loss."  *Id*. ¶ 85.

In December 2016, Plaintiff requested to be reassigned from Brooklyn to a court in Nassau, Suffolk, or Queens County, in order to reduce her commuting time.  Am. Compl. ¶ 35.  In a letter dated December 22, 2016, UCS responded to her request by stating that reassignments were discretionary and usually occurred with the graduation of a new recruit class.  *Id*. ¶ 37.  UCS also stated that Plaintiff's request was being provided to executive court managers in Queens, Nassau, and Suffolk Counties for their review and consideration in the event an opportunity arose.  *Id*.  Notwithstanding the fact that "there have been several opportunities to effect the transfer" since 2016 and that she "has seniority," Plaintiff has still not been transferred.  *Id*. ¶ 38.

Also on December 22, 2016, Defendants Dibello, Posillipo, Demarco, and Brown "chose to refer Plaintiff's case to the Deputy Chief Administrative Judge for NYC Court [Fern Fisher] for review as to [Plaintiff's] fitness for duty."  Am. Compl. ¶¶ 39, 42-43.  Plaintiff alleges that there was no basis for this referral, and UCS "as a matter of official policy refers employees to fitness [for] duty examination[s] of this nature that are unnecessary and inconsistent with [the]

---

[3]   In a different section of her Amended Complaint, Plaintiff states that she "entered into a stipulation on or about February 10, 2017 to settle the charges brought against her by the Defendants."  Am. Compl. ¶ 98.  The relationship of these "charges" to the "action" to which she refers in paragraph 74 of the Amended Complaint is unclear.

ADA and FMLA." *Id*. ¶¶ 41, 44; *see id*. ¶¶ 46-49.  Plaintiff contends that this "policy" is intended to discourage court officers from applying for reasonable accommodations and that the policy is solely applied to uniformed court officers.  *Id*. ¶¶ 50-51.

Plaintiff requested leave under the FMLA on February 9, 2017 to cover intermittent use of sick time between February 2017 and December 31, 2017.  Am. Compl. ¶ 31.  Plaintiff states she made this request based on her worsening physical condition:  during her commute to and from work, she began suffering from photophobia, migraines, smell sensitivity, nausea, and vomiting.  *Id*. ¶ 33.  Plaintiff was granted only one month of leave and was told in a letter that she would need to reapply after the month was over to extend her FMLA leave.  *Id*. ¶¶ 31-32.

On February 28, 2017, Plaintiff was asked by Defendant Dibello to follow him into his office.  Am. Compl. ¶¶ 86, 95.  Once inside, Dibello demanded Plaintiff's firearms, one of which she delivered to Dibello by placing it on his desk.  *Id*. ¶¶ 87-88.  Plaintiff was subsequently directed to Defendant Posillipo's office.  *Id*. ¶ 89.  There, Plaintiff claims she "was locked up in a room with Captain Posillipo and Dibello and subjected to a wide range of questions about her firearms."  *Id*. ¶ 90.  "She was told she was not free to leave and [was] shown a copy of a correspondence with [Defendant] Fisher stating that her firearms privileges were revoked, and her firearms were to be retrieved immediately."  *Id*.  Plaintiff maintains that there were no security considerations warranting her confinement.  *Id*. ¶ 97.  Plaintiff volunteered to bring her other handgun in the following day; however, the Defendants insisted that she was to remain in their presence until the firearm was retrieved.  *Id*. ¶ 100.  Her confinement in Posillipo's office lasted approximately 45 minutes, after which she was told to "go and get her duty magazine and wait to be called."  *Id*. ¶¶ 102-03.

Plaintiff was then informed that she would be escorted to her home in Suffolk County, Long Island.  Am. Compl. ¶ 104.  Plaintiff rode with officers in marked patrol cars to a train station in Suffolk County to retrieve her house keys and then drove with the officers to her home. *Id*.  ¶ 108.  Plaintiff states that "the officers drove the car for most of the ride from Brooklyn at 85 miles per hour." *Id*. ¶ 109.  Upon arriving at Plaintiff's home, the officers created a scene which her neighbors watched through their windows. *Id*. ¶ 110.  Defendant Brown then entered Plaintiff's home without requesting permission, after which he stood by the stairs inside the home watching Plaintiff, his eyes looking around the interior of her home. *Id*. ¶ 112.  The UCS officers then drove Plaintiff to Manhattan. *Id*. ¶ 113.  Her weapons were handed over to Defendant Demarco by Defendant Brown. *Id*.  According to Plaintiff, this return trip was also at "an unreasonable speed of 85 miles per hour which put [Plaintiff] in fear of her safety and her life." *Id*. ¶ 126.

Although Plaintiff repeatedly asked why she was forcibly subjected to a trip to her home by UCS officers, none of the Defendants gave her an answer.  Am. Compl.  ¶ 114.  She was later informed by her Union that Demarco said her weapons were being taken from her "due to medical reasons." *Id*. ¶ 115.  Plaintiff states that there was no medical reason warranting the seizure of her firearms. *Id*. ¶ 116.  She states she never agreed to willingly drive with the Defendants from Brooklyn to her home in Suffolk County; however, "[s]he was told by her union rep Ted Kanton that she had to go." *Id*. ¶ 125.  Plaintiff alleges that Defendants' conduct violated UCS'own policy and procedure relating to termination of a Court Officer's gun privileges. *Id*. ¶ 127.

According to the Amended Complaint, as a white female, Plaintiff was treated differently from other officers who requested reasonable accommodations.  Am. Compl. ¶ 128.  As Plaintiff

states, "[n]on-white females who requested reasonable accommodations were rarely subjected to the kind of false imprisonment, mental torture, blatant denial of requests, and administrative charges of misconduct for absences directly linked to disabilities that resulted from compensable injuries." *Id*. ¶ 130. She asserts that she was subjected to scrutiny that non-white females did not experience, and that "[d]ifferent court officers who are female and of different racial extractions were not subjected to different and discriminatory terms and conditions of service." *Id*. ¶¶ 132-33. Pointing out that Defendant Fisher was a "Non-Uniformed Court employee," Plaintiff asserts that Fisher in particular was "too intricately and intimately involved in matters relating to [Plaintiff's] request for reasonable accommodations and the ill-informed decision that necessitated charges being preferred [*sic*] against [Plaintiff]." *Id*. ¶ 136. Defendant Fisher "retired from the U.C.S. sometimes [*sic*] in 2017." *Id*. ¶ 11.

### B.    Relevant Procedural History

Plaintiff filed her initial Complaint on February 6, 2018. *See* DE 1. On June 7, 2018, she filed her Amended Complaint as of right. *See* DE 12. Defendants filed their first motion to dismiss the Amended Complaint on July 2, 2018. *See* DE 17. Following multiple adjournments, this Court saw counsel for the parties for the Initial Conference on August 3, 2018, at which time a limited discovery schedule was put in place. *See* DE 23. Several days later on August 6, 2018, Defendant Fisher filed her motion to dismiss the Amended Complaint. *See* DE 25. Plaintiff filed her opposition to the motions on August 30, 2018, *see* DE 28, and Defendants filed a collective reply memorandum on September 14, 2018. *See* DE 31. On March 29, 2019, Judge Spatt referred both motions to dismiss to this Court for a Report and Recommendation as to whether the motions should be granted. *See* DE 45.

## III.    DISCUSSION

Where, as here, defendants move to dismiss a complaint based on Federal Rule of Civil Procedure 12(b)(1) as well as other grounds, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F. 2d 674, 678 (2d Cir. 1990) (quoting 5 C. Wright and A. Miller, *Federal Practice and Procedure,* § 1350, p. 548 (1969)); *Thompson v. Ocwen Fin. Corp.*, No. 3:16-cv-01606, 2018 WL 513720, at *2 (D. Conn.  Jan. 23, 2018) (explaining that it is well established that "federal courts should ordinarily resolve any doubts about the existence of federal subject matter jurisdiction prior to considering the merits of a complaint") (citing *Rhulen*, 896 F. 2d at 678); *Calverton Hills Homeowners Assn., Inc. v. Nugent Bldg. Corp.*, 2:17-CV-03916, 2017 WL 6598520, at *4 (E.D.N.Y. Dec. 26, 2017) (same).  The Court therefore first addresses Defendants' motions under Rule 12(b)(1) before moving to Defendants' arguments for dismissal under Rule 12(b)(6).

### A.    Subject Matter Jurisdiction and Rule 12(b)(1)

#### 1.    *Standard of Review*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV. P. 12(b)(1)).  While the standard of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim are inherently similar, *Davis v. JP Morgan Chase Bank*, No. 14-CV-6263, 2016 WL 1267800, at *3 (S.D.N.Y. Mar. 30, 2016), unlike the resolution of a Rule 12(b)(6) motion, a court resolving a Rule 12(b)(1) motion to

dismiss may refer to evidence outside the pleadings. *Makarova*, 201 F.3d at 113 (citing *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986)). Moreover, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir. 1996)); *Parker-Leon v. Middle Vill. Preparatory Charter Sch.*, No. 17-CV-4548, 2019 WL 2394211, at *2 (E.D.N.Y. June 6, 2019) (explaining that "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it") (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").

### 2.     *Eleventh Amendment Immunity and the Amended Complaint*

Defendants argue that the Eleventh Amendment to the United States Constitution deprives this Court of subject matter jurisdiction with respect to all of Plaintiff's claims asserted against UCS as well as the Individual Defendants in their official capacities. *See* Defs.' Mem. at 6; Fisher Mem. at 6. Plaintiff does not appear to disagree, and, oddly, devotes a portion of her opposition brief to providing support for this very proposition. *See* Pl.'s Opp'n. at 6-7. The Court in large part agrees with both sides and briefly addresses why the majority of the claims against UCS and the Individual Defendants in their official capacities must be dismissed for lack of subject matter jurisdiction.

a.    **Legal Principles**

The Eleventh Amendment to the United States Constitution provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.  "The Eleventh Amendment bars federal courts from entertaining suits brought by private parties against a state in its own name." *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 157 (S.D.N.Y. 2007).  "As a result, '[a] State is thus immune from suits in federal court . . . and such immunity extends to officers acting on behalf of the State.'"  *Deadwiley v. New York State Office of Children & Family Servs.*, 97 F. Supp. 3d 110, 115 (E.D.N.Y. 2015) (quoting *Winokur v. Office of Court Admin.,* 190 F. Supp. 2d 444, 448 (E.D.N.Y. 2002)).

There are three well-recognized exceptions to this rule.  First, a state may waive its Eleventh Amendment immunity defense and *consent* to suit.  *Ahmed v. City Univ. of New York*, No. 15-CV-7375, 2017 WL 1216534, at *3 (E.D.N.Y. Mar. 27, 2017); *Deadwiley*, 97 F. Supp. 3d at 115 (quoting *Winokur*, 190 F. Supp. 2d at 448); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) ("[A] State may waive its sovereign immunity by consenting to suit.") (citing *Clark v. Barnard,* 108 U.S. 436, 447-48 (1883)). "Second, Congress may abrogate the sovereign immunity of the States by acting pursuant to a grant of constitutional authority."  *Deadwiley*, 97 F. Supp. 3d at 115 (quoting *Winokur*, 190 F. Supp. 2d at 448); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000).

In addition to state consent and congressional abrogation, "under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a 'suit against a state official when that suit seeks . . . prospective injunctive relief.'"  *Winokur*, 190 F. Supp. 2d at 448 (quoting *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 73 (1996)); *see In re Dairy Mart Convenience Stores, Inc.*, 411

F.3d 367, 372 (2d Cir. 2005) ("[A]lthough [t]he people in their sovereign capacity may be immune from suit, it does not follow that [officers of the state] should share this aspect of sovereignty when they violate the laws of the people.") (internal quotation marks omitted).  In *Ex parte Young*, the Supreme Court created an exception to the general principle that sovereign immunity limits the grant of Article III judicial authority, allowing federal courts to entertain certain suits against state officials claiming ongoing violations of federal law, where the relief requested is limited to prospective relief rather than money damages.  "The theory of *Young* was that an unconstitutional statute is void, and therefore does not impart to [the state official] any immunity from responsibility to the supreme authority of the United States."  *Green v. Mansour*, 474 U.S. 64, 68 (1985).  The Supreme Court's "decisions repeatedly have emphasized that the *Young* doctrine rests on the need to promote the vindication of federal rights."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 105 (1984); *Green*, 474 U.S. at 68 ("[T]he availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law.").

### b.    Application to Plaintiff's Claims

In the caption of the Amended Complaint, Plaintiff has identified the Individual Defendants in both their official and individual capacities.  *See* Am. Compl. at 1.  The Amended Complaint does not state against which Defendants, or in what capacities, any given cause of action is raised.  The Court therefore assumes that at the time the Amended Complaint was filed, Plaintiff intended to assert each claim against each Defendant, and against the Individual Defendants in both their official and individual capacities.  Any claim against the Individual Defendants in their official capacities is, however, equivalent to a claim against UCS itself, since

"official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Siani v. State Univ. of New York at Farmingdale*, 7 F. Supp. 3d 304, 316 (E.D.N.Y. 2014) ("The fact that the state officers remain parties to the suit in their official capacities means that the 'suit is, in all respects other than name, to be treated as a suit against the [state] entity.'") (quoting *Kentucky v. Graham,* 473 U.S. 159, 166 (1985)).  Additionally, there is no dispute that UCS is an administrative arm of the State of New York.  *See* Am. Compl. ¶ 16; *see also Canales-Jacobs v. New York State Office of Court Admin.*, 640 F. Supp. 2d 482, 498 (S.D.N.Y. 2009).  Therefore, unless one of the three exceptions to Eleventh Amendment immunity identified above applies here, the Eleventh Amendment deprives this Court of subject matter jurisdiction to entertain Plaintiff's claims against UCS – either directly, or against the Individual Defendants in their official capacities, the functional equivalent.

### *i.*     *Congressional Abrogation and State Consent*

The Defendants' Rule 12(b)(1) motions to dismiss based on the Eleventh Amendment fail with respect to Plaintiff's claims under Title VII.  *See* Am. Compl. ¶¶ 173-76.  "It is well established that 'Congress has abrogated the states' sovereign immunity for claims under Title VII, so the Eleventh Amendment does not bar Plaintiff's claims under that statute.'"  *Green v. Niagara Frontier Transportation Auth.*, 340 F. Supp. 3d 270, 273 (W.D.N.Y. 2018) (quoting *Baez v. New York*, 56 F. Supp. 3d 456, 464 (S.D.N.Y. 2014), *aff'd*, 629 Fed. App'x 116 (2d Cir. 2015)).

As for Plaintiff's other claims – *i.e.*, those brought pursuant to 42 U.S.C. §§ 1981, 1983, the ADA, FMLA, NYSHRL, NYCHRL, N.Y. Constitution Art. I, § 11, and those based on false imprisonment and assault – the Court is aware of no authority indicating that either (i) the State

of New York has consented to suit, or (ii) Congress has expressly abrogated the State of New

York's sovereign immunity. *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 244 (E.D.N.Y.

2015) ("New York State has not consented to suit under [NYSHRL or NYCHRL].") (citation

omitted); *Schwartz v. York Coll.*, No. 06-CV-6754, 2009 WL 3259379, at *2 (E.D.N.Y. Mar. 31,

2009) (finding neither waiver nor congressional abrogation of immunity for claims brought

pursuant to Section 1981, NYCHRL, or NYSHRL); *Obilo v. City Univ. of City of New York*, No.

CV 01-5118, 2003 WL 1809471, at *13 (E.D.N.Y. Apr. 7, 2003) (finding neither waiver nor

congressional abrogation of immunity for Section 1983 claims).

The issue of abrogation and consent in the context of the ADA and FMLA deserves some

limited elaboration. With respect to the ADA, "insofar as Title II [of the ADA] creates a private

cause of action for damages against the States for conduct that *actually* violates the Fourteenth

Amendment, Title II [of the ADA] validly abrogates state sovereign immunity." *United States v.*

*Georgia*, 546 U.S. 151, 159 (2006) (emphasis in original). However, the Second Circuit has

stated that *Title I* of the ADA is the exclusive remedy for claims of employment discrimination,

whether or not the employer is a public entity. *Mary Jo C. v. New York State & Local Ret. Sys.*,

707 F.3d 144, 171 (2d Cir. 2013) ("[W]e conclude that the statute unambiguously limits

employment discrimination claims to Title I. A public employee may not bring a Title II claim

against his or her employer, at least when the defendant employer employs fifteen or more

employees."). Moreover, "Title I [of the ADA] does not abrogate the sovereign immunity

enjoyed by the State of New York or its agencies and officials." *Emmons v. City Univ. of New*

*York*, 715 F. Supp. 2d 394, 408 (E.D.N.Y. 2010) (citing *Canales–Jacobs v. N.Y. State Office of*

*Court Admin.,* 640 F. Supp. 2d 482, 498 (S.D.N.Y. 2009)). And with respect to consent, "the

New York Legislature has never waived its sovereign immunity from liability under Title[ ] I . . .

14

of the ADA." *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014).

The FMLA "subjects any 'public agency' to suit . . . and a 'public agency' is defined to include both 'the government of a State or political subdivision thereof' and 'any agency of . . . a State, or a political subdivision of a State.'" *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30, 35-36 (2012) (quoting 29 U.S.C. §§ 203(x), 2611(4)(A)(iii)). It would appear therefore that Congress explicitly abrogated the states' sovereign immunity in enacting the FMLA. However, in 2012, the Supreme Court found that Congress failed to validly abrogate the states' sovereign immunity in enacting the FMLA's "self-care" provision:

> As a consequence of our constitutional design, money damages are the exception when sovereigns are defendants. *See, e.g., Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 29, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Subjecting States to suits for damages pursuant to § 5 [of the Fourteenth Amendment] requires more than a theory for why abrogating the States' immunity aids in, or advances, a stated congressional purpose. To abrogate the States' immunity from suits for damages under § 5, Congress must identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations. It failed to do so when it allowed employees to sue States for violations of the FMLA's self-care provision.

*Coleman*, 566 U.S. at 43-44. Similarly, New York has not consented to suit under the self-care provision of the FMLA. *Stinson v. City Univ. of New York*, No. 17-CV-3949, 2018 WL 2727886, at *5 (S.D.N.Y. June 6, 2018). As far as the Court can tell, it is the self-care provision of the FMLA which provides the sole basis for Plaintiff's FMLA claims. That provision provides covered employees with up to twelve workweeks of unpaid leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

As the above discussion makes clear, neither abrogation nor consent provide a vehicle for Plaintiff's ADA or FMLA claims (or any claims other than those brought under Title VII) to circumvent Eleventh Amendment immunity.

### ii.    Ex parte Young

The doctrine of *Ex parte Young* is also inapplicable to all of Plaintiff's claims brought under 42 U.S.C. §§ 1981, 1983, the ADA, FMLA, NYSHRL, NYCHRL, N.Y. Constitution Art. I, § 11, as well as her claims for false imprisonment and assault. *Ex parte Young* rests on the principle that "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 102. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *City of Shelton v. Hughes,* 578 Fed. App'x 53, 55 (2d Cir. 2014) (summary order) (internal quotation marks and citations omitted). The relief Plaintiff seeks in the instant action is primarily monetary in nature. *See* Am. Compl. at 20 (seeking compensatory and punitive damages). As such, the *Ex parte Young* exception is not an appropriate vehicle to circumvent Eleventh Amendment immunity.

To the extent Plaintiff is asking the Court for prospective relief in the form of a reasonable accommodation, her claims as pleaded are still not viable under *Ex parte Young*. The *Ex parte Young* "exception to sovereign immunity only authorizes suits against officials with the authority to provide the requested relief." *Siani v. State Univ. of N.Y. at Farmingdale,* 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014). Here, Plaintiff has failed to allege that any of the Individual Defendants would be able to provide a reasonable accommodation in the form of a reassignment to a different court. To the contrary, her allegations suggest that none of the Individual

Defendants would be able to provide this relief.  Plaintiff states at several points that she requested a transfer from the "management Defendants," who are the Individual Defendants in this action and who, with the exception of Defendant Fisher, are Plaintiff's supervisors in Brooklyn.  Am. Compl. ¶¶ 30, 35, 38, 55; *see id.* ¶¶ 8-17.  According to UCS, reassignments "are discretionary and usually occur with the graduation of a new recruit class."  *Id*. ¶ 37. Plaintiff was informed that her request for reassignment was "provided to executive court managers in Queens, Nassau and Suffolk Counties for their reviews and considerations in the event an opportunity arose."  *Id*.  According to the Amended Complaint, then, it would not be the Individual Defendants (who, with the exception of Fisher, work with Plaintiff in Brooklyn) who would be able to provide Plaintiff the reassignment she seeks, but "executive court managers in Queens, Nassau and Suffolk Counties" – *i.e.*, supervisors at the locations where she seeks to transfer.  *Id*.  Because these supervisors are not defendants in the action, there is no individual UCS official named here whom the Court could order to provide Plaintiff with a reasonable accommodation were she successful on her claims.  As a result, *Ex parte Young* is not applicable here.  *See Soloviev*, 104 F. Supp. 3d at 245 (finding *Young* inapplicable where a plaintiff failed to allege that Individual CUNY Defendants had the responsibility or capacity to provide him with the prospective relief he sought).  Additionally, Defendant Fisher, the most plausible of the Defendants who could authorize the reassignment sought by Plaintiff, if such reassignment were possible, retired in 2017 and would be unable to provide the relief sought.  *See* Am. Compl. ¶ 11.

Plaintiff's naming of UCS itself as a defendant does not cure the deficiency.  The reason is that the entire premise of *Ex parte Young* rests on the ability of a federal court to command an individual state official to refrain from violating federal law rather than a state (or state entity such as UCS) in its own name.  *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247,

255 (2011) (explaining that "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. The [*Ex parte Young*] doctrine is limited to that precise situation").

Finally, the *Ex parte Young* exception is inapplicable to Plaintiff's state law claims, as well as her NYCHRL claim. *Soloviev*, 104 F. Supp. 3d at 245 (explaining that "[t]he *Young* exception to the principle of sovereign immunity under the Eleventh Amendment is inapplicable to claims against state officials on the basis of state law. This is also true for claims under city law brought against state officials.") (citation omitted); *see Colvin v. State Univ. Coll. at Farmingdale*, No. 13-CV-3595, 2014 WL 2863224, at *9 (E.D.N.Y. June 19, 2014) ("The *Young* exception to the principle of sovereign immunity under the Eleventh Amendment rests upon the premise that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes, and is limited to that precise situation.") (internal quotations and citation omitted).

### c.    Scope and Nature of Dismissal Under Rule 12(b)(1)

As noted previously, Plaintiff "joins in the application to dismiss the case or complaints against all named Defendants in their official capacities because of Sovereign Immunity." Pl.'s Opp'n. at 6. Notwithstanding this request, for the reasons discussed above, Plaintiff's Title VII claims are not amenable to dismissal based on New York's sovereign immunity. The Court therefore assumes that Plaintiff's request to have *all* of her claims dismissed pursuant to Rule 12(b)(1) was in error. The request that all Plaintiff's claims against the official capacity Defendants be dismissed is also in conflict with other portions of Plaintiff's motion papers, where, for example, she appears to argue that dismissal based on Eleventh Amendment immunity should be limited to the first, second, third, fifth, and eighth causes of action. *See id*.

at 6-7.  Although the Court declines to recommend dismissal of Plaintiff's Title VII claims based on sovereign immunity, the Court disagrees with the limitation on the scope of dismissal she proposes here.  For the reasons discussed above, dismissal pursuant to Rule 12(b)(1) of all claims against UCS and the Individual Defendants in their official capacities, except for Plaintiff's Title VII claims, is appropriate.

As far as the nature of the dismissal, Plaintiff seeks dismissal of these claims, *without* prejudice.  Pl.'s Opp'n. at 6.  Defendants oppose this request and ask the Court to dismiss these claims *with* prejudice.  *See* Defs.' Reply at 2-3. "While ordinarily leave to amend is granted, dismissal with prejudice is appropriate where the pleading defect is not curable and repleading would be futile."  *Microtel Franchise & Dev. Corp. v. Country Inn Hotel*, 923 F. Supp. 415, 420 (W.D.N.Y. 1996) (citing *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991) *cert. denied,* 503 U.S. 960 (1992)).  Here, there is nothing further that Plaintiff can plead which would remedy the jurisdictional defect; her claims against UCS and the Individual Defendants in their official capacities would remain barred by the Eleventh Amendment.  As a result, dismissal with prejudice under Rule 12(b)(1) of all claims other than Plaintiff's Title VII claims is appropriate.

Based on the foregoing analysis, the Court respectfully recommends to Judge Spatt that Defendants' motion to dismiss pursuant to Rule 12(b)(1) be GRANTED, and all claims in the Amended Complaint raised against UCS and the Individual Defendants in their official capacities, with the exception of Plaintiff's Title VII claims, be dismissed, with prejudice.

19

### B.  Failure to State a Claim Under FED. R. CIV. P. 12(b)(6)

#### 1.  *Standard of Review*

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  The plaintiff must satisfy "a flexible 'plausibility standard.'"  *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

In adjudicating a Rule 12(b)(6) motion to dismiss, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied heavily upon in the complaint and, thus, are rendered "integral" to the complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).

## 2.    *Application to Plaintiff's Complaint*

Defendants seek to dismiss the remaining claims in the Amended Complaint pursuant to Rule 12(b)(6) based on a number of grounds.  The Court begins by addressing the claims in the Amended Complaint which are most readily identified as not viable.

### a.    Violation of Article I, Section 11 of the N.Y. Constitution (First Cause of Action)

Plaintiff asserts that Defendants violated her rights under Article I, Section 11 of the New York Constitution when they subjected her to a hostile work environment and engaged in discrimination against her because of her race, sex, and disability.  *See* Am. Compl. ¶¶ 141-45. Article I, Section 11 of the New York Constitution provides that

> [n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.

N.Y. Const. art. I, § 11.  "No explicit constitutional or statutory authority sanctions a private right of action for violations of the New York State Constitution."  *Wahad v. F.B.I.*, 994 F. Supp. 237, 238 (S.D.N.Y. 1998) (citing *Brown v. State of New York,* 89 N.Y.2d 172, 186 (1996)). Moreover, courts in this Circuit have held that no implied right of action exists "for violations of the New York State Constitution where the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the U.S. Constitution."[4]  *Alwan v. City of New York*, 311 F.

---

[4]  While Judge Garaufis in *Alwan* recognized the consistency with which courts in this Circuit have held that no private right of action exists under the New York Constitution, he declined to apply the logic underpinning these decisions where the state constitutional claims were premised on a theory of *respondeat superior*, because "[a] plaintiff seeking to recover on the basis of respondeat superior simply does not come within the terms of [§] 1983."  *Alwan*, 311 F. Supp. 3d at 587 (quoting *Brown*, 89 N.Y.2d at 194).  This limitation does not bear on the instant matter, as Plaintiff has not indicated that any of her claims are premised on a theory of *respondeat superior*.

21

Supp. 3d 570, 586 (E.D.N.Y. 2018) (citing *Allen v. Antal*, 665 Fed. App'x 9, 13 (2d Cir. 2016) (summary order); *Othman v. City of New York*, No. 13-CV-4771, 2018 WL 1701930, at *17 (E.D.N.Y. Mar. 31, 2018); *Coleman v. Annucci*, No. 17-CV-5031, 2017 WL 6622544, at *4 n.9 (E.D.N.Y. Dec. 28, 2017); *Sullivan v. Metro. Transit Auth. Police Dep't, No.* 13-CV-7677, 2017 WL 4326058, at *10 (S.D.N.Y. Sept. 13, 2017)).

In line with these cases, the Court finds that Plaintiff's attempt to assert claims under Article I, Section 11 of the New York Constitution are not viable because Plaintiff lacks a private right of action. The Court respectfully recommends to Judge Spatt that Defendants' motions to dismiss the first cause of action in the Amended Complaint be GRANTED, and that this cause of action be dismissed, with prejudice.

### b.    Violation of the Fourteenth Amendment to the U.S. Constitution (Fourth Cause of Action)

Plaintiff states that Defendants violated her rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and she attempts to assert a claim under this provision directly. *See* Am. Compl. ¶¶ 154-56. However, it is well settled that "when [42 U.S.C.] § 1983 provides a remedy, an implied cause of action grounded directly in the Constitution is not available. *Lehman v. Doe*, 66 Fed. App'x 253, 255 (2d Cir. 2003) (summary order) (citing *Pauk v. Bd. of Trustees of City Univ. of New York,* 654 F.2d 856, 865 (2d Cir. 1981)). In light of Plaintiff's claim for relief pursuant to Section 1983, the Amended Complaint's independent cause of action brought directly under the Fourteenth Amendment is not viable. The Court respectfully recommends to Judge Spatt that Plaintiff's fourth cause of action be dismissed, with prejudice.

### c.    Violations of Title VII, the ADA, and the FMLA (Ninth Cause of Action)

In the Amended Complaint's ninth cause of action, Plaintiff asserts that Defendants discriminated against her based on her race, sex, and disability, created a hostile work environment, retaliated against her, and through these acts violated her rights under Title VII, the ADA, and the FMLA. *See* Am. Compl. ¶¶ 173-76. Defendants argue that neither Title VII nor the ADA provide for individual employee liability, and Plaintiff has failed to plead the elements of a claim under the FMLA. *See* Defs.' Mem. at 10-3; Fisher Mem. at 10-13. Plaintiff agrees that there is no individual liability under either Title VII or the ADA, and states that the Court should "dismiss the Title VII and ADA claims against all individuals in their personal capacity." Pl.'s Opp'n. at 8. As to her FMLA claim, Plaintiff contends that this claim should proceed against Defendant Fisher. *See id*. at 9. The Court will address in turn each of these statutory bases for relief and the parties' respective arguments.

### i.    *Title VII*

"Title VII prohibits an employer from discriminating against any individual with respect to 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.'" *Gindi v. Bennett*, No. 15-CV-6475, 2016 WL 398184, at *2 (E.D.N.Y. Feb. 1, 2016) (quoting 42 U.S.C. § 2000e-2(a)(1)). Although employers can be held liable under the statute, "individuals are not subject to liability under Title VII." *Rosenfeld v. Michael C. Fina, Inc.*, No. 13 CIV. 04762, 2015 WL 5772021, at *2 (S.D.N.Y. Sept. 29, 2015) (quoting *Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir. 2000)); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). Therefore, the Court respectfully recommends to Judge Spatt that Defendants' motions to dismiss Plaintiff's Title VII claim

23

against UCS be GRANTED with respect to the Individual Defendants in their individual capacities.  However, because Plaintiff's Title VII claim against UCS is not subject to dismissal pursuant to Rule 12(b)(1) based on Eleventh Amendment immunity, the Court must address whether Plaintiff has adequately pleaded her Title VII claim, which encompasses claims for race and sex discrimination, hostile work environment, and retaliation.

### aa.    Discrimination

To plead the elements of a *prima facie* claim of discrimination under Title VII, a plaintiff must allege that "(1) he belongs to a protected class; (2) he was qualified for the position that he held; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Cardin v. Securitas Sec. Servs. USA, Inc.*, No. 16-CV-6101, 2018 WL 562941, at *3 (S.D.N.Y. Jan. 24, 2018) (citing *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004*)); Joseph v. Brooklyn Developmental Disabilities Servs. Office*, No. 12-CV-4402, 2016 WL 6700831, at *4 (E.D.N.Y. Sept. 30, 2016).

Before addressing Plaintiff's allegations of discrimination, the Court must address the appropriate pleading standard for employment discrimination claims.  Prior to deciding either *Iqbal* or *Twombly*, the Supreme Court in *Swierkiewicz v. Sorema, N.A.* made clear that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case" of employment discrimination because "the ordinary rules for assessing the sufficiency of a complaint apply."  534 U.S. 506, 508, 511 (2002).  Notwithstanding the doctrinal shift which took place in the movement from the "no-set-of-facts" pleading standard articulated in *Conley v. Gibson,* 355 U.S. 41 (1957) to the now familiar "plausibility" standard articulated in *Iqbal* and *Twombly*, "the Supreme Court, in *Twombly,* reaffirmed its statement

from *Swierkiewicz* that an employment discrimination plaintiff need not establish a *prima facie* case at the pleading stage." *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 465 (S.D.N.Y. 2013) (citing *Twombly*, 550 U.S. at 570). "Rather, an employment discrimination complaint must include only a short and plain statement of the claim that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Kunik v. New York City Dep't of Educ.*, No. 15-CV-9512, 2017 WL 4358764, at *4 (S.D.N.Y. Sept. 29, 2017) (internal quotation omitted). And yet, while "the elements of a *prima facie* case under [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)] need not be established at the pleading stage, these elements nevertheless 'provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible.'" *Trachtenberg*, 937 F. Supp. 2d at 466 (quoting *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013)).

The Court finds that even under this *de minimus* standard, and even when reading the Amended Complaint in the light most favorable to her, Plaintiff has failed to adequately plead her Title VII discrimination claim under either a theory of race or sex discrimination. The Court is unable to plausibly infer that the adverse employment actions Plaintiff alleges (*i.e.*, denial of her request for reassignment, her "referral" for a fitness for duty evaluation, disciplinary proceedings against her, or revocation of her firearm privileges) occurred under circumstances giving rise to an inference of discriminatory intent.

Since direct evidence of discrimination is rare, "courts examine a variety of factors to evaluate whether there exists a permissible inference of discriminatory intent." *Tubo v. Orange Reg'l Med. Ctr.*, No. 13-CV-1495, 2015 WL 5945853, at *7 (S.D.N.Y. Oct. 13, 2015). This can include "an employer's criticism of plaintiff in ethnically degrading terms; [ ] an employer's invidious comments about other individual's [*sic*] in plaintiff's protected group; [or] an

25

employer's favoritism towards other employees not in the protected group." *Id*. (quotations omitted); *see Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir. 1994)), *aff'd*, 690 Fed. App'x 736 (2d Cir. 2017); *Roa v. Mineta*, 51 Fed. App'x 896, 899 (2d Cir. 2002) (summary order) ("An inference of discrimination may be drawn from a showing that a similarly situated individual that is not in the plaintiff's protected class was more favorably treated."). No such factual allegations are made by Plaintiff here. Indeed, the Amended Complaint contains nothing to connect any action taken against Plaintiff to either her race or sex beyond conclusory assertions that she was discriminated against because she is white and because she is a woman. This assessment is easily illustrated. The totality of Plaintiff's allegations bearing in any way on race or sex are as follows:

128. Sutter, a white female has been treated differently from other officers who requested reasonable accommodations.

129. Fisher did not authorize actions against a non-white female who requested reasonable accommodation due to disabilities.

130. Non-white females who requested reasonable accommodations were rarely subjected to the kind of false imprisonment, mental torture, blatant denial of requests, and administrative charges of misconduct for absences directly linked to disabilities that resulted from compensable injury.

\* \* \*

132. Sutter, a white female was subjected to the scrutiny that non-white females did not experience.

\* \* \*

134. Race and sex of the employee should not be a factor in the official decisions that the defendants make.

135. The Defendants, however, allowed race to be a factor in the decision they make with regard to Sutter, who is a white female.

\* \* \*

26

144. Defendants subjected Sutter to discrimination when they engaged in discrimination against her because of her race, sex and disabilities, as set forth above, amongst others.

\*       \*       \*

148. Defendants discriminated against Sutter because of her race, sex and disabilities when she was subjected to unlawful discriminatory practices.

\*       \*       \*

152. Defendants violated Sutter's rights pursuant to section 8-107.1 of the Administrative Code of the City of New York when they engaged in discrimination against her because of her race, sex and disabilities.

\*       \*       \*

156. Defendants violated the equal protection clause of the 14th Amendment when they denied her equal protection of the law by subjecting her to terms and conditions of employment different from those offered to other non-White female employees.

\*       \*       \*

159. Although Sutter is White, Defendants treated her different because she is also a disabled and White female employee.

\*       \*       \*

175. Defendants violated Sutter's rights as provided for in Title VII when they engaged in discrimination against her because of her race, sex and disabilities.

Am. Compl. ¶¶ 128-30, 132, 134-35, 144, 148, 152, 156, 159, 175. Allegations such as these are inherently conclusory. "[C]onclusory assertions are not entitled to the assumption of truth, and factual allegations must plausibly support the reasonable inference that plaintiffs are entitled to relief." *Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 268 (E.D.N.Y. 2009) (citing *Iqbal*, 129 S.Ct. at 1951).

Further, several of Plaintiff's allegations severely undercut her claim, conclusory as it is, that her race and/or gender played a role in the way she was treated. For example, Plaintiff makes clear that the "referral" to determine her fitness for duty was not connected to her race or gender, but, similar to referrals of other officers, was intended "to frustrate officers and discourage them from applying for reasonable accommodation[s]." Am. Compl. ¶ 51. Moreover, while the Court recognizes that discrimination based on race, sex, and disability are by no means mutually exclusive, the inconsistency with which Plaintiff alleges discrimination on these three bases – sometimes alleging discrimination based upon one, sometimes alleging discrimination based on all three – undercuts any plausibility which an exceedingly generous reading might otherwise extend to her claims.

In the absence of any facts to plausibly suggest that race or sex played a role in any action taken against Plaintiff, the Court respectfully recommends to Judge Spatt that Defendants' motions to dismiss with respect to Plaintiff's Title VII claims for race and sex discrimination be GRANTED, and these claims be dismissed. Notwithstanding the conclusory nature of Plaintiff's Title VII discrimination claims, however, the Court recognizes that "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead. Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion." *L-7 Designs, Inc. v. Old Navy, LLC*, No. 09 CIV. 1432, 2010 WL 532160, at *1 (S.D.N.Y. Feb. 16, 2010) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991)). The Court also observes that in her opposition papers, Plaintiff provides for the first time names of non-white officers she claims were more favorably treated. *See* Pl.'s Opp'n. at 10. Although the Court may not consider these allegations in its adjudication of the instant motions to dismiss, *see Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 526 (S.D.N.Y. 2015)

(explaining that "[a] complaint cannot be amended merely by raising new facts and theories in [a plaintiff's] opposition papers"), the Court finds that re-pleading may lead to additional, more substantive factual allegations.  Accordingly, the Court recommends that Plaintiff's claims for race and sex discrimination under Title VII be dismissed, without prejudice.  In doing so, the Court makes no finding or recommendation about whether any subsequent allegations will support a timely Title VII discrimination claim in light of Plaintiff's having filed her EEOC Complaint on August 22, 2017 and Title VII's 300 day limitations period.  *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 204 (E.D.N.Y. 2014) (citing 42 U.S.C. § 2000e–5(e)(1)).

### bb.    Retaliation

Title VII contains both an anti-discrimination and an anti-retaliation provision.  With respect to retaliation, Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [an employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [an employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).  "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that:  (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).  These two elements are often presented as four distinct elements:  that a plaintiff "[1] engaged in protected participation or opposition under Title VII, [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part

in the adverse employment action." *McCullough v. John T. Mather Hosp. of Port Jefferson, New York, Inc.*, No. 16-CV-4968, 2019 WL 1755436, at *8 (E.D.N.Y. Apr. 19, 2019) (quoting *Sosa v. Rockland County Community College*, 2017 WL 3105872 (S.D.N.Y. July 20, 2017)).  With respect to the "adverse employment action" element, the relevant question is not whether the action constituted "a materially adverse change in the terms and conditions of employment," which is the standard for claims of substantive discrimination, but rather "whether the [alleged adverse action] to which [the plaintiff] was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 44 (2d Cir. 2019).

The Amended Complaint fails to state a Title VII retaliation claim because Plaintiff has not alleged facts plausibly suggesting that she engaged in a protected activity under Title VII. "Under Title VII, protected activity includes both 'opposing discrimination proscribed by the statute and . . . participating in Title VII proceedings.'" *Bowen-Hooks*, 13 F. Supp. 3d at 221 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).  This includes "informal protests of discriminatory employment practices, including making complaints to management." *McCullough*, 2019 WL 1755436, at *8.  "Generalized complaints, however, are insufficient; complaints must be sufficiently specific to make clear that the employee is complaining about conduct prohibited by the applicable discrimination statute." *Id*. (citing *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011)).  To allege a protected activity based on opposition to discriminatory conduct, "[a] plaintiff is only required to have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII." *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001).

Here, Plaintiff has not alleged that she opposed any conduct she believed to be proscribed by Title VII.  Nor has she alleged participation in any Title VII proceedings prior to any of the conduct of which she complains.  Consequently, Plaintiff has failed to plausibly allege the first element of a Title VII retaliation claim.  *Cf. McCullough*, 2019 WL 1755436, at *8 ("To the extent that an employee complains about perceived 'unfair' treatment relating to job responsibility, hiring practices, or corporate policy, but fails to link the treatment to unlawful discrimination or to his protected status, he fails to establish that he was engaged in protected activity."); *Nescolarde v. Satispie, LLC*, 149 F. Supp. 3d 397, 410 (W.D.N.Y. 2016) (finding that applying for a supervisor position which resulted in laughter from an employer was not a protected activity under Title VII); *Littlejohn v. City of New York,* 795 F.3d 297, 318 (2d Cir. 2015) ("To the extent an employee is required as part of her job duties to report or investigate other employees' complaints of discrimination, such reporting or investigating by itself is not a protected activity under § 704(a)'s opposition clause, because merely to convey others' complaints of discrimination is not to oppose practices made unlawful by Title VII.").

Because Plaintiff has failed to plead the first element of *a prima facie* Title VII retaliation claim, the Court respectfully recommends to Judge Spatt that Defendants' motions to dismiss this claim be GRANTED, and that Plaintiff's Title VII retaliation claim as against UCS be dismissed, without prejudice.

### cc.    Hostile Work Environment

To state a proper claim for hostile work environment under Title VII, a plaintiff needs to plead facts asserting that the conduct she encountered "(1) is objectively severe or pervasive— that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such

an environment because of the plaintiff's sex" or race.  *Conklin v. Cty. of Suffolk*, 859 F. Supp. 2d 415, 425 (E.D.N.Y. 2012) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).   To determine whether the conduct alleged is sufficiently severe or pervasive, courts look to the following non-exhaustive factors:  "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted."  *Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 260-61 (E.D.N.Y. 2012) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009)) (internal quotations and citation omitted); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693-94 (2d Cir. 2012) *Acosta v. City of New York*, No. 11 Civ. 856, 2012 WL 1506954, at *7 (S.D.N.Y. Apr. 26, 2012); *Bowen-Hooks*, 13 F. Supp. 3d at 233.

For the same reasons that Plaintiff's Title VII discrimination claim must fail, so too must her Title VII hostile work environment claim:  there are no allegations in the Amended Complaint plausibly connecting any action taken towards Plaintiff to either her race or her sex. As discussed previously, all of Plaintiff's allegations relating to her race and sex are fundamentally conclusory.  As a result, Plaintiff is unable to plead the third element of *a prima facie* claim of hostile work environment – a causal connection between her race and/or sex and her employer's conduct.

Additionally, Plaintiff's pleadings do not sufficiently allege conduct which is "objectively severe or pervasive" so as to constitute a hostile work environment.  The closest she comes are the allegations relating to the February 28, 2017 revocation of her firearm privileges. Plaintiff states that she was "locked up in a room with Captain Posillipo and Dibello and subjected to a wide range of questions about her firearms [and] she was told she was not free to

leave," Am. Compl. ¶ 90, that she rode in a car with officers going 85 miles per hour, *id*. ¶ 109, and that the officers "created a scene" at her home.  *Id*. ¶ 110.  However, the incidents surrounding the revocation of Plaintiff's firearm privileges are limited both in time and scope to a single day.  Such "[p]eriodic and episodic incidents are not sufficient to establish hostile work environment claims."  *Bowen-Hooks*, 13 F. Supp. 3d at 234; *see Das v. Consol. Sch. Dist. of New Britain*, 369 Fed. App'x 186, 189-90 (2d Cir. 2010) (summary order) ("Generally, unless an incident of harassment is sufficiently severe, [the] 'incidents [comprising a hostile work environment claim] must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'") (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)); *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 313 (E.D.N.Y. 2014) (recognizing that "single incidents of harassment generally do not create a hostile work environment").  Likewise, "[s]everity is a hallmark of a hostile work environment claim.  Such claims 'are not intended to promote or enforce civility, gentility or even decency.'"  *Acosta*, 2012 WL 1506954, at *7 (quoting *Ennis v. Sonitrol Mgmt. Corp.*, No. 02–CV–9070, 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006)).

Because Plaintiff has failed to state a claim for hostile work environment under Title VII, the Court respectfully recommends to Judge Spatt that Defendants' motions to dismiss this claim be GRANTED, and Plaintiff's Title VII hostile work environment claim as against UCS be dismissed, without prejudice.

### ii.    ADA

Similar to Title VII, there is no individual employee liability under the ADA; rather, "[a] federal employment discrimination claim must be filed against the employer, not individual employees."  *Jackson v. Roe*, No. 16-CV-2240, 2016 WL 3512178, at *2 (E.D.N.Y. June 22,

2016) (citing *Castro v. City of New York*, 24 F. Supp. 3d 250, 259 (E.D.N.Y. 2014) (collecting cases)).  Accordingly, the Court respectfully recommends to Judge Spatt that Defendants' motions to dismiss Plaintiff's ADA claims be GRANTED with respect to the Individual Defendants in their individual capacities, and that these claims be dismissed, with prejudice.

Additionally, the Court notes that as it has already found, under Title I of the ADA, which is Plaintiff's exclusive remedy for employment discrimination, Plaintiff's claims against UCS are barred by the Eleventh Amendment.  This immunity extends to protect the State from suit based on all conduct proscribed by Title I, including retaliation.  *See Davis v. Vermont, Dep't of Corr.*, 868 F. Supp. 2d 313, 322 (D. Vt. 2012) ("Because Defendant is immune from Plaintiff's underlying ADA claim of employment discrimination under Title I, it should likewise be immune to his Title V retaliation claim that is grounded in acts that are unlawful under Title I.").

### iii.    FMLA

The final set of claims contained in Plaintiff's ninth cause of action are her FMLA claims.  "The Second Circuit recognizes distinct claims for interference and retaliation under the FMLA."  *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 198-99 (S.D.N.Y. 2009) (citing *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)).  It appears that Plaintiff attempts to plead both types of FMLA claims.  As to which Defendants she is attempting to sue under the FMLA, Plaintiff states in her opposition papers that "Defendant Fisher primarily engaged in the unlawful denial of FMLA.  Plaintiff does not allege that the other individual Defendants are culprits in FMLA denial."  Pl.'s Opp'n. at 9.  Because the Court has already determined that Plaintiff's FMLA claims are based on that statute's "self-care" provision, and because the Eleventh Amendment bars claims against the State of New York under this provision, the Court's analysis will be limited to Defendant Fisher.

34

The threshold question with respect to Fisher is whether the FMLA supports individual liability in the first instance.  "An individual may be held liable under the FMLA only if she is an 'employer,' which is defined as encompassing 'any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.'"  *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016) (quoting 29 U.S.C. § 2611(4)(A)(ii)(I)).  In addressing whether an individual employee satisfies this test and is therefore individually liable, "district courts in this Circuit have applied the 'economic reality' test adapted from the Fair Labor Standards Act context."  *Noia v. Orthopedic Assocs. of Long Island*, 93 F. Supp. 3d 13, 16 (E.D.N.Y. 2015) (quoting *Corrado v. New York State Unified Court Sys.*, No. CV 2012-1748, 2014 WL 4626234, at *3 (E.D.N.Y. Sept. 15, 2014)).  Under the economic reality test, "the Court must determine whether [an] individual defendant controlled in whole or in part plaintiff's rights under the FMLA."  *Noia*, 93 F. Supp. 3d at 16 (quoting *Smith v. Westchester Cty.,* 769 F. Supp. 2d 448, 475 (S.D.N.Y. 2011)).  In this analysis, the Court must consider a totality of factors, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Rios v. Core Facility Servs. LLC*, No. 16-CV-1748, 2018 WL 1545684, at *11 (E.D.N.Y. Mar. 29, 2018) (quoting *Graziadio*, 817 F.3d at 422).

Defendants state that, with respect to her FMLA claims, "Plaintiff only alleges that she requested FMLA leave in February 2017 'to cover intermittent use of sick time between February 2017 and December 31, 2017,' but that she was only granted one month of leave." Defs.' Mem. at 13; Fisher Mem. at 13.  They point out that Plaintiff does not allege which of the named Individual Defendants, if any, made this decision.  Defs.' Mem. at 13; Fisher Mem. at 13.

35

In her opposition, Plaintiff states that "Fisher was the Deputy Administrative Judge for New York City Family Court and in that capacity exercised broad powers over Plaintiff's work schedule, leave, and time approval," referencing paragraphs 10 and 11 of the Amended Complaint. Pl.'s Opp'n. at 9. Plaintiff goes on to state that "Fisher also had final control over the approval of Plaintiff's FMLA and unreasonably denied Plaintiff's FMLA for discriminatory reasons. . . . Defendant Fisher only approved one month [of FMLA leave]. That was not the practice and non-white women were not subjected to such piecemeal approach." *Id*. (citing Am. Compl. ¶¶ 31-33).

As an initial matter, the paragraphs of the Amended Complaint referenced by Plaintiff in her motion papers – paragraphs 10-11 and 31-33 – do not support her contentions. These paragraphs state as follows:

> 10. Fern Fisher was a former Deputy Administrative Judge for New York City Family Court, who authorized the illegal detention and discriminatory acts towards Plaintiff.

> 11. Upon information and belief Judge Fisher hereinafter referred to as Fisher retired from the U.C.S. sometimes [*sic*] in 2017 after she authorized several illegal acts against Plaintiff, including the detention of Plaintiff, and illegal entry into Plaintiff's home.

> \*      \*      \*

> 31. Sutter, on or about February 9, 2017, requested leave under the Family Medical Leave Act (FMLA) to cover intermittent use of sick time between February 2017 and December 31, 2017. The leave was only granted for one month.

> 32. Sutter was sent a letter informing her that she would need to reapply after the month was over to extend the FMLA.

> 33. The request for FMLA made on or about February 9, 2017 was based on her worsening condition including migraines, photophobia, smell sensitivity, nausea and vomiting that were associated with traveling to and from work.

36

Am. Compl. ¶¶ 10-11, 31-33.  Nothing in these paragraphs supports Plaintiff's claim that Fisher

"exercised broad powers over Plaintiff's work schedule, leave, and time approval," or that Fisher

had any control over Plaintiff's rights under the FMLA.  A further review of the rest of the

Amended Complaint reveals that the only other allegations which Plaintiff might point to in

support of her contention that Fisher exercised control over her FMLA rights are as follows:

> 34.  The management Defendants refused, without any reasonable
> basis, to provide FMLA to Sutter.

> *       *       *

> 41.  U.C.S. as a matter of official policy refers employees to fitness
> of duty examination of this nature that are unnecessary and
> inconsistent with ADA and FMLA.

> *       *       *

> 115. Sutter was later informed by the Union that Major Michael
> Demarco said her weapons were being taken from her due to
> medical reasons.

> *       *       *

> 118. The only medical issue going on with Sutter in February 2016
> was her request for reasonable accommodation and FMLA due to
> intermittent migraines.

*Id*. ¶¶ 34, 41, 115, 118.  In light of these allegations, the Court is obliged to find that Plaintiff has

failed to make out an FMLA claim against Defendant Fisher or any of the Individual Defendants.

The Court's conclusion rests on two grounds.  First, the Court agrees with Defendants

that the Amended Complaint fails to adequately allege that any of the Individual Defendants,

including Fisher, played a direct role in the determination of Plaintiff's FMLA leave request.

Although Plaintiff alleges that "[t]he management Defendants refused, without any reasonable

basis, to provide FMLA to [her]," Am. Compl. ¶ 34, this claim fails to connect any particular

Defendant to any unlawful act, and, perhaps more importantly, fails to connect any Defendant to

the unreasonable denial of Plaintiff's FMLA leave request.  Failure to provide FMLA leave is

not the same as unreasonably denying an FMLA leave request.  This point is illustrated by the

fact that notice to the employer of an intent to take FMLA leave is an element of an interference

claim.  *See Hill v. City of New York*, 136 F. Supp. 3d 304, 342 (E.D.N.Y. 2015) ("To state a

claim for FMLA interference, a plaintiff must plead facts to show that (1) she is an eligible

employee under the FMLA; (2) the defendant is an employer as defined in the FMLA; (3) she

was entitled to leave under the FMLA; (4) she gave notice to the defendant of her intention to

take leave; and (5) she was denied benefits to which she was entitled under the FMLA."), *order*

*amended and supplemented*, No. 13-CV-6147, 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019).

Indeed, to the extent Plaintiff's FMLA claim rests on what she perceives as the unreasonable

denial of her FMLA leave request, Plaintiff's failure to plead any direct involvement in that

determination by Fisher or any of the Individual Defendants may be sufficient in itself to defeat

her FMLA claim.  *See Noia*, 93 F. Supp. 3d at 17 ("[T]he Court need not decide whether the

Plaintiff has adequately alleged a basis for individual liability against Dr. Puopolo under the

FMLA. This is because the Plaintiff fails to allege direct involvement by Dr. Puopolo in the

alleged FMLA violation by the Defendant. This is fatal to the Plaintiff's proposed FMLA claim

against Dr. Puopolo.").

     Second, and more generally, there are insufficient allegations from which the Court can

plausibly infer that Fisher or any of the other Individual Defendants "controlled in whole or in

part plaintiff's rights under the FMLA."  *Noia*, 93 F. Supp. 3d at 16.  Specifically, the Court is

unable to infer that any of the Individual Defendants (1) had the power to hire and fire Plaintiff,

(2) supervised and controlled Plaintiff's work schedule or conditions of employment, (3)

determined the rate and method of payment, and (4) maintained Plaintiff's employment records.

*See Rios*, 2018 WL 1545684, at *11. In the absence of any allegations to this effect, there can be

no individual liability under the FMLA. While Plaintiff's pleadings may or may not sufficiently

connect the Individual Defendants to *other* purportedly unlawful acts – a question the Court has

answered in the negative – there are insufficient allegations connecting the Individual

Defendants to Plaintiff's rights under the FMLA.

Because Plaintiff has failed to plead facts sufficient to connect Defendant Fisher – or any

Defendant – to conduct for which individual liability could be imposed under the FMLA, the

Court respectfully recommends to Judge Spatt that Defendants' motions be GRANTED with

respect to Plaintiff's FMLA claims against Fisher, and that these claims be dismissed, without

prejudice.

### d.     42 U.S.C. § 1983 (Sixth Cause of Action)

In her sixth cause of action, Plaintiff states that "Defendants violated [her] federal

constitutional and statutory rights" and she seeks a remedy pursuant to 42 U.S.C. § 1983. Am.

Compl. ¶ 164; *see id*. ¶¶ 162-64. Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for

vindicating federal rights elsewhere conferred by those parts of the United States Constitution

and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979).

Although not explicitly stated in the Amended Complaint, the Court construes Plaintiff's

reference to Section 1983 to be an assertion of claims for race and sex discrimination, retaliation,

and hostile work environment in violation of her rights under the Fourteenth Amendment.  As explained previously, as an administrative arm of the State of New York, UCS is protected from Section 1983 claims by sovereign immunity.  *See Obilo*, 2003 WL 1809471, at *13.  The Court therefore addresses Plaintiff's Section 1983 claims solely with respect to the Individual Defendants.

To survive a motion to dismiss, a plaintiff asserting a Section 1983 claim must allege that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution [or laws] of the United States." *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 316-17 (E.D.N.Y. 2014) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir.1999) (citation omitted)).  The Court is satisfied that the Individual Defendants were acting under color of state law as UCS Court Officers during their interactions with the Plaintiff.  The Court also assumes *arguendo* that the "personal involvement" element of individual liability under Section 1983 has been sufficiently pleaded.  *See Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) ("An individual may be held liable under §§ 1981 and 1983 only if that individual is personally involved in the alleged deprivation.") (quotation marks omitted).  The next question becomes whether Plaintiff has adequately pleaded the underlying elements of her claims for race and sex discrimination, retaliation, and hostile work environment in violation of the Fourteenth Amendment.

The Court has already answered this question.  Claims for discrimination, retaliation, and hostile work environment brought pursuant to Section 1983 for Fourteenth Amendment violations are analyzed under the same framework as discrimination, retaliation, and hostile work environment claims brought under Title VII.  *Awad v. City of N.Y.*, No. 13 CIV. 5753, 2014 WL

1814114, at *5 (E.D.N.Y. May 7, 2014); *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011); *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010); *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006); *Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 225 (2d Cir. 2004).  Because the Court has already determined that Plaintiff failed to plead claims for discrimination, retaliation, and hostile work environment under Title VII, the Court need go no further in the Section 1983 context.

The Court respectfully recommends to Judge Spatt that Defendants' motions to dismiss Plaintiff's claims brought pursuant to Section 1983 for race and sex discrimination, retaliation, and hostile work environment be GRANTED, and these claims be dismissed, without prejudice.

### e.    42 U.S.C. § 1981 (Fifth Cause of Action)

In her fifth cause of action, Plaintiff states that Defendants violated her rights under 42 U.S.C. § 1981, and she purports to assert claims for discrimination, retaliation, and hostile work environment.  *See* Am. Compl. ¶¶ 157-61.  Section 1981 provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.  As the Second Circuit recently observed, "[i]n *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), [ ] the Supreme Court held that 'the express cause of action for damages created by § 1983 constitutes the *exclusive federal remedy* for violation of the rights guaranteed in § 1981 by state governmental units.'" *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018) (emphasis in original) (quoting

*Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989)).  Accordingly, "§ 1981 does not provide a separate private right of action against state actors."  *Duplan*, 888 F. 3d at 621.  Plaintiff's attempt to plead an independent cause of action under Section 1981 should be dismissed accordingly.

Even construing her claim for violation of Section 1981 to be brought pursuant to Section 1983, Plaintiff's claim still fails.  First, as has already been explained,  UCS is protected from suit for violation of Section 1981 rights – and Section 1983 claims more generally – by sovereign immunity.  *See Schwartz v. York Coll.*, No. 06-CV-6754, 2009 WL 3259379, at *2 (E.D.N.Y. Mar. 31, 2009).  Assuming *arguendo* that Plaintiff has pleaded sufficient personal involvement to invoke liability of the Individual Defendants in their individual capacities, *see Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000), the Amended Complaint fails to state facts sufficient to satisfy the elements of claims for discrimination, retaliation, or hostile work environment under Section 1981.  The reason is that the standard for pleading discrimination, retaliation, and hostile work environment under Section 1981 is essentially the same as the standard under Title VII and Section 1983.  *Awad*, 2014 WL 1814114, at *5; *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 220 (E.D.N.Y. 2014); *Acosta v. City of New York*, No. 11 Civ. 856, 2012 WL 1506954, at *7 (S.D.N.Y. Apr. 26, 2012); *Smith*, 798 F. Supp. 2d at 451*; Ruiz*, 609 F.3d at 491; *Williams*, 458 F.3d at 72; *Schiano v. Quality Payroll Systems, Inc.,* 445 F.3d 597, 609 (2d Cir. 2006); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000).  Since the Court has already determined that Plaintiff has failed to plead claims for discrimination, retaliation, and hostile work environment under Title VII and Section 1983, the same holds true for Plaintiff's Section 1981 claims.

The Court respectfully recommends to Judge Spatt that Defendants' motions to dismiss Plaintiff's claims under Section 1981 for race and sex discrimination, retaliation, and hostile work environment be GRANTED.  The Court further recommends that to the extent Plaintiff intended to plead her Section 1981 claims as a standalone cause of action (instead of under Section 1983), that any such claims be dismissed, *with* prejudice.

### f.      Violation of the NYSHRL (Second Cause of Action)

In her second cause of action, Plaintiff states that "Defendants violated [her] rights under Article 15 of the New York Executive Law, New York Executive Law Section 296(1) by engaging in unlawful discriminatory practices." Am. Compl. ¶ 147.  In particular, Plaintiff claims that Defendants discriminated against her based on her race and sex, retaliated against her, and created a hostile work environment. *Id.* ¶¶ 148-49.  Defendants argue that Plaintiff's NYSHRL claims against the Individual Defendants must fail because UCS is not subject to suit. *See* Defs.' Mem. at 13; Fisher's Mem. at 13.  Defendants are correct that, as the Court has previously found, UCS is immune from suit under the NYSHRL.  *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 244 (E.D.N.Y. 2015) ("New York State has not consented to suit under [NYSHRL or NYCHRL].") (citation omitted); *Schwartz*, 2009 WL 3259379, at *2 (finding neither waiver nor congressional abrogation of immunity for claims brought pursuant to Section 1981, NYCHRL, or NYSHRL).  However, Defendants' argument that "[t]o hold any Individual Defendant liable under the NYSHRL and NYCHRL, Plaintiff must plead facts showing that those Defendants aided or abetted primary violations by [the] employer," misses the mark. Mem. at 13; Fisher's Mem. at 13.  "[T]he NYSHRL provides several bases upon which an individual employee may be held liable.  First, under N.Y. Exec. Law § 296(1), individual liability attaches where an employee is shown to have an 'ownership interest or any power to do

more than carry out personnel decision made by others.'" *Pellegrini v. Sovereign Hotels, Inc.*, 740 F. Supp. 2d 344, 355 (N.D.N.Y. 2010) (quoting *Patrowich v. Chem. Bank,* 63 N.Y.2d 541, 542 (1984)).  Liability under Section 296(1), which is the provision of the NYSHRL referenced in the Amended Complaint, *see* Am. Compl. ¶ 147, is separate and apart from aiding and abetting liability under Section 296(6) addressed by Defendants.  *See Pellegrini*, 740 F. Supp. 2d at 356; *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521-22 (S.D.N.Y. 2015) ("The NYSHRL allows for individual liability under two theories: [i] if the defendant has 'an ownership interest' in the employer or has 'the authority to hire and fire employees,' [or] [ii] if the defendant aided and abetted the unlawful discriminatory acts of others.") (internal citation omitted).

Notwithstanding which of the two theories of individual liability Plaintiff has set forth, the Court finds that the allegations in the Amended Complaint are insufficient to state a claim for race or sex discrimination, retaliation, or hostile work environment under the NYSHRL.  The reasons is that the same standard applies to discrimination, retaliation, and hostile work environment claims under the NYSHRL as applies to these claims brought under Title VII, Section 1981, and Section 1983.  *See Rivera v. Rochester Genesee Reg'l Transp. Auth.,* 743 F.3d 11, 19 n.4 (2d Cir. 2014) ("The same standards [as are applied to Title VII] apply to the plaintiffs' hostile environment claims arising under the NYSHRL, and to their claims arising under 42 U.S.C. § 1981."); *Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *14 (E.D.N.Y. Sept. 21, 2015) ("As with hostile work environment claims, claims of discrimination under the NYSHRL are analyzed under the same standard as a Title VII claim."), *aff'd*, 652 Fed. App'x 44 (2d Cir. 2016); *Soloviev*, 104 F. Supp. 3d at 246 (treating claims for discriminatory discharge and retaliation under Title VII and the NYSHRL simultaneously

because they are analyzed under the same standard).  Therefore, because the Court has already determined that Plaintiff has failed to plead claims for discrimination, retaliation, and hostile work environment under Title VII, Section 1983, and Section 1981, the Court finds Plaintiff has failed to plead the same claims under the NYSHRL.

The Court respectfully recommends to Judge Spatt that Defendants' motions to dismiss Plaintiff's claims brought under the NYSHRL for race and sex discrimination, retaliation, and hostile work environment be GRANTED, and these claims be dismissed, without prejudice.

### g.      Violation of the NYCHRL (Third Cause of Action)

In her third cause of action, Plaintiff states that "Defendants violated [her] rights pursuant to [S]ection 8-107.1 of the Administrative Code of the City of New York when they engaged in discrimination against her because of her race, sex and disabilities" and "subjected [her] to retaliation and hostile work environment."  Am. Compl. ¶¶ 152-53.  Importantly, the Second Circuit has instructed that district "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal quotations and citations omitted).  Even under the more liberal standard of the NYCHRL, however, the Court finds that Plaintiff's Amended Complaint is unable to state a claim for race or sex discrimination, retaliation, or hostile work environment.

### i.      *Discrimination*

As an initial matter, because UCS as an administrative arm of the State of New York is protected from suit under the NYCHRL by the Eleventh Amendment, *see Schwartz*, 2009 WL 3259379, at *2, Plaintiff's NYCHRL claims may only proceed if that law creates individual

liability.  Fortunately, this is a straightforward inquiry – the text of the NYCHRL clearly

provides for individual liability.  The NYCHRL's anti-discrimination provision provides as

follows:

> It shall be an unlawful discriminatory practice:  (a) For an employer *or an employee or agent thereof*, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service or alienage or citizenship status of any person: (1) To represent that any employment or position is not available when in fact it is available; (2) To refuse to hire or employ or to bar or to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment.

New York City, N.Y., Code § 8-107(1)(a) (emphasis added); *Malena v. Victoria's Secret Direct,*

*LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) ("The NYCHRL provides a broader basis for

direct individual liability than the NYSHRL.").  For purposes of this discussion, the Court will

assume that Plaintiff has pleaded facts sufficient to implicate the individual liability of the

Individual Defendants under the anti-discrimination provision of the NYCHRL.

   With respect to a claim of discrimination under the NYCHRL, "[t]he proper inquiry . . . is

whether a plaintiff 'was treated "less well" because of her [membership in a protected class].'"

*Pena-Barrero v. City of New York*, No. 14-CV-9550, 2017 WL 1194477, at *15 (S.D.N.Y. Mar.

30, 2017) (quoting *Mihalik*, 715 F.3d at 111), *aff'd*, 726 Fed. App'x 31 (2d Cir. 2018).  Viewing

the totality of the allegations in the light most favorable to Plaintiff, the Court is forced to

conclude, as it has above, that the Amended Complaint contains no averments beyond

conclusory allegations that Plaintiff was treated les well because of her sex or race.  There are

simply no allegations from which the Court can infer that any action taken against the Plaintiff

was motivated in any way by her sex or her race.  The attempt to connect the Defendants' actions

to Plaintiff's sex or race is inherently conclusory.  *See* Am. Compl. ¶¶ 128-30, 132, 134-35, 144,

148, 152, 156, 159, 175.  "[C]onclusory assertions are not entitled to the assumption of truth, and factual allegations must plausibly support the reasonable inference that plaintiffs are entitled to relief." *Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 268 (E.D.N.Y. 2009).

### ii.    Retaliation

The anti-retaliation provision of the NYCHRL states as follows:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter. The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of employment, housing, or a public accommodation, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

New York City, N.Y., Code § 8-107(7).  "Thus, to prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (internal citation omitted).  Individual liability for retaliation under the NYCHRL "is limited to cases where 'an individual defendant . . . actually participates in the conduct giving rise to' the plaintiff's [ ] retaliation claim." *Malena*, 886 F. Supp. 2d at 366 (quoting *Hozer v. Pratt Indus. (USA), Inc.*, No. 10-CV-03874, 2012 WL 2049498, at *1 n.1 (E.D.N.Y. June 6, 2012)).

47

Assuming that Plaintiff has adequately pleaded personal involvement of one or more of the Individual Defendants, the Court finds that her retaliation claim under the NYCHRL must still fail.  This claim falls short for the same reason her other retaliation claims fail – she has not stated that she engaged in any "protected activity" under the NYCHRL.  Significantly, Plaintiff's request for FMLA leave does not constitute a protected activity under the NYCHRL.  *See Corrado v. New York Unified Court Sys.*, 163 F. Supp. 3d 1, 25 (E.D.N.Y. 2016)  ("FMLA Leave is not a protected activity under the NYCHRL, although it is a protected activity under the FMLA."), *aff'd sub nom. Corrado v. New York State Unified Court Sys.*, 698 Fed. App'x 36 (2d Cir. 2017).  Nor does Plaintiff assert any other allegations which could be characterized as opposition to perceived discrimination.  *See Sosa v. Local Staff, LLC*, 618 Fed. App'x 19, 20 (2d Cir. 2015) (summary order) ("We also conclude that Sosa did not 'oppose[ ] any practice forbidden' by the NYCHRL.  N.Y.C. Admin. Code § 8–107(7).  Although we construe the NYCHRL more broadly than its federal and state counterparts, we recognize that it still does not 'operate as a general civility code.'") (internal citation omitted); *Mi–Kyung Cho v. Young Bin Cafe,* 42 F. Supp. 3d 495, 508 (S.D.N.Y.2013) (finding that an employee's request for workers' compensation could not be the basis for a retaliation claim "because [the request] does not constitute an opposition or complaint about unlawful discrimination").

### iii.    *Hostile Work Environment*

"As with retaliation, a plaintiff suing for a hostile work environment under the NYCHRL bears a lower burden than she does under federal law." *Belton v. City of New York*, No. 12-CV-6346, 2014 WL 4798919, at *8 (S.D.N.Y. Sept. 26, 2014), *aff'd*, 629 Fed. App'x 50 (2d Cir. 2015).  While the alleged hostile conduct constituting the basis for a hostile work environment claim under the NYCHRL need not be severe or pervasive, *see Mihalik*, 715 F.3d at 113, a

48

plaintiff "must still allege that his [membership in a protected class] was the motivating factor behind any workplace hostility." *Boonmalert v. City of New York*, 721 Fed. App'x 29, 34 (2d Cir. 2018) (summary order); *see Mihalik*, 715 F.3d at 113 (explaining that "the NYCHRL is not a general civility code, *see* [*Williams v. New York City Hous. Auth.,* 872 N.Y.S.2d 27, 40 (2009)], and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives"). For the same reasons that Plaintiff's Title VII discrimination and hostile work environment claims fail, so too must her NYCHRL hostile work environment claim fail: there are no allegations in the Amended Complaint plausibly connecting any action taken against Plaintiff to either her race or her sex. As discussed at length previously, all of Plaintiff's allegations that her race and sex were the motivating factors behind the Defendants' conduct toward her are fundamentally conclusory.

The Court respectfully recommends to Judge Spatt that Defendants' motions to dismiss Plaintiff's claims under the NYCHRL for race and sex discrimination, retaliation, and hostile work environment be GRANTED, and that these claims be dismissed, without prejudice.

**h.      False Arrest/Imprisonment**

In the seventh cause of action, Plaintiff states that she was "illegally detained and falsely imprisoned by the Defendants when they compelled her with the powers of their offices to get into a car with armed law enforcement officers." Am. Compl. ¶ 166. She states that she "was held against her will, and her freedom unduly restrained against her will in violations [*sic*] of State and federal Constitutional Rights." *Id*. ¶ 168.

While the terms "false arrest" and "false imprisonment" are sometimes used in a mutually exclusive fashion, "false arrest is considered a kind of false imprisonment, and the claims are analyzed in identical fashion." *Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y.

2005).  "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted).  To state a claim for false arrest under Section 1983 or New York law, a plaintiff must plausibly allege that:  "(1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified."  *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 515 (S.D.N.Y. 2013) (quoting *Richardson v. N.Y.C. Health & Hosps. Corp.,* No. 05 Civ. 6278, 2009 WL 804096, at *7 (S.D.N.Y. Mar. 25, 2009)); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995).

Reading the Amended Complaint in the light most favorable to the Plaintiff, the Court finds that Plaintiff has failed to state a claim for false imprisonment under either New York law or under Section 1983 for violation of her Fourth Amendment rights.  The heart of Plaintiff's claim is that she was "locked up in a room with Captain Posillipo and Dibello and subjected to a wide range of questions about her firearms" and "she was told she could not leave."  Am. Compl. ¶ 90.  This confinement and questioning lasted "approximately forty-five minutes."  *Id*. ¶ 103.

"A false imprisonment claim requires a prima facie showing of actual confinement or threatening conduct."  *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 294 (S.D.N.Y. 2011).  Notwithstanding her claim that "she was told she could not leave," the Court finds that Plaintiff's allegations are insufficient to plead "actual confinement or threatening conduct."  "A lengthy interview of an employee by an employer, without more, does not support a claim for false imprisonment."  *Lee v. Bankers Tr. Co.*, No. 96 CIV. 8153, 1998 WL 107119, at *4 (S.D.N.Y. Mar. 11, 1998) (finding that five hours of interrogation and threats by an

employer's security personnel claiming to be former FBI agents did not constitute false

imprisonment), *aff'd*, 166 F.3d 540 (2d Cir. 1999); *cf. Copantitla v. Fiskardo Estiatorio, Inc.*,

788 F. Supp. 2d 253, 294 (S.D.N.Y. 2011) ("[A] fear of being arrested also does not suffice to

support a false imprisonment claim.") (collecting cases). *Compare Gonsalez v. Marin*, No. 12

CV 1157, 2014 WL 2514704, at *11 (E.D.N.Y. Apr. 25, 2014) (finding that immigrant plaintiffs

had adequately pleaded false imprisonment where they alleged that on approximately four or five

occasions their employer "told them that 'inspectors' were in the store, confined [plaintiffs] by

shutting and locking the doors that led to the basement, and told plaintiffs not to leave the

basement or make any noise," including one defendant "threaten[ing] plaintiffs that he would

call immigration officials if they made noise or tried to leave the basement"), *report and*

*recommendation adopted*, No. 12-CV-1157, 2014 WL 2526918 (E.D.N.Y. June 4, 2014).  Under

Plaintiff's facts, the circumstances of her questioning simply do not rise to the level necessary to

qualify as "actual confinement or threatening conduct" in accordance with the applicable case

law.

The Court respectfully recommends to Judge Spatt that Defendants' motions to dismiss

Plaintiff's false arrest/false imprisonment claim be GRANTED, and that this claim be dismissed.

Lastly, the Court notes that under the heading of the seventh cause of action, Plaintiff

alleges that "Defendants also illegally entered the Plaintiff's home without permission and

without a warrant in violation of State and Federal Constitutional requirements."  Am. Compl.

¶ 160.  While such language might be construed as an attempt to plead a claim for relief based on

a violation of Plaintiff's Fourth Amendment rights, the Court declines to do so.  Language like

this is indicative of the wide swath of generalities which comprise Plaintiff's Amended

Complaint.[5]  The deficiencies in the Amended Complaint are further illustrated in the multiple

claims asserted which lack legal or factual foundation.  Plaintiff's counsel acknowledges as

much in acquiescing in the dismissal of many of these claims, as the Court has noted in this

Report and Recommendation.  The Court therefore declines to expend its limited resources

fleshing out a claim Plaintiff may or may not be attempting to assert.  *See Crown Castle NG E.

LLC v. City of Rye*, No. 17 CV 3535, 2017 WL 6311693, at *5 n.4 (S.D.N.Y. Dec. 8, 2017)

("The Court declines to liberally construe the complaint to read in un-pleaded claims and will not

address the merits of them."), *appeal withdrawn*, No. 18-78, 2018 WL 1774186 (2d Cir. Mar. 20,

2018).

### i.        "Fear of [ ] Life" / Assault

In her eighth cause of action, Plaintiff states that she "was put in fear of her life during

the illegal operation when she was humiliated and unnecessarily subjected to needless fear for

her life and safety due to the irresponsible and reckless acts of the Defendants."  Am. Compl.

¶ 172.  She also states that "Defendants assaulted the Plaintiff through their use of unnecessary

and unorthodox tactics."  *Id.* ¶ 173.  Although unclear from the Amended Complaint itself,

Plaintiff states in her opposition to the Defendants' motions that this claim is asserted against

Defendant Brown in connection with the car ride to Plaintiff's house to retrieve her firearms and

then back to the city.  *See* Pl.'s Opp'n. at 17.  The legal basis for this cause of action is also not

apparent.  There is no reference in the three paragraphs under the "eight [*sic*] cause of action" to

any statute, case, or other legal authority which gives rise to such a claim.

---

[5]    The Court further notes that finding the pathway through the Amended Complaint is
not an easy task.  The facts asserted are not presented in any chronological order and it takes a
very focused reading, going back and forth to various paragraphs, to match up some of the events
with the concomitant causes of action.

Notwithstanding Plaintiff's failure to state the legal basis for her "assault" claim, the Court reluctantly addresses the merits and assumes Plaintiff brings this claim pursuant to New York law.   "Under New York law, a 'civil "assault"' is the intentional placing of another in apprehension of imminent harmful or offensive contact." *Doe v. Alsaud*, 224 F. Supp. 3d 286, 294 (S.D.N.Y. 2016); *see Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006) (explaining that under New York law, assault is defined as "an intentional placing of another person in fear of imminent harmful or offensive contact") (quoting *Charkhy v. Altman,* 678 N.Y.S.2d 40, 41 (1st Dep't 1998)).   "While actual contact is not required, there must be some manifestation that creates reasonable apprehension of harmful physical contact." *Cunningham v. United States*, 472 F. Supp. 2d 366, 380 (E.D.N.Y. 2007), *opinion corrected* (Feb. 2, 2007).

The Court finds that Plaintiff has failed to state a claim for assault under New York law. The sole allegation in the Amended Complaint arguably supporting a claim for assault with respect to the events surrounding Defendants' transporting Plaintiff to her home and back for the purpose of acquiring her firearms, is as follows:   "[t]he Defendants forced [Plaintiff] to return to Manhattan with them at an unreasonable speed of 85 miles per hour which put [her] in fear of her safety and her life."  Am. Compl. ¶ 126.  Construing this allegation in the light most favorable to Plaintiff, she fails to plead a claim for common law assault for two reasons.

First, to state a claim for civil assault, Plaintiff must allege that the defendant *intended* to arouse apprehension of harmful or offensive bodily contact.  *Garcia v. Cty. of Westchester*, No. 11-CV-7258, 2017 WL 6375791, at *28 (S.D.N.Y. Dec. 12, 2017); *5 Borough Pawn, LLC. v. Marti*, 753 F. Supp. 2d 186, 201 (S.D.N.Y. 2010) (same).  Plaintiff does not allege any facts (and the Court does not find plausible) showing that Defendant Brown or any other Defendant *intentionally* placed Plaintiff in a state of apprehension during their ride to and back from

Plaintiff's home.  *See O'Neill v. Hernandez*, No. 08 CIV.1689, 2010 WL 1257512, at \*14 n.10 (S.D.N.Y. Mar. 25, 2010) ("Plaintiff appears to assert a tort claim of common law assault.  The claim's factual basis—the alleged 'pounding' at the door of NYCHA Social Services workers— is insufficient to establish a genuine issue of material fact whether any NYCHA Social Services workers *intentionally* placed Plaintiff in fear of imminent harmful or offensive contact when they attempted to contact or meet with him pursuant to a properly executed referral for NYCHA social services.") (emphasis in original); *Gurevich v. City of New York*, No. 06 CIV. 1646, 2008 WL 113775, at \*6 (S.D.N.Y. Jan. 10, 2008) (finding that plaintiff could not state a *prima facie* claim of civil assault where there was no indication regarding defendants' "intent to place her in fear of imminent harmful or offensive contact or to make wrongful physical contact") (internal quotation marks omitted); *see Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 356, 368 (S.D.N.Y. 2008) ("Under New York law, a civil assault action lies where there is 'an intentional attempt or threat to do [physical] injury or commit a battery, thereby placing an individual in reasonable apprehension of bodily harm.") (internal quotations and citations omitted), *aff'd*, 337 Fed. App'x 7 (2d Cir. 2009).

Second, to state an assault claim, the apprehension Plaintiff alleges she suffered as a result of Defendants' conduct "must be reasonable."  *Carroll v. Bayeriche Landesbank*, 125 F. Supp. 2d 58, 65 (S.D.N.Y. ,2000) (citing *People v. Knapp*, 231 N.Y.S.2d 341, 342-43 (3d Dep't 1962)).  Given Plaintiff's duties and experience, the Court finds that Plaintiff's apprehension of harmful physical contact while riding with Defendant Brown in a fast-moving police car was not reasonable as pled.  The connection between the Defendants' conduct and the risk of physical contact – presumably through the risk of a traffic accident and resulting bodily harm – is simply too attenuated to be considered reasonable.  *See Farash*, 574 F. Supp. 2d at 368 ("[P]laintiff has

failed to allege that the actions of the flight attendant or the Air Marshal placed him in *reasonable* apprehension of bodily harm. At most, plaintiff has alleged that the flight attendant spoke with the Air Marshal and made a gesture towards him, and that the Air Marshal subsequently looked directly at the plaintiff. These gestures are insufficient as a matter of law to make out a claim for civil assault.") (emphasis in original); *see also Carroll*, 125 F. Supp. 2d at 65-66 ("Words not accompanied by circumstances inducing a reasonable apprehension of bodily harm, such as movements of drawing back a fist, aiming a blow, or the show of a weapon, do not constitute an assault.") (quoting *Williams v. Port Authority of New York & New Jersey,* 880 F.Supp. 980, 994 (E.D.N.Y.1995)).

The Court respectfully recommends to Judge Spatt that Defendants' motions to dismiss Plaintiff's claim for civil assault under New York law be GRANTED, and this claim be dismissed, without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Spatt that Defendants' motions to dismiss Plaintiff's Amended Complaint be GRANTED, and the Amended Complaint be DISMISSED.  As to which claims should be dismissed with prejudice and which claims Plaintiff should be allowed to re-plead, the Court respectfully recommends as follows:

(1)    With respect to Defendants' motions to dismiss pursuant to Rule 12(b)(1), the Court recommends that these motions be GRANTED such that all claims in the Amended Complaint raised against UCS and the Individual Defendants in their official capacities, except for Plaintiff's Title VII claims, be dismissed, *with prejudice.*

(2)    With respect to Defendants' motions to dismiss pursuant to Rule 12(b)(6), the Court recommends that:

(a)      with respect to Plaintiff's first and fourth causes of action, as well as Plaintiff's ADA claims contained in her ninth cause of action, Defendants' motions to dismiss be GRANTED, and these claims be dismissed, *with prejudice*;

(b)      with respect to Plaintiff's claims (i) for race and sex discrimination, retaliation, and hostile work environment pursuant to Title VII as set forth in her ninth cause of action, (ii) her FMLA claims also contained in her ninth cause of action, (iii) her Section 1983 claims as set forth in her sixth cause of action, (iv) her Section 1981 claims as set forth in her fifth cause of action, (v) her NYSHRL claims as set forth in her second cause of action, (vi) her NYCHRL claims as set forth in her third cause of action, (vii) her claim for civil assault as set forth in her eighth cause of action, Defendants' motions to dismiss be GRANTED, and  these claims be dismissed, *without prejudice*.

(c)      with respect to Plaintiff's false imprisonment claims as set forth in the seventh cause of action, the motion to dismiss be GRANTED, *with* prejudice.

## V.   <span style="text-decoration: underline;">OBJECTIONS</span>

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Arthur D. Spatt and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED**.

Dated: Central Islip, New York
     August 12, 2019

<u>/s/ A. Kathleen Tomlinson</u>
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge