UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DAWN SUTTER,

                              Plaintiff,

                                                        **ORDER**
              -against-                                 18-CV-817(SJF)(AKT)

JOSEPH DIBELLO, Captain, in his official and
personal capacities, JOHN POSILLIPO, Captain,
in his official and personal capacities, FERN
FISHER, in her official and personal capacities,
NEW YORK STATE UNIFIED COURT SYSTEM/
OFFICE OF COURT ADMINISTRATION,
JOHN BROWN, Sergeant, in his official and
personal capacities, JOHN DEMARCO, Major,
in his official and personal capacities, MICHAEL
DEMARCO, Major, in his official and personal
capacities, KEITH BROWN, Sergeant, in his official
and personal capacities, and GREGORY J. SALERNO,
Deputy Director, in his personal capacity,

                              Defendants.
----------------------------------------------------------------X
FEUERSTEIN, District Judge:

I.      Introduction

        On or about February 6, 2018, plaintiff Dawn Sutter ("plaintiff" or "Sutter") filed an

employment discrimination complaint against defendant the New York State Unified Court

System/Office of Court Administration ("UCS"); and individual defendants Captain Joseph

Dibello ("Dibello"), Captain John Posillipo ("Posillipo"), Fern Fisher ("Fisher"), Major Michael

DeMarco ("DeMarco"), incorrectly sued therein as Major John DeMarco, and Sergeant Keith

Brown ("Brown"), incorrectly sued therein as Sergeant John Brown (collectively, and together

with Deputy Director Gregory J. Salerno, the "individual defendants"), alleging, *inter alia*,

discrimination because of her race, sex and disability and retaliation for her complaints about

1

such conduct. On June 7, 2018, plaintiff filed an amended complaint, *inter alia*, adding the correct identities for DeMarco and Brown, but failing to remove the misnomers from the caption[1]. On October 5, 2019, plaintiff filed a second amended complaint ("SAC"), *inter alia*, adding Deputy Director Gregory J. Salerno ("Salerno"), in his personal capacity only, as a defendant. Pending before the Court is the motion of UCS and the individual defendants (collectively, "defendants") to dismiss the SAC in its entirety as against UCS pursuant to Rule 12(b)(2) and (5) for lack of personal jurisdiction, and to dismiss the SAC in its entirety against the individual defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. For the reasons set forth below, defendants' motion is granted in part and denied in part.

II.     BACKGROUND

A.  Factual Allegations[2]

Plaintiff has been employed as a UCS Court Officer for over eighteen (18) years. (SAC, ¶¶ 4-5).

Dibello and Posillipo are employed by UCS as Captains and "retained supervisory jurisdiction" over plaintiff. (SAC, ¶¶ 8-9). Brown is employed by UCS as a Sergeant, (*id.*, ¶ 12), and DeMarco is employed by UCS as a Major. (*Id.*, ¶ 13).

---

[1] Indeed, the second amended complaint, which also fails to remove the misnomers from the caption, alleges that "[t]here are no allegations against [John Brown and John DeMarco]. John Brown [and John DeMarco] is a name incorrectly placed in the complaint." (SAC, ¶¶ 14-15). Accordingly, the Clerk of the Court is directed to amend the caption of this action and remove the misnomers from the docket.

[2] The factual allegations in the SAC are assumed to be true for purposes of this motion and do not constitute findings of fact by the Court.

Fisher was a former Deputy Administrative Judge for New York City Family Court who, upon information and belief, retired in 2017. (SAC, ¶¶ 10-11). Plaintiff alleges that Fisher "authorized the illegal detention and discriminatory acts towards Plaintiff," (*id.*, ¶ 10), as well as the "illegal entry into Plaintiff's home." (*Id.*, ¶ 11).

Salerno is a Deputy Director for UCS, (SAC, ¶ 17), and is the Deputy Director for Court Staffing and Security Services, who has "the executive power to enforce the transfer and staff assignment and reassignment policies of [UCS]." (*Id.*, ¶ 18). "Salerno also has the power to direct and ensure compliance with judicial orders including any order of this court regarding compliance with any order of this court." (*Id.*, ¶ 19).

Plaintiff is an employee with disabilities, but she is able to perform her duties effectively with reasonable accommodation[3]. (SAC ¶¶ 21-22, 26, 51). Specifically, plaintiff suffers "frequent bilateral cervical pain that radiates into her bilateral upper trapezius muscles . . . [as well as] stiffness and numbness/tingling in this region of her body." (*Id.*, ¶ 23). Plaintiff's "pain is aggravated by prolong [*sic*] standing and sudden jolts she experiences during her commute to and from work." (*Id.*, ¶¶ 24, 38). In addition, plaintiff "suffers from migraine and lower back pain." (*Id.*, ¶ 25).

---

[3] As set forth below in the standard of review for a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, plaintiff's conclusory allegations, *inter alia*, that "Defendants are aware of Plaintiff's disabilities;" that "Defendants, U.C.S, Fern Fisher, Michael Demarco, Joseph Dibello, John Posillipo, and Salerno are aware that Sutter suffers from the disabilities described above;" that "Defendants are also aware that these disabilities were a result of a compensable injury;" that "[t]he disability for which Sutter seeks reasonable accommodation occurred on August 9, 2010 and Fisher was aware of the job-related injury the Plaintiff suffered and are [*sic*] also aware that the injury had been determined to be a compensable injury by the Workers Compensation Board;" and that defendants "were fully aware that Sutter was on Workers [*sic*] Compensation and that the time for which she was charged as with 'Lost Time' were periods that she was out of work due to workers [*sic*] compensation," (SAC, ¶¶ 21, 26-27, 33, 51, 59), are not entitled to the presumption of truth. Likewise, plaintiff's conclusory allegation that all defendants, except Brown, "ignored her requests to be accommodated and engaged in acts of discrimination and retaliation towards her, including refusal to honor reasonable accommodation, suspension from work, and disciplined [*sic*] that rendered [plaintiff] unable to advance her professional career, because of her disabilities," (*id.*, ¶ 33), is not entitled to the presumption of truth.

3

"The injuries were reaggravated and her migraine and pain began reoccurring in 2014."

(SAC, ¶¶ 30, 47). On July 10, 2015, Dr. Tinari, a chiropractor treating plaintiff, forwarded a

report to UCS, Fisher, Salerno and DeMarco indicating that plaintiff "had a compensable injury

and is able to work subject to limitations involving no bending, twisting, lifting, climbing ladders

or stairs, and no kneeling." (*Id.*, ¶¶ 53-54). Thus, UCS was aware of the "aggravated injuries and

reoccurrences" of plaintiff's injury and plaintiff "was temporarily transferred to light duty as a

result of the reoccurrence of the injury." (*Id.*, ¶¶ 31-32).

"[D]efendants issued a performance evaluation for [plaintiff] in 2016 that covered [her]

performance for the 2015 year," (SAC, ¶ 71), in which UCS "improperly punished [plaintiff]

because she was out sick due to her disabilities." (*Id.*, ¶ 72). "In improperly using absences due

to workers [*sic*] compensation and illness against [plaintiff], George Cafasso the Chief Clerk

[who is not a party to this action] noted as follows:

> Officer Sutter has been on light duty for the entire rating period and has been
> assigned to clerical duties under the supervision of the Clerk of Court. Officer
> Sutter's time and leave record is extremely poor. In 2015, Officer Sutter was absent
> for over 90 days and had 59 unexcused lateness's. Many of these lateness's were
> for an hour or more. She habitually has no leave balances and is consequently in
> 'Lost Time' status. Additionally, there were 20 punch missed swipe entries during
> 2015. Despite formal and informal counseling sessions, there was no improvement
> in her attendance record during the 2015 calendar year. When Officer Sutter is at
> work she performs her clerical duties efficiently. Officer Sutter has been made
> aware of the Work/Life Assistance Program. Officer Sutter's 2015 Kronos record
> and a performance evaluation appeal forms are attached."

(*Id.*, ¶ 73). Plaintiff received an unsatisfactory rating for 2015, which was based upon "her

absence that was due to a compensable injury." (*Id.*, ¶ 74). Although "[t]he time was eventually

given back to her," plaintiff claims that "the unsatisfactory rating cost her significant amount of

4

monetary loss." (*Id.*, ¶ 74). According to plaintiff, she "was punished for being out sick although the absence was based on documented sick time." (*Id.*, ¶ 75).

Plaintiff "was charged with violation of time and leave policy because she was not able to work as a result of her illness." (SAC, ¶ 55). Plaintiff alleges that those charges "were written at the request and direction of Fisher according to the union," (*id.*); and "[i]t was unnecessary and retaliatory to subject [plaintiff] to discipline as Defendant fisher [*sic*] did because she could not come to work as a result of a compensable injury that was well documented in UCS records and personnel office." (*Id.*, ¶ 56). Although plaintiff "protested the charges by explaining to Fisher that her absences were a result of her compensable injury, the defendants ignored [her] protests and chose to continue the prosecution of the charges preferred against her." (*Id.*, ¶ 57).

The charges were preferred against plaintiff on or about January 13, 2016 and were approved by Fisher on or about January 13, 2016. (*Id.*, ¶ 58). According to plaintiff, Fisher "did not care that [plaintiff's] absences were as a result of a compensable injury, she decided to aggressively prosecute her for misconduct by charging her with the violation of not reporting to work at a time when she was out on Workers [*sic*] Compensation." (*Id.*, ¶ 60). "Although [plaintiff] was alleged in these charges to have engaged in misconduct by not presenting herself to work as scheduled this assertion is false as the absences cited in the charges were related to Sutter's injuries." (*Id.*, ¶ 62).

Plaintiff applied for a transfer to Queens in March 2016 based on her doctor's recommendation and because it would "shorten her commuting time and allow her to travel without using public transportation[,]" which her doctors believe would "avoid the risk of reoccurrence of [plaintiff's] injury." (SAC, ¶¶ 45-47). According to plaintiff, "[t]he March 2016

request to transfer was unreasonably denied by Fisher." (*Id.*, ¶ 48). Plaintiff further alleges that "Fisher or the UCS managers did not engage in any action to ascertain the potential opportunities available to Plaintiff for the purpose ADA [*sic*] reassignment as a reasonable accommodation." (*Id.*, ¶ 49).

Plaintiff also requested a transfer on or about March 15, 2016, which she alleges was "unreasonably and summarily denied at the direction of Fisher."[4] (SAC, ¶ 50).

Plaintiff's workers' compensation was based on the injuries that occurred while she was at work in 2010, (SAC, ¶¶ 29, 51), and "[i]n September 2016, Susan Maurer a case manager with NYS Insurance Fund informed U.C.S that Sutter has successful [*sic*] established a Workers [*sic*] Compensation case for her neck, back, and left wrist based upon an accident that occurred on August 9, 2010." (*Id.*, ¶ 52).

Thereafter, by letter dated November 3, 2016, Salerno informed plaintiff "that her time previously marked as 'Lost Time' by Defendants are [*sic*] being restored." (SAC, ¶ 63). According to plaintiff, "[t]he restored time represented a period the Defendants charged [her] with misconduct for not coming to work when that absence was for a compensable injury." (*Id.*, ¶ 64). Plaintiff alleges that "[b]ecause of Defendants [*sic*] policy of disregarding [her] reasonable accommodation requests, [plaintiff] was subjected to a needless disciplinary hearing procedure that was unnecessary and forced her to accumulate needless legal bills in the defense of the action." (*Id.*, ¶ 66). Plaintiff also alleges that she "lost money, opportunities for promotion, and time as a result of disciplinary suspension imposed on her." (*Id.*, ¶ 70).

---

[4] It is unclear whether this is the same transfer request as the aforementioned request to transfer to Queens.

In December 2016, plaintiff requested to be reassigned to a court in Nassau, Suffolk or Queens County "so as to reduce her commuting time." (SAC, ¶ 39). Salerno responded to the request by letter, dated December 22, 2016, stating, in pertinent part:

> "Unfortunately, we receive many reassignment requests where the employee indicates a hardship based upon personal circumstances and although we sympathize with the challenges that arise when balancing work and life, we are rarely able to accommodate these requests. Also, reassignments of court officers are discretionary and usually occur with the graduation of a recruit class. Notwithstanding, by copy of this letter, I am providing Officer Sutter's request for reassignment to the executive court managers in Queens, Nassau and Suffolk Counties for their review and consideration in the event an opportunity arises.
>
> Please note, based upon the information you provided, we are referring this matter to the Deputy Chief Administrative Judge for NYC Courts [Fisher] for review and determination regarding Officer Sutter's fitness for duty."

(*Id.*, Ex. 1). According to plaintiff, "[t]here have been several opportunities to effect the transfer of [her] since December of 2016, but Defendant Fisher who had the power to allow the transfer simply refused to do so notwithstanding the fact that [plaintiff] has seniority and is eligible for the transfer as a form of reasonable accommodation."[5] (*Id.*, ¶ 42). Plaintiff further alleges that "[a]lthough it has been determined that Plaintiff is subject to transfer since 2017 and the transfer would be effected before new recruits are placed in positions in court houses, Plaintiff has not been transferred[,]" (SAC, ¶ 125); and that "[t]here have been multiple new classes in the last two years." (*Id.*)

Presumably upon Salerno's referral of the matter to her in the December 22, 2016 letter, Fisher referred plaintiff for a medical examination, and later to a psychiatrist for a mental

---

[5] However, as noted above, plaintiff alleges that Fisher retired in 2017. (SAC, ¶ 11). The SAC does not identify the date(s) or month(s) when either Fisher retired or the alleged opportunities to effect plaintiff's transfer arose, although based upon other allegations in the SAC, it can be discerned that Fisher retired sometime after the events that allegedly occurred in February 2017.

examination, although, according to plaintiff, "[t]here was no action on the part of plaintiff that warranted the medical referral." (*Id.*, ¶¶ 43-44). "The physical and mental examination concluded that plaintiff was fit to work and had no mental or physical impairment that could cause her to be removed from work." (*Id.*, ¶ 44).

In February 2017, Dibello asked plaintiff to follow him into his office, then he demanded plaintiff's firearms and asked her to change into uniform and come back so he could talk to her and another Captain. (SAC, ¶¶ 76-77). Plaintiff delivered her firearm to Dibello by placing it on his desk, then she was directed and escorted into Posillipo's office and instructed to close the door behind her and sit down. (*Id.*, ¶¶ 78-79). According to plaintiff, she "was locked up" in a room with Posillipo and Dibello for approximately forty-five (45) minutes, subjected to a wide range of questions about her firearms, told she was not free to leave, and shown a copy of a correspondence from Fisher stating that her firearms privileges were revoked and her firearms were to be retrieved immediately. (*Id.*, ¶¶ 80, 83, 85, 91). When plaintiff asked Posillipo and Dibello why her firearms were being taken away, they told her they did not know and that they were following orders from Fisher. (*Id.*, ¶ 81). Plaintiff volunteered to bring her other handgun in the next day, but Posillipo and Dibello insisted that she had to remain with them until the firearm was retrieved from her. (*Id.*, ¶ 88). Plaintiff was asked if she knows the residences of some of the Sergeants employed by UCS, including Brown, to which she replied "no." (*Id.*, ¶¶ 84, 89). After protesting to Dibello and Posillipo that she felt like she was being treated like a criminal, plaintiff "was told to go and get her duty magazine and wait to be called." (*Id.*, ¶¶ 86, 90).

After plaintiff reported to Posillipo's office for the second time, she was told that she would be escorted home to Suffolk County, Long Island, then she was directed to take off her

8

uniform and put on civilian clothes. (*Id.*, ¶ 92, 94). Posillipo and Dibello summoned MSP Officers to take custody of plaintiff and drive her home. (*Id.*, ¶ 95). Plaintiff drove with the MSP Officers in marked Patrol cars to a train station in Suffolk County to retrieve her house keys and then to her home. (*Id.*, ¶ 96). Plaintiff "never agreed to willingly drive with the MSP officers from Brooklyn to Suffolk County where she resides[,] . . . [but] was told by her union representative, Ted Kanton that she had to go because judge fisher [*sic*] ordered it." (*Id.*, ¶ 112). According to plaintiff, "[t]he officers drove the car for most of the ride from Brooklyn at 85 miles per hour." (*Id.*, ¶¶ 97, 114).

Upon their arrival at plaintiff's residence, the officers "created a scene causing neighbors to watch through their windows and later approached [*sic*] her fiancé to ask what was happening." (SAC, ¶ 98). According to plaintiff, Brown then entered her home without a warrant or permission and stood inside by the stairs watching plaintiff as she went downstairs and then upstairs, "and his eyes looked around the interior of her house." (*Id.*, ¶¶ 99-100, 108).

Plaintiff was then driven back to Manhattan from her house and Brown handed plaintiff's weapons over to DeMarco. (*Id.*, ¶ 101). Although plaintiff "repeatedly asked why she was forcefully subjected to a trip back to her home accompanied by MSP Officers, none of the Defendants would answer her." (*Id.*, ¶ 102). According to plaintiff, the officers drove back to Manhattan "at an unreasonable speed of 85 miles per hour which put [plaintiff] in fear of her safety and her life." (*Id.*, ¶ 113). According to plaintiff, she "told the officers that drove her home that their speed was excessive and she was concerned for her safety but they continued to drive … at a reckless 85 miles per hour on their way back while they ignored pleas by Plaintiff to slow down." (*Id.*, ¶ 114). Plaintiff alleges that "[g]iven the reckless speed of the officers who drove

9

[her] to secure the weapon and back and their dismissive attitude to her several pleas to slow down it reasonable [*sic*] to conclude that they intended to put her in fear of her safety and she was in fear of her safety." (*Id.*, ¶ 115).

Plaintiff was later informed by the Union that DeMarco said her weapons were being taken from her due to medical reasons. (SAC, ¶ 103). According to plaintiff, "[t]here was no medical reason that warranted the seizure of her firearms . . . [or] her person," (*id.*, ¶¶ 104-05), and "[t]he only medical issue going on with [plaintiff] in February 2016 [*sic*] was her request for reasonable accommodation and FMLA due to intermittent migraines."[6] (*Id.*, ¶ 106).

Plaintiff alleges that defendants "violated their own policy and procedure relating to how to terminate a court officer's gun privilege," (SAC, ¶ 116), and plaintiff, "a white female has been treated differently from other officers who requested reasonable accommodations." (*Id.*, ¶ 117). Specifically, plaintiff alleges that "Fisher did not authorize actions against a non-white female who requested reasonable accommodation due to disabilities the way she did with Plaintiff," (*id.*, ¶ 118); and that "Non-white females who requested reasonable accommodations were rarely subjected to the kind of false imprisonment, mental torture, blatant denial of requests, and administrative charges of misconduct for absences directly linked to disabilities that resulted from compensable injury." (*Id.*, ¶ 119). Plaintiff identifies three (3) African American female officers, one by her surname and the other two (2) by only their first name, who had disabilities or "disabilities issues" and were granted a transfer close to their home by Fisher "without hassles," (*id.*, ¶ 120-22); and an African American female officer and a Hispanic

---

[6] There is a discrepancy in the complaint regarding whether this incident occurred in February 2016 or February 2017. (*Compare* SAC, ¶ 76 *with Id.*, ¶ 106). However, it is clear that the incident occurred in February 2017 based upon the allegations that "[i]n February of 2017, two months later [after Salerno's December 22, 2016 letter] Fisher ordered Plaintiff [*sic*] weapons to be repossessed. . . ." (*Id.*, ¶ 129).

female officer, both of whom are identified only by their first name, who "were asked to turn their guns in by Fisher[,] . . . were never escorted home or followed right into the privacy of their homes[,] . . . [and] were allowed to bring their weapons in." (*Id.*, ¶ 123). Plaintiff also identifies another white female officer, whom she identifies by first name only, who "was sick with breast cancer and denied sick time, FMLA, and reasonable accommodation by Fisher during her chemotherapy." (*Id.*, ¶ 124).

"Plaintiff was informed in Suffolk County that she would not be hired because Judge Fisher took her gun." (*Id.*, ¶ 126).

On or about February 9, 2017, plaintiff requested leave under the Family Medical Leave Act "to cover intermittent use of sick time between February 2017 and December 31, 2017," (SAC, ¶ 34), as a result of "her worsening condition including migraines, photophobia, smell sensitivity, nausea and vomiting that were associated with traveling to and from work." (*Id.*, ¶ 36). The leave was only granted for one (1) month, (*id.*), and plaintiff received "a letter informing her that she would need to reapply after the month was over to extend the FMLA." (*Id.*, ¶ 35). According to plaintiff, "Fisher refused, without any reasonable basis, to provide FMLA benefits to [her]." (*Id.*, ¶ 37).

B. Procedural History

On or about February 6, 2018, plaintiff commenced this employment discrimination action against UCS and individual defendants Dibello, Posillipo, Fisher, DeMarco and Brown, each in their official and personal capacities, alleging, *inter alia*, discrimination because of her race, sex and disability and retaliation for her complaints about such conduct. On June 7, 2018,

plaintiff filed an amended complaint, *inter alia*, correcting the identities of DeMarco and Brown, but failing to remove the misnomers from the caption.

Thereafter, Dibello, Posillipo, DeMarco and Brown moved to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim for relief; and Fisher separately moved to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim for relief. In a report and recommendation dated August 12, 2019 (the "Report"), the Honorable A. Kathleen Tomlinson, United States Magistrate Judge, recommended, *inter alia*, that the motions be granted and the following claims be dismissed in their entirety with prejudice: (i) all claims in the amended complaint raised against UCS[7] and the individual

---

[7] However, contrary to the Report's assertion, (*see* Report at 10), the motions to dismiss did not seek dismissal of the amended complaint as against UCS. The heading of the section addressing the lack of subject matter jurisdiction in the motion of Dibello, Posillipo, Brown and DeMarco reads, "PLAINTIFF'S SECTION 1981, SECTION 1983, ADA, NYSHRL, NYCHRL AND OTHER STATE LAW CLAIMS AGAINST DEFENDANTS DIBELLO, POSILLIPO, DEMARCO AND BROWN IN THEIR OFFICIAL CAPACITIES ARE BARRED BY THE ELEVENTH AMENDMENT," and the first line of that section states, "The Court lacks subject matter jurisdiction regarding Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Causes, and the Ninth Cause of Action, to the extend [*sic*] it alleges a violation of the Americans with Disability Act ("ADA"), against Defendants Dibello, Posillipo, DeMarco and Brown sued in their official capacities." (*See* DE 17-1 at 6). The only reference to UCS, which is referred to as OCA in the memorandum of law, in that section is as follows: "Since the agency that Defendants Dibello, Posillipo, DeMarco and Brown work for, OCA, is 'unquestionably an "arm of the State,"' Defendants Dibello, Posillipo, DeMarco and Brown are unquestionably current employees of that state agency." (*See* DE 17-1 at 7). That section also argues, *inter alia*, (i) that "Defendants Dibello, Posillipo, DeMarco and Brown here are immune from suit pursuant to the ADA;" (ii) that "Plaintiff's state law tort claims against Defendants Dibello, Posillipo, DeMarco and Brown in their official capacities, as alleged in the Seventh and Eighth Causes of action, are barred by sovereign immunity;" and (iii) that "Plaintiff's Section 1983, Section 1981, ADA, NYSHRL, NYCHRL and other state law claims, as alleged in the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth Causes of Action and the Ninth Cause of Action, to the extend [*sic*] it alleges a violation of the ADA, against Defendants Dibello, Posillipo, DeMarco and Brown's [*sic*] sued in their official capacities must be dismissed." (*Id.* at 8-9). Fisher's memorandum of law contains a virtually identical heading and arguments, merely substituting Fisher for the names of the other four (4) movants and changing the pronouns accordingly. (*See* 25-1 at 6-9). Nonetheless, although the motions were not filed on behalf of UCS, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434, 131 S. Ct. 1197, 179 L. Ed. 2d 159 (2011). Accordingly, Magistrate Judge Tomlinson properly recommended dismissing the amended complaint against UCS for lack of subject matter jurisdiction, since the arguments made by the moving defendants clearly applied to the state agency for whom they are employed.

defendants in their official capacity, except for plaintiff's claims alleging violations of Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; (ii) plaintiff's first and

fourth causes of action in the amended complaint, alleging violations of Article I, Section 11 of

the New York Constitution and the Equal Protection Clause of the Fourteenth Amendment to the

United States Constitution, respectively; (iii) plaintiff's claims under the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, in her ninth cause of action in the

amended complaint; (iv) plaintiff's false arrest and imprisonment claims as set forth in the

seventh cause of action in the amended complaint, (Report at 55-56); and (v) plaintiff's claims

alleging violations of 42 U.S.C. § 1981 ("Section 1981") (fifth cause of action in the amended

complaint), "to the extent Plaintiff intended to plead her Section 1981 claims as a standalone

cause of action (instead of under Section 1983)."[8] (Report at 43). By Memorandum of Decision

and Order, dated September 4, 2019, the Honorable Arthur D. Spatt, former United States

District Judge, to whom this case was originally assigned, adopted the Report in its entirety and

granted those defendants' motions to dismiss "with leave to re-plead as recommended by the

[Report],"[9] (DE 47), *i.e.*, with leave to replead only those claims in the amended complaint there

were dismissed without prejudice.

---

[8] The Report also recommends that the following claims be dismissed without prejudice: (i) plaintiff's claims for race and sex discrimination, retaliation, and hostile work environment under Title VII and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* (part of the ninth cause of action in the amended complaint); (ii) her claims alleging violations of 42 U.S.C. § 1983 ("Section 1983") (sixth cause of action in the amended complaint); (iii) her fifth cause of action in the amended complaint, to the extent that her claims can be construed as Section 1983 claims, as opposed to Section 1981 claims; (iv) her claims under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq.* (second and third causes of action, respectively, in the amended complaint); and (v) her claim for civil assault (eighth cause of action in the amended complaint). (*Id.* at 56).

[9] This case was reassigned to the undersigned on June 30, 2020.

On October 5, 2019, plaintiff filed the SAC, *inter alia*, adding Salerno, in his personal capacity only, as a defendant. The SAC asserts the following eight (8) causes of action: (1) race, sex, and disability discrimination claims against Fisher, in her personal capacity, and hostile work environment and retaliation claims against all defendants in violation of the NYSHRL (first cause of action), (SAC, ¶¶ 139-142); (2) race, sex, and disability discrimination, hostile work environment, and retaliation in violation of the NYCHRL (second cause of action against all defendants), (*id.*, ¶¶ 143-146); (3) violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution "by subjecting [plaintiff] to terms and conditions of employment different from those offered to other non-White employees" (third cause of action against Fisher), (*id.*, ¶¶ 147-149); (4) race discrimination in violation of Section 1981 (fourth cause of action against Fisher), (*id.*, ¶¶ 150-154); (5) violation of plaintiff's federal rights under 42 U.S.C. § 1983 by depriving plaintiff of her constitutional rights under the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment, and of her statutory rights under the ADA and the FMLA (fifth cause of action against Fisher), (*id.*, ¶¶ 155-157); (6) false arrest and imprisonment as against all defendants, and warrantless entry into plaintiff's home as against Brown, in violation of the Fourth Amendment (sixth cause of action), (*id.*, ¶¶ 158-161); (7) assault (seventh cause of action against UCS), (*id.*, ¶¶ 162-164); and (8) race, sex, and disability discrimination, hostile work environment, and retaliation in violation of Title VII, the ADA, and the FMLA (eighth cause of action against Fisher and UCS). (*Id.*, ¶¶ 165-168). The SAC further provides that "UCS and all officials sued in their official capacities are only subject to suit for violation of Title VII." (*Id.* at 2).

Since the SAC repleads claims that were previously dismissed with prejudice by Judge Spatt's September 4, 2019 order adopting the Report in its entirety, the following claims are dismissed in their entirety with prejudice for the reasons set forth in the Report: (i) all claims in the SAC against UCS, except the Title VII claim; (ii) the third cause of action against Fisher, alleging a standalone violation of the Equal Protection Clause of the Fourteenth Amendment; (iii) plaintiff's Section 1981 claims (fourth cause of action against Fisher), to the extent plaintiff intended to plead those claims as a standalone cause of action under Section 1981, instead of under Section 1983; (iv) plaintiff's ADA claims in the eighth cause of action; and (v) plaintiff's false arrest and imprisonment claims as set forth in the sixth cause of action.

Defendants now move to dismiss the SAC in its entirety as against UCS pursuant to Rule 12(b)(2) and (5) for lack of personal jurisdiction, and to dismiss the SAC in its entirety against the individual defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

III.    DISCUSSION[10]

A.  Personal Jurisdiction

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987); *accord Dynergy Midstream Servs., LP v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006); *see also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) ("To exercise personal

---

[10] Unless otherwise noted, case quotations omit all internal quotation marks, citations, footnotes, and alterations.

jurisdiction lawfully, . . . the plaintiff's service of process upon the defendant must have been procedurally proper.") "Service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Omni Capital*, 484 U.S. at 104, 108 S. Ct. 404.

When a defendant moves to dismiss a complaint for insufficient service of process, "the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010); *accord Vidurek v. Koskinen*, 789 F. App'x 889, 893 (2d Cir. Oct. 15, 2019) (summary order). "[W]here a court has not conducted a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials[,]" *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 173 (E.D.N.Y. 2015), and "the court considers the parties' pleadings and affidavits in the light most favorable to the non-moving party." *New York v. Mountain Tobacco Co.*, 55 F. Supp. 3d 301, 308-09 (E.D.N.Y. 2014); *see also Johnson v. UBS AG*, 791 F. App'x 240, 240-41 (2d Cir. Nov. 7, 2019) (summary order), *cert. denied*, 140 S. Ct. 2514, 206 L. Ed. 2d 466 (2020). However, "'[c]onclusory statements' that service was properly effected are insufficient to carry that burden." *Blau*, 124 F. Supp. 3d at 173; *see also Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014), *aff'd*, 626 F. App'x 297 (2d Cir. Sept. 22, 2015) ("To make 'a prima facie showing,' the plaintiff must aver facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant. . . . [C]onclusory statements by a plaintiff are insufficient to overcome a defendant's sworn affidavit that he was not served."); *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) ("Conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was

not served.") In considering a motion to dismiss for insufficiency of process, the Court "must look to matters outside the complaint to determine whether it has jurisdiction[,]" *Mountain Tobacco*, 55 F. Supp. 3d at 309, *i.e.*, whether service was sufficient. *See George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 442 (S.D.N.Y. 2016).

Generally, Rule 4 of the Federal Rules of Civil Procedure governs service of process in a federal lawsuit. *See Omni Capital*, 484 U.S. at 104, 108 S. Ct. 404. Rule 4(c)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) . . . ." Rule 4(m) of the Federal Rules of Civil Procedure provides, in relevant part:

> "If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . ."

Under Rule 4(m), "a district court may grant an extension in the absence of good cause, but it is not required to do so." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007). "[T]he plaintiff must ordinarily advance some colorable excuse for neglect" to avoid dismissal. *Id.* at 198.

Rule 4(j)(2) provides that "[a] state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Since plaintiff does not contend that a copy of the summons and the complaint was

delivered to the UCS's chief executive officer, service was only proper if plaintiff complied with the method of service prescribed by New York law.

Section 307(2) of the New York Civil Practice Law and Rules provides, in pertinent part:

> "Personal service on a . . . state agency, which shall be required to obtain personal jurisdiction over such . . . agency, shall be made by (1) delivering the summons to . . . to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to . . . the chief executive officer of such agency, and by personal service upon the state in the manner provided by subdivision one of this section. . . ."

N.Y.C.P.L.R. § 307(2). Section 307(1) of the New York Civil Practice Law and Rules provides, "Personal service upon the state shall be made by delivering the summons to an assistant attorney-general at an office of the attorney-general or to the attorney-general within the state." Thus, "to effect service on a state agency, a party must follow one of two methods [] either: (i) personally serve the chief executive of that agency or his or her designee; or (ii) serve . . . the chief executive by certified mail, return receipt requested and personally serve the attorney general or an assistant attorney general at the attorney general's office." *United States v. Calaman*, No. 15-cv-180, 2016 WL 8213831, at *5 (E.D.N.Y. Nov. 16, 2016), *report and recommendation adopted*, 2017 WL 462050 (E.D.N.Y. Feb. 2, 2017).

In opposition to defendants' motion, plaintiff does not dispute that UCS is a state agency subject to the service provisions of CPLR § 307(2)[11], and asserts only that "UCS was served Summons and Complaint through the office of the Attorney General."[12] (Plf. Opp. at 3).

---

[11] Indeed, the SAC pleads that UCS "is a state agency established pursuant to the laws of the State of New York." (SAC, ¶ 16).

[12] Plaintiff does not even assert that the summons and complaint was delivered "to an assistant attorney-general at an office of the attorney-general or to the attorney-general within the state," as required by N.Y. C.P.L.R. § 307(1).

However, service cannot be effected upon UCS, a state agency, by only delivering the summons and complaint to the New York Attorney General's office. *See Rutherford v. Fla. Union Sch. Dist.*, No. 16-CV-9778, 2018 WL 11249126, at *3 (S.D.N.Y. Oct. 24, 2018); *Wendell v. New York State Ins. Dep't*, No. 04-CV-2889, 2007 WL 2455132, at *5 (E.D.N.Y. Aug. 23, 2007) ("[P]ursuant to C.P.L.R. 307(2), service on the Attorney General is insufficient to confer personal jurisdiction over the State in a case against one of its agencies. . . ."); *Berkowitz By Berkowitz v. New York City Bd. of Educ.*, 921 F. Supp. 963, 968 (E.D.N.Y. 1996) ("[I]t is well established that service on the state attorney general does not constitute service on a state agency.")

Plaintiff's assertion that DeMarco and Fisher "at the time of service of summons and complaint occupied high level positions at UCS[,]" (Plf. Opp. at 3), is insufficient to establish that either of them was the chief executive officer of that agency, or the chief executive officer's designee for service of process. Plaintiff's further assertion that in light of such service upon DeMarco and Fisher, "[t]here is no doubt that UCS was served and had notice" of this action, (*Id.*), is misplaced. "[T]he fact that a defendant has notice of a lawsuit does not remedy defective service." *Berkowitz*, 921 F. Supp. at 968; *see also Brand v. AIG Ins. Co.*, No. CV 15-6286, 2018 WL 4346720, at *1 (E.D.N.Y. Aug. 16, 2018), *report and recommendation adopted*, 2018 WL 4344973 (E.D.N.Y. Sept. 11, 2018) ("[A]ctual notice of the action will not, in itself, cure an otherwise defective service.") Since plaintiff does not allege, much less establish, that service was made in accordance with the method of service prescribed by New York law, *i.e.*, by personal delivery to the chief executive officer of UCS or his or her designee, or by certified mail to the chief executive officer and personal delivery to an assistant attorney general or to the New

19

York attorney general, plaintiff has not made a prima facie showing of jurisdiction. *See, e.g.*
*Berkowitz*, 921 F. Supp. at 968 ("[P]laintiffs do not set forth facts necessary to establish their
compliance with CPLR § 307(2), as they do not contend that they either made personal delivery
to the chief executive officer of the [state agency], or to his or her designee, or sent the summons
by certified mail to the chief executive officer.")

Plaintiff seemingly contends that personal jurisdiction should exist over UCS based upon
the doctrines of estoppel or waiver. However, estoppel is unavailable to prevent the dismissal of
plaintiff's claims against UCS for improper service of process. "Under New York law, in order
to assert estoppel against a governmental entity, a party must show (1) that the governmental
subdivision has acted or comported itself wrongfully or negligently, (2) that such conduct by the
governmental subdivision has induced reliance by a party who is entitled to rely thereon, and (3)
that the party who has relied has changed his position to his detriment or prejudice." *Berkowitz*,
921 F. Supp. 968. "Applying this principle, the New York courts have frequently rejected
parties' requests to override the statutory service requirement in circumstances much more
severe than the case at bar." *Id.* (citing cases). Indeed, plaintiff has proffered no facts indicating
that UCS has acted wrongfully or negligently. In contrast, defendants sufficiently established that
UCS has never filed a notice of appearance in this case or engaged in any prior motion practice;
and they proffer a reasonable explanation for their failure to raise the personal jurisdiction issue
earlier, *i.e.*, plaintiff's piecemeal service of process upon the individual defendants which made it
unclear whether she would be effecting proper service upon UCS[13]. Indeed, Rule 4(*l*)(1) of the

---

[13] Only two (2) defendants, Posillipo and Dibello, were served with process and filed notices of appearance before
the amended complaint was filed on June 7, 2018. After two (2) more defendants, Brown and DeMarco, were served
in early June, and plaintiff filed proof of such service, a motion to dismiss was served and filed on behalf of those
four (4) appearing defendants on July 2, 2018. After Fisher was served with process, and plaintiff filed proof of such

Federal Rules of Civil Procedure provides that, with exceptions not relevant here, "proof of service must be made to the court. . . . [P]roof must be by the server's affidavit." The only defendants for whom plaintiff ever filed proof of service are Brown, DeMarco and Fisher; she never filed proof of service for UCS. Although "[f]ailure to prove service does not affect the validity of service," Fed. R. Civ. P. 4(*l*)(3), if plaintiff had complied with her obligation to file proof of service, defendants would have been alerted to the fact that she deemed service upon UCS complete at that time. Thus, plaintiff's conduct, not any wrongful or negligent conduct on the part of UCS, is what caused the delay.

Moreover, plaintiff's reliance upon two documents created by the Court, *i.e.*, a civil conference minute order (the "Minute Order"), (Docket Entry ["DE"] 23), and an Order Regarding the Provision of Medical Records (the "Medical Records Order"), (DE 36), is insufficient to establish that UCS acted wrongfully or negligently, particularly since (i) the Assistant Attorney General ("AAG") who appeared at the civil conference reflected in the Minute Order avers that "[w]hen she appeared at that conference, [she] specifically stated that [she] was there on behalf of the individual Defendants, naming each one separately; [she] did not state that [she] was appearing on behalf of UCS[,]"[14] (Reply Affidavit of Toni E. Logue, AAG ["Logue Reply"], ¶ 4); and (ii) the letter motion requesting the relief granted by the Medical

_____

service, a motion to dismiss was filed on behalf of Fisher on August 6, 2018. Plaintiff never filed proof of service with respect to UCS and UCS has never filed a notice of appearance in this case, nor engaged in any motion practice. Furthermore, Judge Spatt referred the motions to dismiss to Magistrate Judge Tomlinson on March 29, 2019; Magistrate Judge Tomlinson issued the Report on August 12, 2019; and Judge Spatt adopted the Report on September 4, 2019. The SAC, which is the operative pleading in this action, was filed approximately one  (1) month later, on October 5, 2019. After several motions for extension of time to answer the SAC were granted, the instant motion to dismiss the SAC was filed on December 2, 2019.

[14] This is consistent with all of her filings in this action prior to the instant motion, in which the AAG indicated that she was only appearing on behalf of certain defendants, *i.e.*, Posillipo, Dibello, K. Brown, M. DeMarco and/or Fisher.

Records Order expressly indicates that it was made on behalf of Dibello, Posillipo, DeMarco, Brown and Fisher only. (DE 34).

The doctrine of waiver, which is "a voluntary relinquishment of a known legal right," *Berkowitz*, 921 F. Supp. at 969, is also unavailable under the facts set forth in plaintiff's memorandum of law in opposition to defendants' motion to dismiss. Plaintiff asserts that this case has been pending since 2018 and that the AAG (who previously appeared in this case on behalf of Posillipo, Dibello, Brown, DeMarco and Fisher only) (i) "appeared in court and did not raise the issue of lack of subject matter [*sic*] jurisdiction on UCS," (Plf. Opp. at 3); and (ii) "did not protest" the Minute Order erroneously indicating that the AAG appeared at that conference on behalf of all defendants. (DE 23). Under the circumstances of this case, such conduct does not establish that UCS, which never appeared in this case before the filing of the instant motion to dismiss, voluntarily relinquished its right to assert the defenses of lack of personal jurisdiction and insufficient service of process. Accordingly, the branch of defendants' motion seeking to dismiss plaintiff's claims against UCS in the SAC pursuant to Rule 12(b)(2) and (5) of the Federal Rules of Civil Procedure is granted and plaintiff's claims against UCS are dismissed in their entirety for lack of personal jurisdiction and insufficient service of process.

B.  Failure to State a Claim

1.  Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a party plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-- but it has not 'show[n]'-- 'that the pleader is entitled to relief.'" *Id.* at 679, 129 S. Ct. 1937 (brackets in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a [pleading] states a plausible claim for relief will[] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a [pleading] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the [pleading] are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56, 127 S. Ct. 1955 (citations omitted).

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the pleader. *See Kim v. Kimm*, 884 F.3d 98, 102-03 (2d Cir. 2018); *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

23

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a [pleading], they must be supported by factual allegations." *Id.* at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

Nonetheless, a party is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937. The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the wrongdoing alleged, *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955, "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010)); *see also Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162,

190 (2d Cir. 2012) ("[O]n a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives. Assuming that [the plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among plausible interpretations of the evidence will be a task for the factfinder.")

"[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, . . . it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims [] across the line from conceivable to plausible to proceed." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014); *accord Trujillo v. City of New York*, 696 F. App'x 560, 561 (2d Cir. Sept. 1, 2017) (summary order).

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the pleading, which are accepted as true; to matters of which judicial notice may be taken, such as publicly available agency documents, *see, e.g. In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413, 2013 WL 4647512, at * 4 (E.D.N.Y. Aug. 29, 2013) (citing cases); to any written instrument attached to the pleading as an exhibit pursuant to Rule 10(c) of the Federal Rules of Civil Procedure; to statements or documents incorporated by reference in the pleadings; or to documents upon the terms and effect of which the pleading "relies heavily" and which are, thus, rendered "integral" thereto. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016); *Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015).

The SAC alleges that plaintiff "filed a timely complaint with the EEOC;" "[t]he EEOC issued Sutter a right to sue letter;" and plaintiff "timely commenced this lawsuit after receiving her right to sue letter . . . [and] commenced this complaint within ninety days of receiving the EEOC right to sue letter." (SAC, ¶¶ 135-38). "Courts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference, and thus may be considered when deciding a motion to dismiss." *Murtha v. New York State Gaming Comm'n*, No. 17 Civ. 10040, 2019 WL 4450687, at *15 (S.D.N.Y. Sept. 17, 2019) (citing cases). "Moreover, a Court may take judicial notice of EEOC charges, including notices of charge and right-to-sue notices, because they are public records." *Id.*; *accord Falcon v. City Univ. of N.Y.*, 263 F. Supp. 3d 416, 424 (E.D.N.Y. 2017). Accordingly, the Court will consider the EEOC complaint and right-to-sue letter on defendants' motion to dismiss the SAC without converting the motion into a motion for summary judgment. *See, e.g. Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 217 (E.D.N.Y. 2018) (taking judicial notice of the plaintiff's EEOC Charge and the EEOC Dismissal because the Court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment.")

26

2.        Title VII Claims

a.        Timeliness

Defendants assert, *inter alia*, that the Title VII claims in plaintiff's eighth cause of action alleging wrongdoing by Fisher prior to October 14, 2016 are time-barred.[15]

Initially, plaintiff does not oppose, or otherwise address, this branch of defendant's motion and, thus, has seemingly abandoned her Title VII claims alleging discrete acts of discrimination and retaliation by Fisher prior to October 14, 2016. *See Jackson v. Federal Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (in counseled cases, "a partial opposition may imply an abandonment of some claims or defenses. Generally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others. Pleadings often are designed to include all possible claims or defenses, and parties are always free to abandon some of them. . . . Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended."); *Gesualdi v. LR Safety Consultants & Constr. Servs., LLC*, No. CV 19-2404, 2020 WL 6809127, at *7 (E.D.N.Y. Nov. 3, 2020), *report and recommendation adopted*, 2020 WL 6799952 (E.D.N.Y. Nov. 19, 2020) ("It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims."); *Schik v. Miramed Revenue Grp., LLC*, No. 18-cv-7897, 2020 WL 5659553, at *7 (S.D.N.Y. Sept. 23, 2020) (accord).

---

[15] Defendants also contend that the Title VII claims alleging wrongdoing by UCS prior to October 14, 2016 are time-barred but, for the reasons set forth above, the claims against UCS are dismissed in their entirety for lack of personal jurisdiction.

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Hardaway v. Hartford Public Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018); *see also Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 210, 130 S. Ct. 2191, 176 L. Ed. 2d 967 (2010) ("Before beginning a Title VII suit, a plaintiff must first file a timely EEOC charge.") "[T]he burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." *Hardaway*, 879 F.3d at 491.

"Discrimination claims under Title VII . . . must ordinarily be 'filed' with the EEOC within 180 days of the date on which the 'alleged unlawful employment practice occurred.'" *Ford v. Bernard Fineson Dev. Ctr*, 81 F.3d 304, 307 (2d Cir. 1996) (quoting 42 USC § 2000e-5(e)(1)). However, the statutory time period to file an EEOC charge is extended to three hundred (300) days where "the alleged discrimination took place in a state or locality that has its own antidiscrimination laws and an agency to enforce those laws." *Id.*; *see also National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002) ("An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made. In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days."); *Duplan v. City of New York*, 888 F.3d 612, 622, n. 7 (2d Cir. 2018) ("The three-hundred-day look-back period is in fact an extended period that Title VII affords to plaintiffs complaining about conduct that occurred in a state with its own antidiscrimination enforcement mechanisms, which includes New York.");

28

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015) ("Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days 'after the alleged unlawful employment practice occurred.'" (quoting 42 U.S.C. § 2000e–5(e)(1))). Defendants contend that "[s]ince only those discrete acts which occurred within 300 days prior to August 22, 2017 [*i.e.*, the date the EEOC complaint was filed] are actionable, claims against Defendants allegedly occurring before October 14, 2016 [*sic*] are untimely, and therefore, time-barred."[16] (Defendants' Memorandum of Law in Support of Motion to Dismiss ["Def. Mem."] at 12).

"When . . . a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010); *see also Lewis*, 560 U.S. at 210-11, 130 S. Ct. 2191 ("Determining whether a plaintiff's charge is timely … requires identifying precisely the 'unlawful employment practice' of which he complains.")

---

[16] It cannot be ascertained from the pleadings and documents properly considered on this motion whether plaintiff ever filed a charge with the relevant state agency entitling her to the extended statutory time period or filed it only with the EEOC. *See e.g. Morgan*, 536 U.S. at 109, 122 S. Ct. 2061 ("In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, *an employee who initially files a grievance with that agency* must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days." (emphasis added)); *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 502 (2d Cir. 2006) ("Since there was no dual filing with both CHRO and EEOC (it was filed only with EEOC), the plaintiff is not entitled to 300 days. . ."); *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 132 (2d Cir. 1996) ("Title VII requires a claimant to file a charge of discrimination with the EEOC within 180 days of the alleged unlawful discrimination, or *if the claimant initially filed a complaint with a state or local agency*, within 300 days of the allegedly discriminatory conduct, or within thirty days of receiving notice that the state or local agency has terminated the proceedings, whichever is earlier." (emphasis added)). However, defendants only seek dismissal of discrete discriminatory and retaliatory acts occurring prior to the 300-day period. Moreover, although the Court calculates the 300-day period as commencing on October 27, 2016, such that any claims occurring on or before October 26, 2016 would be untimely, there is no difference upon the outcome of this motion based upon the date urged by defendants, *i.e.*, October 14, 2016, and the date calculated by the Court, since there are no discrete discriminatory or retaliatory acts allegedly occurring between October 14, 2016 and October 26, 2016.

Since "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened[,]' [a Title VII plaintiff] . . .  must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Morgan*, 536 U.S. at 110, 122 S. Ct. 2061; *accord Vega*, 801 F.3d at 79. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113, 122 S. Ct. 2061; *accord Vega*, 801 F.3d at 79. Thus, "[w]ith respect to claims based on termination, failure to promote, denial of transfer, or refusal to hire, . . . section 2000e–5(e)(1) precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period, even if other acts of discrimination occurred within the statutory time period." *McGullam*, 609 F.3d at 75; *see also Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("Where the plaintiff complains of discrete discriminatory or retaliatory acts such as termination, failure to promote, denial of transfer, or refusal to hire, such claims are not actionable if they occurred prior to the 300-day period even though they may be related to acts that occurred within the permissible 300-day period.") Accordingly, with respect to plaintiff's Title VII claims based upon discrete acts of discrimination and retaliation, only those acts that occurred within three hundred (300) days before August 22, 2017 are actionable. "All prior discrete discriminatory acts are untimely filed and no longer actionable." *Morgan*, 536 U.S. at 115, 122 S. Ct. 2061; *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176 (2d Cir. 2005) (holding that any discrete acts occurring before the three hundredth (300th) date are not actionable). Accordingly, to the extent that plaintiff's Title VII claims against Fisher are based upon the denial of her request(s) for a transfer in March 2016, and the denials of her requests for "reasonable accommodations" and the

disciplinary measures taken against her prior to October 2016, those claims are dismissed as time-barred[17].

However, Title VII does not "bar an employee from using the prior acts as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113, 122 S. Ct. 2061; *see also Davis-Garrett*, 921 F. 3d at 42 ("[E]ven with respect to a claim of discrete discriminatory or retaliatory acts, expiration of the limitations period does not bar an employee from using the prior acts as background evidence in support of a timely claim.") "Relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation involved, may be considered to assess liability on the timely alleged act." *Davis-Garett*, 921 F.3d at 42.

Moreover, as explained by the Second Circuit:

> "hostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. . . . Accordingly, consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period."

*McGullam*, 609 F.3d at 75; *see also Davis-Garrett*, 921 F.3d at 42. "[I]f any act falls within the statutory time period, [the court] need[s] to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice." *McGullam*, 609 F.3d at 76; *see also Morgan*, 536 U.S. at 120, 122 S. Ct. 2061 ("A court's task is to determine

---

[17] In any event, Title VII "does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers." *Littlejohn v. City of New York*, 795 F.3d 297, 313 (2d Cir. 2015); *accord Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014).

whether the acts about which an employee complains are part of the same actionable hostile

work environment practice, and if so, whether any act falls within the statutory time period.")

"Given . . . that the incidents constituting a hostile work environment are part of one

unlawful employment practice, the employer may be liable for all acts that are part of this single

claim. In order for the charge to be timely, the employee need only file a charge within 180 or

300 days of any act that is part of the hostile work environment." *Morgan*, 536 U.S. at 118, 122

S. Ct. 2061. In sum, "[a] charge alleging a hostile work environment claim . . . will not be time

barred so long as all acts which constitute the claim are part of the same unlawful employment

practice and at least one act falls within the [statutory] time period." *Id.* Thus, plaintiff's Title

VII hostile work environment claim against Fisher is not time-barred.


            b.     Merits

Initially, defendants' contention that "plaintiff has failed to allege a Title VII claim based

on . . . disability discrimination," (Def. Mem. at 13), is misplaced. Title VII "proscribes

discrimination in employment on the basis of race, color, religion, sex, or national origin." *Fort*

*Bend Cnty., Tex. v. Davis*, --- U.S. ---, 139 S. Ct. 1843, 1846, 204 L. Ed. 2d 116 (2019) (citing 42

U.S.C. § 2000e-2(a)(1)). "The Act also prohibits retaliation against persons who assert rights

under the statute." *Id.* (citing 42 U.S.C. § 2000e–3(a)). Title VII does not prohibit discrimination

on the basis of disability. Rather, plaintiff's federal law disability discrimination claims were

brought pursuant to the ADA and, as set forth above, those claims are dismissed in their entirety

with prejudice for the reasons set forth in Magistrate Judge Tomlinson's Report.

Plaintiff's eighth cause of action, alleging violations of, *inter alia*, Title VII and the FMLA, are asserted against Fisher and UCS only. As set forth above, Title VII "does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers."[18] *Littlejohn v. City of New York*, 795 F.3d 297, 313 (2d Cir. 2015); *accord Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014); *see also Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 595 (S.D.N.Y. 2017) *(*"The Second Circuit has determined that the remedial provisions of Title VII do not provide for individual liability. . . . Nor can a Title VII claim prevail against a defendant in his official capacity."); *Berlyavsky v. New York City Dep't of Env't Prot.*, No. 14-cv-03217, 2015 WL 5772266, at *13 (E.D.N.Y. Aug. 28, 2015), *report and recommendation adopted in relevant part*, 2015 WL 5772255 (E.D.N.Y. Sept. 30, 2015) ("Title VII . . . do[es] not provide for individual liability, even when individuals are sued only in their 'official capacity.'") Accordingly, plaintiff's Title VII claims against Fisher are dismissed in their entirety with prejudice for failure to state a claim for relief.

Moreover, for the reasons set forth above, the claims against UCS are dismissed for lack of personal jurisdiction. Therefore, the Court is without jurisdiction to consider the merits of the Title VII claim against UCS. *See Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 779, 120 S. Ct. 1858, 146 L.Ed.2d 836 (2000), *abrogated on other grounds by Cook County, Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 123 S. Ct. 1239, 155 L. Ed. 2d 247 (2003) ("Even jurisdiction over the person (as opposed to subject-matter jurisdiction) is an essential element of the jurisdiction of a district [] court, without which the court is powerless to proceed

---

[18] Indeed, in plaintiff's memorandum of law in opposition to Fisher's prior motion to dismiss, *inter alia*, she "agree[d] that there are no individual liabilities under the ADA and Title VII" and indicated that the Title VII claims should proceed against only UCS. (DE 28 at p. 8).

to an adjudication."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999) ("Personal jurisdiction . . . is an essential element of the jurisdiction of a district [] court, without which the court is powerless to proceed to an adjudication.")

        3.     Claims for Violations of the FMLA

            a.     Section 1983 (Fifth Cause of Action)

Initially, plaintiff cannot base her Section 1983 claims upon violations of the FMLA. "[B]ecause the FMLA provides a comprehensive remedial framework, enforcement of alleged FMLA violations through § 1983 is foreclosed." *Smith v. Fla. Dep't of Corr.*, No. 6:08-cv-1213-Orl-DAB, 2009 WL 10670364, at *7 (M.D. Fla. Oct. 16, 2009); *accord Jones v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 17 C 5879, 2018 WL 1508529, at *6 (N.D. Ill. Mar. 27, 2018); *see also Webb v. County of Trinity*, 734 F. Supp. 2d 1018, 1031 (E.D. Cal. 2010) ("[S]ection 1983 may not be used to vindicate the rights provided by the FMLA.") As succinctly explained by the district court in *Webb*:

> "In general, courts presume that section 1983 provides a mechanism for enforcement of all federal statutory rights. *Me. v. Thiboutot*, 448 U.S. 1, 5, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980) (rejecting contention that § 1983 applies only to civil rights statutes and constitutional rights). '[T]he defendant may defeat this presumption by demonstrating that Congress did not intend' that § 1983 furnish a remedy for the rights created by the statute. *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120, 125 S. Ct. 1453, 161 L. Ed. 2d 316 (2005). Such an intent may be inferred where the statute at issue provides 'a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.' *Blessing v. Freestone*, 520 U.S. 329, 341, 117 S. Ct. 1353, 137 L. Ed. 2d 569 (1997).
>
> The FMLA provides its own remedial scheme, including a specific private right of action. 29 U.S.C. § 2617. The inclusion of an 'express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983.' *Rancho Palos Verdes*, 544 U.S. at 121, 125 S. Ct. 1453. Although the Court has expressly declined to state whether

34

the presence of such a specific remedy is conclusive, as a practical matter, '"the existence of a more restrictive private remedy ... has been the dividing line" between the cases in which the Supreme Court has held that § 1983 applied and those in which it has held that it did not.' *Hayduk* [*v. City of Johnstown*], 580 F. Supp. 2d [429,] 483 [(M.D. Pa. 2008)] (quoting *Rancho Palos Verdes*, 544 U.S. at 121, 125 S. Ct. 1453). The remedy provided by the FMLA is plainly more restrictive than the one provided by § 1983. Section 1983, unlike the FMLA, allows recovery of nominal, punitive, and non-economic damages. *Id.* at 483-84. The FMLA, unlike § 1983, requires a would-be plaintiff to seek a  right to sue letter from the Equal Employment Opportunity Commission before filing suit and a plaintiff may not sue if the Secretary of Labor decides to pursue the action. 29 U.S.C. § 2617(a)(4). In light of these differences, the court concludes that the FMLA supplants, rather than supplements, the remedial scheme provided by § 1983."

*Webb*, 734 F. Supp. 2d at 1031-32.

"An ever-increasing number of federal courts have held the remedies provided by § 2617 are the exclusive remedies for FMLA violations and have prohibited § 1983 claims premised on the same conduct. *Smith*, 2009 WL 10670364 (citing cases); *see also Jones*, 2018 WL 1508529, at *6 (finding that the majority of district courts that have considered the issue have held that "the enforcement mechanisms in the FMLA are sufficiently comprehensive to preclude actions under Section 1983." (citing cases)); *Inskeep v. City of Farmington*, No. CV 14-262 WJ/CG, 2014 WL 12789006, at *5 (D.N.M.  Aug. 11, 2014) (finding available case law to be consistent with the defendants' claim that Section 1983 "does not create a remedy for alleged violations of the FMLA, and that the remedial scheme contained within the FMLA is sufficiently comprehensive, precluding § 1983 remedies." (citing cases)). Although none of those cases is binding upon this Court, the Court is persuaded by their reasoning, particularly absent any authority to the contrary[19]. Accordingly, the branch of defendants' motion seeking dismissal of

---

[19] Indeed, plaintiff does not oppose, or otherwise address, defendants' arguments seeking dismissal of so much of her Section 1983 claim as is based upon defendants' alleged violations of the FMLA and, thus, has seemingly abandoned those claims.

so much of plaintiff's Section 1983 claim (fifth cause of action) as is based upon Fisher's alleged violations of the FMLA is granted and so much of plaintiff's Section 1983 claim as is based upon Fisher's alleged violations of the FMLA is dismissed in its entirety with prejudice for failure to state a claim for relief. [20]

> b.   FMLA Claims (Eighth Cause of Action against Fisher)

Section 2615(a)(1) of the FMLA provides, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). "The FMLA . . . creates a private right of action to seek both equitable relief and money damages against any employer . . . in any Federal or State court of competent jurisdiction should that employer interfere with, restrain, or deny the exercise of FMLA rights." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017).

---

[20] Similarly, plaintiff cannot base her Section 1983 claims upon violations of the ADA because, like the FMLA, the ADA provides an "extensive, comprehensive remedial framework[] that address[es] every aspect of [a plaintiff's] claims under section 1983." *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (11th Cir.1997); *accord Lollar v. Baker*, 196 F.3d 603, 610 (5th Cir. 1999); *see also Williams v. Pennsylvania Human Rels. Comm'n*, 870 F.3d 294, 300 (3d Cir. 2017) ("[E]very circuit to consider this exact question has held that, while a plaintiff may use § 1983 as a vehicle for vindicating rights independently conferred by the Constitution, Title VII and ADA statutory rights cannot be vindicated through § 1983."); *Tri–Corp Housing Inc. v. Bauman*, 826 F.3d 446, 449 (7th Cir. 2016) ("§ 1983 cannot be used to alter the categories of persons potentially liable in private actions under the Rehabilitation Act or the Americans with Disabilities Act."); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act.") Although the Second Circuit has not yet addressed the issue of whether rights established in the ADA may be enforced under Section 1983, it has addressed the issue in the context of the Rehabilitation Act and, in doing so, it cited favorably to cases from its Sister Circuits which "all have concluded that § 1983 cannot be used to alter the categories of persons potentially liable in private actions under the Rehabilitation Act or the ADA." *Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 83 (2d Cir. 2020) (holding that "the rights established in the Rehabilitation Act may not be enforced through § 1983.") Accordingly, so much of plaintiff's Section 1983 claim (fifth cause of action) as is based upon Fisher's alleged violations of the ADA is dismissed in its entirety with prejudice for failure to state a claim for relief.

"FMLA claims come in at least two varieties: interference and retaliation." *Woods*, 864

F.3d at 166. "In a general sense, an employee brings an 'interference' claim when her employer

has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA."

*Id*.; *see also Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016) ("To succeed

on a claim of FMLA interference, a plaintiff must establish that the defendant denied or

otherwise interfered with a benefit to which she was entitled under the FMLA.") "[T]o prevail on

a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible

employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3)

that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of

her intention to take leave; and 5) that she was denied benefits to which she was entitled under

the FMLA." *Graziadio*, 817 F.3d 415, 424 (2d Cir. 2016); *accord Coutard v. Municipal Credit

Union*, 848 F.3d 102, 109 (2d Cir. 2017).

"An individual may be held liable under the FMLA only if she is an 'employer,' which is

defined as encompassing 'any person who acts, directly or indirectly, in the interest of an

employer to any of the employees of such employer,' 29 U.S.C. § 2611(4)(A)(ii)(I); *see also* 29

C.F.R. § 825.104(d)." *Graziadio*, 817 F.3d at 422. Since "the FMLA's definition of 'employer'

largely tracks the definition of 'employer' used in the Fair Labor Standards Act ('FLSA'), 29

U.S.C. § 203(d)," the economic-reality test used to evaluate "employers" under the FLSA

applies to FMLA cases as well. *See Graziadio*, 817 F.3d at 422.

Under the economic-reality test, "courts ask whether the alleged employer possessed the

power to control the worker in question, with an eye to the 'economic reality' presented by the

facts of each case." *Graziadio*, 817 F.3d at 422. To do so, they consider a nonexclusive and

overlapping set of factors . . . intended to encompass the totality of circumstances." *Id.* "These factors include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* "No one of the four factors standing alone is dispositive [] and any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Id.* at 422-23. "In the FMLA context, courts assessing the economic reality of an employment relationship have construed this test as asking essentially whether the putative employer controlled in whole or in part plaintiff's rights under the FMLA." *Id.* at 423.

Whether or not final authority for the challenged conduct formally rested with the individual defendant, *Graziadio*, 817 F.3d at 423, an individual working for an employer may be liable as an employer under the FMLA where he or she wielded "substantial authority" over the conduct which interfered with a plaintiff's rights under the FMLA. *See, e.g. Id.* (finding that a jury could reasonably conclude that, "but for the substantial authority wielded" by the defendant's Director of Human Resources, the Vice President of Administration and Shared Services, who retained ultimate termination authority, "would not have exercised his ultimate authority to fire" the plaintiff and, thus, that the Director of Human Resources held substantial power over the plaintiff's termination in light of the fact that the Vice President admitted "that he conducted no independent investigation concerning Graziadio's leave dispute, but merely directed the issue to [the Director] for handling;" and that the Director, herself, described the plaintiff's termination as a joint decision between herself and the Vice President."); *Knight v. County of Cayuga*, No. 5:19-CV-712, 2019 WL 5067901, at *10 (N.D.N.Y. Oct. 9, 2019)

("[I]ndividual public employees may be amenable to suit under the FMLA if they qualify as an employer under 29 U.S.C. § 2611(4)(A)(ii)(I) such that they had substantial control over the aspect of employment alleged to have been violated.") In other words, "[t]he economic reality test does not require an individual to have absolute control over the Plaintiff's rights under the FMLA, but sufficient control in whole or in part." *Greenberg v. State Univ. Hosp.-Downstate Med. Ctr.*, No. 15-CV-2343, 2019 WL 4752018, at *16 (E.D.N.Y. Sept. 29, 2019), *aff'd on other grounds*, --- F. App'x ---, 2020 WL 7380245 (2d Cir. Dec. 16, 2020).

Since "the economic reality test is a factual inquiry that does not bear on the sufficiency of pleadings, . . . to survive a motion to dismiss, Plaintiff need not allege sufficient facts to satisfy the economic reality test; instead, he must simply plead that the proposed Individual Defendants had substantial control over the aspects of employment alleged to have been violated." *Smith v. Westchester County*, 769 F. Supp. 2d 448, 475-76 (S.D.N.Y. 2011).

The allegations in the SAC are insufficient to establish that Fisher had any control, in whole or in part, over plaintiff's rights under the FMLA, much less substantial control such that she constituted an employer within the meaning of the statute. Plaintiff pleads the same allegations in the SAC as she did in the first amended complaint, which Magistrate Judge Tomlinson and Judge Spatt found were insufficient to state a claim for relief under the FMLA against Fisher. Specifically, the SAC alleges: (i) that Fisher "was a former Deputy Administrative Judge for New York City Family Court, who authorized the illegal detention and discriminatory acts towards Plaintiff[,]" (SAC, ¶ 10); (ii) that "[u]pon information and belief Judge Fisher . . . retired from the U.C.S. sometimes [*sic*] in 2017 after she authorized several illegal acts against Plaintiff, including the detention of Plaintiff, and illegal entry into Plaintiff's

home[,]" (*id.*, ¶ 11); (iii) that on or about February 9, 2017, plaintiff "requested leave under the Family Medical Leave Act (FMLA) to cover intermittent use of sick time between February 2017 and December 31, 2017. The leave was only granted for one month[,]"[21] (*id.*, ¶ 34); (iv) that plaintiff "was sent a letter informing her that she would need to reapply after the month was over to extend the FMLA[,]" (*id.*, ¶ 35); and (v) that "[t]he request for FMLA made on or about February 9, 2017 was based on her worsening condition including migraines, photophobia, smell sensitivity, nausea and vomiting that were associated with traveling to and from work[,]" (*id.*, ¶ 36).

In addition, the SAC adds a conclusory allegation that "Fisher refused, without any reasonable basis, to provide FMLA benefits to Sutter."[22] (*Id.*, ¶ 37). Such allegation, even considered in conjunction with the allegations set forth above, is no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" that is insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. Even assuming, *arguendo*, that the refusal to grant plaintiff the FMLA leave as requested constitutes an unreasonable interference with her rights under the statute, the SAC does not allege any facts, other than plaintiff's conclusory allegation, that Fisher is in any way responsible for the refusal. The SAC does not, for example, identify from whom plaintiff requested FMLA leave or who signed and/or sent her the letter granting her request for FMLA leave for one month, but indicating she needed to reapply after the month was

---

[21] Since plaintiff alleges that she was, in fact, granted FMLA leave for a period of one month, her dispute is actually that she was not granted the exact FMLA leave she requested.

[22] The first amended complaint alleged that "[t]he management Defendants refused, without any reasonable basis, to provide FMLA to Sutter." (Am. Compl., ¶ 34). The SAC merely substitutes Fisher for "the management Defendants." (SAC, ¶ 37). Moreover, although plaintiff asserts in her opposition that "Fisher had the authority in 2016 and 2107 to approve request for FMLA and to institute charges against employees for misconduct," (Plf. Opp. at 9), there is no such allegation in the SAC to that effect; nor any factual allegations in support of that assertion.

over to extend the FMLA leave; nor does it allege how Fisher was involved in the allegedly unreasonable refusal to provide her FMLA benefits as requested, *i.e.*, what acts Fisher performed, or failed to perform, which interfered with her rights under the FMLA.[23] Absent "further factual enhancement," *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937, plaintiff's naked assertion that Fisher unreasonably refused to provide FMLA benefits to her has "not nudged [her FMLA] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955; *accord Port Auth. of N.Y. & N.J.*, 768 F.3d at 254.

The cases cited by plaintiff in support of her contention that a plaintiff need only "plead that the proposed Individual Defendants had substantial control over the aspects of employment alleged to have been violated," (Plf. Opp. at 9), are distinguishable. In *Smith*, the district court found that the plaintiff had "adequately pled that Defendants Spano, Turner, Gibson, and Isler controlled [his] rights under the FMLA or had substantial control over the aspects of Plaintiff's employment that he alleges were violated" based upon the following factual allegations: (i) that the plaintiff "appealed the imposition of attendance review and sent a complaint letter to Defendant Spano, specifically asserting that such disciplinary action was a violation of his FMLA rights[;]" (ii) that "Defendant Turner controlled Plaintiff being called for and placed on attendance review, . . . sent Plaintiff home upon his return to work for failing to obtain unnecessary medical clearance, . . . and interfered with his participation in the EAP[;]" (iii) "that Defendant Gibson wrongfully placed him on attendance review for his absence on dates he took FMLA leave[;]" and (iv) "that Defendant Isler sent him the October 24, 2006, [*sic*] letter

---

[23] The SAC is also devoid of any allegations indicating that Fisher had the power to hire and fire employees; supervised and controlled employee work schedules or conditions of employment; determined the rate and method of payment; or maintained employment records.

41

improperly denying his request for an extension of his FMLA leave." *Smith*, 769 F.Supp.2d at 476. In contrast, the SAC is devoid of any factual, nonconclusory allegations suggesting that Fisher had any control, much less substantial control, over the decision to deny plaintiff the FMLA leave she requested.

The case *Ziccarelli v. NYU Hosps. Ctr.*, 247 F. Supp. 3d 438 (S.D.N.Y. 2017), actually supports dismissal of plaintiff's FMLA claims against Fisher, as the district court found that "legal conclusions unsupported by facts" related to the individual defendant's control over the plaintiff's FMLA leave or the four factors listed in the economic reality test are insufficient to state a plausible claim that the individual defendant "had substantial control over Plaintiff's FMLA leave." *Id.* at 447.

Since the SAC does not plead sufficient "factual content that allows the court to draw the reasonable inference that [Fisher] is liable for the misconduct alleged," *Kairam v. W. Side GI, LLC*, 793 F. App'x. 23, 25 (2d Cir. Dec. 9, 2019) (summary order), it fails to plead a plausible FMLA claim against Fisher. *See generally Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'") Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's FMLA claims against Fisher is granted and plaintiff's FMLA claims against Fisher

(eighth cause of action) are dismissed in their entirety with prejudice for failure to state a claim for relief.[24]

4.      Section 1983 and NYSHRL Claims

A Section 1983 claim requires the plaintiff to establish two (2) elements: "(1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega*, 801 F.3d at 87-88; *accord DiPizio v. Empire State Dev. Corp.*, 745 F. App'x 385, 388 (2d Cir. Aug. 17, 2018) (summary order). Only the first element is at issue on this motion. The SAC alleges the following Section 1983 claims: (i) that Fisher deprived plaintiff of her Fourteenth Amendment equal protection rights by subjecting her "to terms and conditions of employment different from those offered to other non-White employees,"[25] (SAC, ¶¶ 149, 157); and (ii) that Brown deprived plaintiff of her Fourth Amendment rights by illegally entering her home without a warrant or permission, walking around the stairs and "looking around the home while he stationed himself by the stairs."[26] (SAC, ¶¶ 160-161). Moreover, for the reasons set forth in Magistrate Judge

---

[24] Accordingly, plaintiff's eighth cause of action, asserting claims for violations of Title VII, the ADA and the FMLA against Fisher and UCS, is dismissed in its entirety.

[25] The SAC also asserts Section 1983 claims alleging that Fisher deprived plaintiff of her rights under the ADA and FMLA. However, as set forth above, due to the comprehensive remedial scheme of both the ADA and FMLA, plaintiff cannot maintain a Section 1983 claim for alleged violations of those statutes.

[26] Plaintiff also asserts a claim that "the Defendants" deprived her of her Fourth Amendment rights by illegally detaining and falsely imprisoning her "when they compelled her with the powers of their offices to get into a car with armed law enforcement officers and follow them to a train station in Long Island New York and then further compelled her to follow the armed officers to her residence in Suffolk County, New York from Brooklyn, all against her will and while she was not free to walk away on her own." (SAC, ¶ 159). However, that claim is identical to the false arrest and imprisonment claim in the amended complaint which was previously dismissed with prejudice. (*Compare* SAC, ¶ 159 *with* Am. Compl., ¶ 166). Thus, as set forth above, plaintiff's false arrest and imprisonment claims in the sixth cause of action are dismissed in their entirety with prejudice for the reasons set forth in the Report.

Tomlinson's Report, (Report at 41-43), the Court also construes plaintiff's claims alleging that

Fisher violated her rights under 42 U.S.C. § 1981 by treating her differently "because she is also

a disabled and White female employee;" subjecting her to race discrimination in the workplace;

and subjecting her to retaliation and hostile work environment (fourth cause of action), (SAC, ¶¶

151-54), as claims alleging violations of her Fourteenth Amendment equal protection rights

pursuant to Section 1983.

a.       Statute of Limitations[27]

"The statute of limitations for § 1983 actions arising in New York is three years."

*Lucente v. County of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020); *accord Milan v. Wertheimer*, 808

F.3d 961, 963 (2d Cir. 2015), "running from the time a plaintiff knows or has reason to know of

the injury giving rise to the claim." *Milan*, 808 F.3d at 963; *see also Smith v. Campbell*, 782 F.3d

93, 100 (2d Cir. 2015) ("While the applicable statute of limitations in a § 1983 case is

determined by state law, the accrual date of a § 1983 cause of action is a question of federal law

that is not resolved by reference to state law. . . . Rather, it is the standard rule that accrual occurs

when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file

suit and obtain relief. . . . [T]he tort cause of action accrues, and the statute of limitations

commences to run, when the wrongful act or omission results in damages. The cause of action

accrues even though the full extent of the injury is not then known or predictable."); *Fahs*

---

[27] Defendants also seek dismissal of so much of plaintiff's Section 1981 and FMLA claims against Fisher as are based upon allegations of wrongdoing occurring prior to February 6, 2015 on the basis that such claims are time-barred. However, since, as set forth above, defendants' Section 1981 claims and FMLA claims against Fisher are dismissed in their entirety with prejudice, the Court will not address those contentions. Defendants do not seek dismissal of plaintiff's NYSHRL or NYCHRL claims as time-barred.

44

*Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) ("The statute of limitations on an

Equal Protection claim brought in New York under 42 U.S.C. § 1983 is three years. . . . Such a

claim accrues when the plaintiff knew or should have known of the disparate treatment.");

*Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) ("A Section 1983 claim ordinarily

accrues when the plaintiff knows or has reason to know of the harm.") Since plaintiff filed her

complaint on February 6, 2018, her claims must have accrued on or after February 6, 2015 to be

timely, unless the continuing violation doctrine can be applied to her claims. *See Lucente*, 980

F.3d at 308.

"The continuing violation doctrine, where applicable, provides an exception to the

normal knew-or-should-have-known accrual date." *Lucente*, 980 F.3d at 309; *accord Shomo*, 579

F.3d at 181. Since the continuing violation doctrine "applies to claims composed of a series of

separate acts that collectively constitute one unlawful [] practice[,] . . . [it] applies not to discrete

unlawful acts, even where those discrete acts are part of serial violations, but to claims that by

their nature accrue only after the plaintiff has been subjected to some threshold amount of

mistreatment." *Lucente*, 980 F.3d at 309. "Accordingly, where the continuing violation doctrine

applies, the limitations period begins to run when the defendant has engaged in enough activity

to make out an actionable [] claim." *Id.* "A claim will be timely, however, only if the plaintiff

alleges [] some non-time-barred acts contributing to the violation." *Id.*

"To trigger the continuing violation doctrine in the context of an Equal Protection claim,

a plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-

time-barred acts taken in furtherance of that policy." *Lucente*, 980 F.3d at 309; *see also Fahs*,

725 F.3d at 292 ("Where a plaintiff challenges a continuous practice and policy of

discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it. . . . To trigger such a delay, the plaintiff must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy.") Specifically, the continuing violation doctrine can apply to plaintiff's § 1983 claims against Fisher as long as plaintiff alleged an unconstitutional act committed by Fisher that falls within the three-year statutory period. *See Lucente*, 980 F.3d at 310.

Contrary to defendants' contention, to the extent plaintiff's Section 1983 claim is based upon allegations that she was discriminated against based on her race, gender and disability by defendants' purported policy requiring her "to prove that her numerous absences . . . were related to her workers [*sic*] compensation claims," (Def. Mem. at 21), such claim is not time-barred because the last discriminatory act in furtherance of such policy allegedly occurred within the three (3)-year limitations period, *i.e.*, the SAC alleges multiple instances on or after February 6, 2015, where plaintiff was allegedly charged "with misconduct for not coming to work when that absence was for a compensable injury." (SAC, ¶¶ 64-65). Accordingly, the branch of defendants' motion seeking to dismiss plaintiff's Section 1983 claims against Fisher as time-barred is denied in its entirety.

### b.    Discrimination Claims

#### i.    Discriminatory Intent

"Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, protects public employees from various forms of discrimination, including hostile

work environment and disparate treatment on the basis of race [or other impermissible

consideration]." *Littlejohn*, 795 F.3d at 320. Similarly, the NYSHRL makes it unlawful for an

employer to discriminate on the basis of, *inter alia*, race, creed, color, sex or disability. N.Y.

Exec. Law § 296(1). Employment discrimination claims pursuant to Title VII, Section 1983 and

the NYSHRL are evaluated under essentially the same substantive standards[28]. *See Berrie v. Bd.*

*of Educ. of Port Chester-Rye Union Free Sch. Dist.*, 750 F. App'x 41, 47 (2d Cir. Sept. 18, 2018)

(summary order); *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).

In order to state a disparate treatment claim, a plaintiff "must plausibly allege that she

suffered an adverse employment action taken because of her sex [or other impermissible

consideration]." *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019); *see also Brown v. City*

*of Oneonta, N.Y.*, 221 F.3d 329, 337 (2d Cir. 2000), *overruled in part on other grounds by*

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002) ("To state a

race-based claim under the Equal Protection Clause, a plaintiff must allege that a government

---

[28] However, the Second Circuit has recently explained that "the disparate treatment provision of Title VII is unusual in that it incorporates a lessened causation standard. Under Title VII, a plaintiff may succeed simply by establishing that sex (or another protected characteristic) was a motivating factor for any employment practice, even though other factors also motivated the practice." *Naumovski v. Norris*, 934 F.3d 200, 213 (2d Cir. 2019). In contrast, "a plaintiff pursuing a claim for employment discrimination under § 1983 rather than Title VII must establish that the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action or the hostile environment. It is insufficient to establish simply that invidious discrimination was 'a motivating factor' of the offending conduct." *Id.* at 214. Nonetheless, that difference generally comes into play at the third step of the *McDonnell Douglas* analysis, insofar as "a plaintiff asserting a § 1983 claim bears a higher burden in establishing that the employer's alternative, nondiscriminatory reason for the adverse employment action is 'pretextual.'" *Id.* It generally does not affect the standard for plausibly pleading an employment discrimination claim, *i.e.*, a plaintiff need only provide minimal support for the proposition that the defendants acted with discriminatory intent to state a plausible discrimination claim under Title VII, Section 1983 and the NYSHRL.

Moreover, "[i]n August 2019, the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.'" *McHenry v. Fox News Network, LLC*, No. 19 Civ. 11294, 2020 WL 7480622, at *8 (S.D.N.Y. Dec. 18, 2020) (quoting N.Y. Exec. Law § 300). However, although "[t]he amendment took effect on the signing date, August 12, 2019, . . . [it] does not have retroactive effect." *Id.*

actor intentionally discriminated against him on the basis of his race."); *Spring v. Allegany–Limestone Cent. Sch. Dist.*, 655 F. App'x 25, 28 (2d Cir. July 14, 2016) (summary order) (holding that disparate treatment claims "require plaintiffs to show that the person was treated differently than others similarly situated as a result of intentional or purposeful discrimination.") In other words, "[t]o state a discrimination claim under the Fourteenth Amendment Equal Protection Clause, . . . plaintiffs must sufficiently allege that defendants acted with discriminatory intent." *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015); *accord DiPizio*, 745 F. App'x at 390.

"[A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action," and has "at least minimal support" for the proposition that the defendant acted with discriminatory intent. *Littlejohn*, 795 F.3d at 311.  Only the latter element is at issue on this motion. "[T]he evidence necessary to satisfy the initial burden of establishing that an adverse employment action occurred under circumstances giving rise to an inference of discrimination is 'minimal.'" *Id.* at 313. "The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory [intent]." *Id.* at 311; *see also Vega*, 801 F.3d at 87 ("On a motion to dismiss, the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to nudge their claims across the line from conceivable to plausible.") "A plaintiff can meet that burden through direct evidence of intent to discriminate, or

by indirectly showing circumstances giving rise to an inference of discrimination." *DiPizio*, 745

F. App'x at 390; *see also Vega*, 801 F.3d at 87 ("At the pleadings stage, . . . a plaintiff must

allege that the employer took adverse action against her at least in part for a discriminatory

reason, and she may do so by alleging facts that directly show discrimination or facts that

indirectly show discrimination by giving rise to a plausible inference of discrimination.")

"Conclusory allegations of racial discrimination are insufficient to maintain a § 1983 action."

*McMillan v. Togus Reg'l Office, Dep't of Veterans Affs.*, 120 F. App'x 849, 852 (2d Cir. Jan. 7,

2005) (summary order); *see, e.g. Lilakos v. New York City*, 808 F. App'x 4, 8 (2d Cir. Apr. 8,

2020) (summary order) ("Plaintiffs' allegations of being 'singled out' and 'targeted' are

conclusory and cannot be accepted as true at the motion to dismiss phase."); *Burgis*, 798 F.3d at

68 (affirming the district court's decision granting the defendants' motion to dismiss the Equal

Protection and § 1981 claims because, *inter alia*, the plaintiffs "fail[ed] to allege in other than

conclusory fashion any specific instances of discrimination with respect to any individual

plaintiff or others similarly situated."); *Rivera-Powell v. New York City Bd. of Elections*, 470

F.3d 458, 470 (2d Cir. 2006) ("[C]onclusory allegation[s] of discrimination . . . without

evidentiary support or allegations of particularized incidents, do[] not state a valid claim and so

cannot withstand a motion to dismiss.")

    Where, as here, the operative pleading does not plead any direct evidence of

discriminatory intent, a plaintiff can raise an inference of discrimination by demonstrating the

disparate treatment of at least one similarly situated employee outside his protected group and

sufficient facts from which it may reasonably be inferred that "the plaintiff's and comparator's

circumstances . . . bear a reasonably close resemblance."[29] *Hu v. City of New York*, 927 F.3d 81, 96-97 (2d Cir. 2019); *see also Raspardo*, 770 F.3d at 126 ("[A] showing of disparate treatment is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case. . . . Raising such an inference, however, requires the plaintiff to show that the employer treated him or her less favorably than a similarly situated employee outside of the protected group."); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("A plaintiff may raise . . . an inference [of discrimination] by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group."); *Santucci v. Levine*, No. 17-cv-10204, 2021 WL 76337, at *5 (S.D.N.Y. Jan. 8, 2021) ("[O]n a Rule 12(b)(6) motion the Court must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated. . . . To satisfy this standard, the plaintiff's and comparator's circumstances must bear a reasonably close resemblance."); *Marom v. Town of Greenburgh*, No. 18 Civ. 7637, 2020 WL 4891339, at *4 (S.D.N.Y. Aug. 19, 2020) ("While there is no precise formula to determine whether an individual is similarly situated to comparators, . . . at the motion to dismiss stage, a plaintiff must still allege facts that plausibly demonstrate that he is similarly situated to the comparators.") In the Title VII context, which, for purposes of this motion, is analogous to plaintiff's Equal Protection and NYSHRL claims, "courts have held that employees may be similarly situated in 'all material respects' when the plaintiff and the putative comparator were subject to the same workplace standards." *Donohue v.*

---

[29] The SAC does not assert that Fisher ever criticized plaintiff in ethnically or racially degrading terms; made invidious comments about other individuals in plaintiff's protected group; or engaged in any other conduct from which discriminatory intent may reasonably be inferred, other than the disparate treatment of other officers outside of plaintiff's protected group.

*Madison*, No. 1:13-CV-918, 2020 WL 4432661, at *3 (N.D.N.Y. July 31, 2020); *see also Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) ("To establish an inference of discrimination, a plaintiff must allege that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself. . . . What will constitute 'all material respects' will vary from case to case, of course. We have said that the judgment rests on whether the plaintiff and those she maintains were similarly situated were subject to the same workplace standards. . . . The plaintiff's and comparator's circumstances must bear a reasonably close resemblance, but need not be identical.")

Plaintiff alleges disparate treatment based on race, sex and disability as a result of the denial of her requests for reassignment, her "referral" for a fitness for duty evaluation, the disciplinary proceedings against her, and the revocation of her firearms privileges. In addition to the conclusory allegations in the first amended complaint, which Magistrate Judge Tomlinson and Judge Spatt found were insufficient to state a plausible discrimination claim, the SAC contains the following new allegations:

> 120.    Officer King, an African American, a fellow officer, subject to the same terms and conditions of service like Plaintiff had disabilities issues, requested for reasonable accommodation and was granted a transfer close to her home by Fisher, without hassles. She was also granted extend [*sic*] FMLA without hassles.
>
> 121.    Officer Camille, African American a fellow officer subject to the same rules as Plaintiff, had disabilities, was also granted reasonable accommodation with a transfer close to her home without any hassles.
>
> 122.    Officer Teesha, African American, with the same terms and condition of service as Plaintiff, was also granted reasonable accommodation by Fisher, with a transfer close to her home without any hassles.
>
> 123.    Officer Selena, African American and Officer Cathy, Hispanic, were asked to turn their guns in by Fisher and were never escorted home or followed right into the privacy of their homes. They were allowed to bring their weapons in.

124.   Officer Rosemary, White female was sick with breast cancer and denied sick time, FMLA, and reasonable accommodation by Fisher during her chemotherapy.

Contrary to defendants' contention, the fact that the SAC identifies most of the allegedly similarly situated officers only by their first names and race is not fatal to plaintiff's claims at this stage of the litigation. *See, e.g.  Thomas v. Venditto*, 925 F. Supp. 2d 352, 365 (E.D.N.Y. 2013) (finding that the complaint plausibly alleged that the plaintiff was treated differently from other similarly situated individuals, notwithstanding that it failed to provide the names and addresses of the comparators). Rule 8(a)(2) of the Federal Rules of Civil Procedure  only requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the [] claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. Contrary to defendants' contention, Rule 8 does not require sufficient details "to put the moving Defendants on notice of who [the allegedly similarly situated] officers are," (Def. Mem. at 14); only enough factual allegations to make a claim plausible. *See Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 323 (2d Cir. 2011) ("The *Twombly* Court, while stating that mere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do,' stated that 'a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations,' but only '[f]actual allegations [that are] enough to raise a right to relief above the speculative level,' . . . *i.e.*, enough to make the claim 'plausible.'" (alterations in original)). The plausibility standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *Id.*  at 324.

Initially, in her opposition to defendants' motion, plaintiff asserts that she brings her Section 1983 claim "against Fisher in her individual capacity alleging race discrimination," (Plf. Opp. at 10), and, thus, has seemingly abandoned her Section 1983 discrimination claims based on sex and disability. In any event, since plaintiff does not allege even one (1) comparator with respect to her claims of disparate treatment based on sex or disability[30], *i.e.*, that Fisher or any other individual defendant treated plaintiff less favorably than any similarly situated male officer or non-disabled officer with respect to the challenged conduct, the factual allegations in the SAC are insufficient to give plausible support to the conclusion that any of the allegedly discriminatory actions occurred under circumstances giving rise to an inference of discrimination based on sex or disability. Accordingly, the branches of defendants' motion seeking to dismiss plaintiff's Section 1983 and NYSHRL claims is granted to the extent that plaintiff's Section 1983 and NYSHRL claims alleging discrimination based on sex and disability are dismissed in their entirety with prejudice for failure to state a plausible claim for relief.

However, with respect to plaintiff's Section 1983 and NYSHRL race discrimination claims, plaintiff satisfied the plausibility standard, albeit just barely, by alleging differential treatment by Fisher with respect to the same conduct by non-White officers who were subject to the same workplace standards as plaintiff. *See, e.g. Hu*, 927 F.3d at 97 (finding that the plaintiff

---

[30] There is case law supporting the premise that "disability is not a suspect classification under the Equal Protection Clause." *Chick v. County of Suffolk*, 546 F. App'x 58, 60 (2d Cir. Dec. 6, 2013) (summary order); *see also Bonds v. County of Westchester*, No. 19-CV-1712, 2020 WL 4347704, at *8 (S.D.N.Y. July 28, 2020) ("[T]he weight of authority in the Second Circuit establishes that claims of employment discrimination based on disability are not cognizable under § 1983." (citing cases)); *O'Leary v. Town of Huntington*, No. 11-CV-3754, 2012 WL 3842567, at *14 (E.D.N.Y. Sept. 5, 2012) ("Failure to provide a reasonable accommodation cannot form the basis of an Equal Protection claim.") However, most recently, the Second Circuit "[a]ssum[ed] without deciding that . . . disability discrimination claims are cognizable under Section 1983." *Bruce Committe v. Yen*, 764 F. App'x 68, 68 (2d Cir. Apr. 2, 2019) (summary order). Accordingly, this Court also assumes, without deciding, that disability discrimination claims are cognizable under Section 1983.

"satisfied the standard of plausibility by alleging differential treatment by the same defendant . . . for the same conduct . . . at the same jobsite," which allowed the Court "to plausibly infer 'a reasonably close resemblance' between the plaintiffs and the white workers.") Specifically, the SAC identifies, *inter alia*, at least two (2) African American female officers with disabilities, *i.e.*, Officer King and Officer Teesha, whose requests for a transfer close to their home were granted by Fisher "without hassles"[31], (SAC, ¶¶ 120, 122); and an African American female officer and a Hispanic female officer whose firearm privileges were revoked by Fisher, but who were not subjected to the same treatment with respect to retrieving their firearms, *i.e.*, they were allowed to bring their weapons in and were not "escorted home or followed right into the privacy of their homes." (SAC, ¶ 123). While discovery may ultimately discern characteristics of those comparators, or their circumstances, which render the resemblance between them and plaintiff less than "reasonably close," at this early stage in the litigation, plaintiff's failure to plead such fact-specific details does not bar her disparate treatment claims. As explained by the Second Circuit,

> "[t]here is no precise formula to determine whether an individual is similarly situated to comparators. . . . The question of whether parties are similarly situated is generally a fact-intensive inquiry that depends heavily on the particular context of the case at hand. . . . However, it is precisely in light of the inquiry's fact-intensive nature that we have cautioned against deciding whether two comparators are similarly situated on a motion to dismiss."

*Hu*, 927 F.3d at 97.

---

[31] Although the SAC also identifies a third African American woman, Officer Camille, whose request for a transfer close to her home was granted, the SAC does not allege that Fisher was involved in any way with that transfer request. (SAC, ¶ 121). In addition, although the SAC identifies another White female officer, like plaintiff, whose requests for "reasonable accommodation" were denied by Fisher, (*id.*, ¶ 124), there is no indication that the "reasonable accommodation" requested by that officer had anything to do with a reassignment or transfer request.

Although Magistrate Judge Tomlinson found that the inconsistency with which plaintiff alleges discrimination based on race, sex and disability "undercuts any plausibility which an exceedingly generous reading might otherwise extend to her claims," (Report at 28), she recommended dismissal of plaintiff's discrimination claims in the amended complaint based upon "the absence of any facts to plausibly suggest that race or sex played a role in any action taken against Plaintiff." (*Id.*). To the contrary, as set forth above, the SAC contains sufficient factual allegations to plausibly suggest that race played a role in the allegedly discriminatory actions of Fisher and, thus, the mere inconsistency in pleading the basis of the discrimination does not warrant dismissal at this stage of the litigation. Drawing all inferences in favor of plaintiff, and resolving all ambiguities against defendants, the allegations in the SAC are sufficient, albeit barely, to state plausible Section 1983 and NYSHRL race discrimination claims against Fisher.

ii.     Personal Involvement

"An individual may be held liable under . . . § 1983 only if that individual is personally involved in the alleged deprivation." *Littlejohn*, 795 F.3d at 314. "Personal involvement can be established by showing that:

> the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference [] by failing to act on information indicating that unconstitutional acts were occurring."

*Id.* "In addition to fulfilling one of these requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation[,] . . . [and] that a supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic." *Id.*; *see also Raspardo*, 770 F.3d at 125 ("[I]n disparate treatment cases brought pursuant to § 1983, liability for an Equal Protection Clause violation [] requires personal involvement by a defendant, who must act with discriminatory purpose."); *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) ("[L]iability for an Equal Protection Clause violation under § 1983 requires personal involvement by a defendant, who must act with discriminatory purpose.")

With respect to plaintiff's NYSHRL claims, "[a] corporate employee, though the employee has a title as an officer and is the manager or supervisor of a corporate division, . . . is not individually subject to suit with respect to discrimination . . . under New York's Human Rights Law. . . ."[32] *Doe v Bloomberg, L.P.*, --- N.E.3d ---, 2021 WL 496608, at *3 (N.Y. Feb. 11, 2021) (clarifying the standard set forth in *Patrowich v Chemical Bank*, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (N.Y. 1984)). In other words, the NYSHRL "does not render employees liable as individual employers . . . regardless of the employee's position or relationship to the employer." *Id.*

However, the NYSHRL also "states that it shall be an unlawful discriminatory practice 'for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.'" *Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004) (quoting N.Y. Exec. Law § 296(6)). The Second Circuit has interpreted that language to allow an

---

[32] The New York Court of Appeals expressly rejected, as a misinterpretation of *Patrowich v Chemical Bank*, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (N.Y. 1984), cases holding that "the 'ownership/personnel decisions' test [is] relevant to defining 'employer' in . . . the State HRL." *Bloomberg*, --- N.E.3d --- 2021 WL 496608, at *3.

individual "who actually participates in the conduct giving rise to a discrimination claim to be held liable under the NYSHRL even though that [individual] lacked the authority to either hire or fire the plaintiff." *Id.* at 158. Section 296(6) applies to any "person" and "should be construed broadly." *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 187, 54 N.Y.S.3d 360, 76 N.E.3d 1063 (N.Y. 2017). "Indeed, the purpose of subdivision (6) was 'to bring within the orbit of the bill all persons, no matter what their status, who aid or abet any of the forbidden practices of discrimination or who attempt to do so,' as well as 'to furnish protection to all persons, whether employers, labor organizations or employment agencies, who find themselves subjected from any source to compulsion or coercion to adopt any forbidden employment practices.'" *Id.* (quoting Rep. of N.Y. St. Temp. Comm'n Against Discrimination, 1945 N.Y. Legis. Doc. No. 6 at 31)).

The allegations in the SAC are sufficient at the pleadings stage to establish Fisher's personal involvement and/or actual participation in the allegedly discriminatory conduct, *i.e.*, the denial of plaintiff's requests for reassignment, the "referral" of plaintiff for a fitness for duty evaluation, the commencement and prosecution of disciplinary proceedings against her, and the manner in which her firearms were retrieved following the revocation of her firearms privileges. Accordingly, so much of defendants' motion as seeks dismissal of plaintiff's Section 1983 and NYSHRL race discrimination claims against Fisher pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.

c.      Hostile Work Environment Claims[33]

Plaintiff alleges that she was subjected to a hostile work environment because (i) she "was denied reasonable accommodation . . . [and] brought up on charges when her absences were due to legitimate compensable injuries;"[34] (ii) in 2016, "[t]he Defendant[[35]] rated Sutter's performance [for the 2015 year] as unsatisfactory . . . because she was absent due to a compensable injury;" and (iii) in February 2017, (a) plaintiff was "transported home under escort in an attempt to intimidate her which defendant [*sic*] succeeded in doing because they drove her home at a speed of 85 miles per hour in a marked car, parked in front of her home and ordered her out of the car, followed her into her home and stood in her foyer with stern observation of her living room," [36] and (b) "Fisher ordered Plaintiff to surrender her gun without any justifiable

---

[33] As relevant here, similar standards govern plaintiff's hostile work environment and retaliation claims under Title VII, Section 1983 and the NYSHRL. *See*, *e.g. Naumovski*, 934 F.3d at 221 ("[F]or claims arising under both [Section 1983 and Title VII], the level of severity to demonstrate a hostile work environment is similar."); *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) ("Hostile work environment and retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII."); *e.g. Boonmalert v. City of New York*, 721 F. App'x 29, 33-34 (2d Cir. Jan. 22, 2018) (summary order) (applying the same level of severity to the plaintiff's hostile work environment claims under, *inter alia*, Section 1983 and the NYSHRL). Accordingly, the Court's analysis with respect to plaintiff's Section 1983 hostile work environment and retaliation claims applies as well to her claims under the NYSHRL. However, the same is not true of plaintiff's NYCHRL claims, *see generally Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108-09 (2d Cir. 2013), which are analyzed separately below.

[34] Plaintiff alleges that as a result of the disciplinary proceedings, which were commenced in January 2016, she "was deprived of more than 40 hours of time that was deducted from her absences that should not have been marked as deductible time . . . [and] lost money, opportunities for promotion, and was suspended from work without any justifiable reason." (Plf. Opp. at 7). However, plaintiff concedes that defendants "restore[d] the lost time back to Plaintiff." (*Id.*; *see also* SAC, ¶¶ 63-64, 74).

[35] Although plaintiff vaguely refers to "[t]he Defendant" in her opposition, in the SAC, plaintiff asserts, *inter alia*, that "[i]n the evaluation *Defendant U.C.S* improperly punished Sutter because she was out sick *due to her disabilities;*" and that it was "George Cafasso the Chief Clerk" who issued the evaluation and "improperly us[ed] absences due to workers compensation and illness against Sutter." (SAC, ¶¶ 72-73) (emphasis added). Plaintiff does not claim that the unsatisfactory evaluation was issued because of her sex or race; nor is there any basis for imputing the issuance of the negative evaluation upon Fisher.

[36] Although plaintiff refers only to the "defendant" in her opposition, the SAC alleges: that after reporting to Posillipo's office for the second time, plaintiff "was informed that she will be escorted home to Suffolk County, Long Island;" that Captain Posillipo and Dibello summoned MSP Officers to take custody of Sutter and drive her to

reason[37] . . . [and] thereafter sent plaintiff to a medical and psychiatric examination[,] . . . even though the psychiatric examination was unwarranted."[38] (Plf. Opp. at 7-8).

"In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity;

---

her home;" that plaintiff "drove with the MSP Officers in marked Patrol cars to a train station . . . then to her home;" that "[t]he officers drove the car for most of the ride from Brooklyn at 85 miles per hour;" that "[o]n arrival at Sutter's residence the Officers created a scene causing neighbors to watch through their windows and later approached [sic] her fiancé to ask what was happening;" that "Brown entered Sutter's home without requesting any permission [or a warrant] . . . [and] stood inside by the stairs watching Sutter . . . and his eyes looked around the interior of her house;" that "Sutter was then driven back to Manhattan [sic] from her house;" that "[s]he was told by her union representative, Ted Kanton that she had to go [with the MSP officers from Brooklyn to her home in Suffolk County] because judge fisher [sic] ordered it;" that "[t]he Defendants [presumably the same MSP Officers who had driven plaintiff to her home] forced Sutter to return to Manhattan with them at an unreasonable speed of 85 miles per hour which put Sutter in fear of her safety and her life;" that "Plaintiff told the officers that drove her home that their speed was excessive and she was concerned for her safety but they continued to drive at about 85 miles per hour on their way home and drove also at a reckless 85 miles per hour on their way back while they ignored pleas by Plaintiff to slow down;" and that "[g]iven the reckless speed of the officers who drove Plaintiff to secure the weapon and back and their dismissive attitude to her several pleas to slow down it reasonable [sic] to conclude that they intended to put her in fear of her safety and she was in fear of her safety." (SAC, ¶¶ 92, 95-101, 112-115). Even assuming the truth of the allegation that Fisher ordered plaintiff to be escorted to her home to retrieve a firearm after her firearms privileges were revoked, there is no specific basis for imputing the conduct of the MSP officers, who are not named as defendants in this case, to Fisher. *See generally Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) ("[W]hen the harassment is attributable to a coworker, rather than a supervisor, [] the employer will be held liable only for its own negligence. . . . Accordingly, [the plaintiff] must demonstrate that her employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.") Although plaintiff also alleges that "Fisher and the officers that went to Plaintiff's home abused their powers and privileges in invading the home and person of Sutter the way they did," (SAC, ¶ 107); and that "Fisher and her agents had no warrant and have no authority to authorize a warrantless entry and search of Plaintiffs [sic] home," (*id.*, ¶ 108), such conclusory allegations are not entitled to the presumption of truth. There are also no factual allegations from which it may reasonably be inferred that the officers' or Brown's conduct occurred because of plaintiff's sex, disability or race.

[37] Since plaintiff identified two (2) non-White women whose firearms privileges were also revoked by Fisher, (SAC, ¶ 123), she cannot establish that Fisher's decision to revoke her firearms privileges was because of plaintiff's race; nor does she assert any factual allegations from which it may reasonably be inferred that the decision was because of plaintiff's sex or disability.

[38] Plaintiff also contends for the first time in her opposition that "Defendants refused to return her weapon to her;" that "[a]lthough Defendants are aware that Plaintiff will not be able to transfer to another location while on gun restriction, they nevertheless refused to return her weapon;" and that she "has made request for the return of her weapon; Defendants simply refuse to return it to her." (Plf. Opp. at 8). However, no such allegations are contained in the SAC. The SAC alleges that "[t]he forced trip to and from her home, the disciplinary charges for lateness that was ascribed to illness, the denial of reasonable accommodation, denial of FMLA, the seizure of Plaintiff's [sic], negative performance evaluation, rating her low for getting sick, and refusal to transfer her despite recognizing the need to do so, and referring her for unnecessary medical and mental health evaluations would qualified [sic] as . . . creation of hostile work environment." (SAC, ¶ 130).

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Morgan*, 536 U.S. at 116, 122 S. Ct. 2061; *accord Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 387 (2d Cir. 2020); *see also Naumovski*, 934 F.3d at 212 ("[A] plaintiff claiming a hostile environment must plausibly allege offensive conduct based on sex [or other protected characteristic] that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.") "[W]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Morgan*, 536 U.S. at 116, 122 S. Ct. 2061 (U.S. 2002); *see also Rasmy*, 952 F.3d at 387 ("An employer violates Title VII when the workplace is permeated with discriminatory intimidation, ridicule, and insult [] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment [] so long as there is a basis for imputing the conduct that created the hostile environment to the employer.") "[A] plaintiff need not show that her hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Redd v. New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012); *Rodriguez v. County of Nassau*, 830 F. App'x 335, 339 (2d Cir. Oct. 8, 2020) (summary order).

The "sufficiently severe or pervasive" standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work

environment to be abusive." *Littlejohn*, 795 F.3d at 321; *see also Kunik v. New York City Dep't of Educ.*, --- F. App'x ---, 2021 WL 137882, at *2 (2d Cir. Jan. 15, 2021), as amended (Jan. 26, 2021) (summary order) ("The plaintiff must establish not only that she subjectively perceived her work environment to be abusive, but also that a reasonable person would find it hostile or abusive.") "As to the objective measure of abuse, there is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." *Raniola v. Bratton*, 243 F.3d 610, 620 (2d Cir. 2001). "To succeed, a plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id.* at 630; *see also Redd*, 678 F.3d at 175 ("[A] plaintiff need not show that her hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions."); *Feingold*, 366 F.3d at 150 ("As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. . . . However, a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace.") "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993); *accord Littlejohn*, 795 F.3d at 321. "Ultimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient

to support the conclusion that she was faced with harassment [] of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); *accord Feingold*, 366 F.3d 138, 150 (2d Cir. 2004).

"To be actionable under the Equal Protection Clause, moreover, a plaintiff must show that the abusive conduct occurred because of her membership in a protected class." *Kunik*, --- F. App'x ---, 2021 WL 137882, at *2. Thus, "[t]o state a claim for a hostile work environment, . . . a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive-- that is, [] creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex [or other protected characteristic]." *Patane*, 508 F.3d at 113; *accord Falu v. County of Orange*, 814 F. App'x 655, 658-59 (2d Cir. June  2, 2020) (summary order); *Rivera v. JP Morgan Chase*, 815 F. App'x 603, 607 (2d Cir. May 29, 2020) (summary order).

Even drawing all reasonable inferences in plaintiff's favor, the SAC does not plausibly allege that her work environment was permeated with discrimination based on her race, disability or sex; nor does it allege any facts showing that "discriminatory intimidation, ridicule, and insult" was "sufficiently severe or pervasive" as to alter the conditions of her employment or create an abusive working environment. None of the challenged conduct attributable to Fisher or any other individual defendant bears any apparent connection to plaintiff's sex or disability. *See, e.g. Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 13 (2d Cir. Aug. 21, 2013) (summary order) (affirming dismissal of the plaintiff's hostile work environment claims where

the plaintiff's allegations consisted "of several isolated incidents over the course of a two-year

period that do not rise to the level of frequency or severity necessary to establish a hostile work

environment claim" and the plaintiff had "not presented sufficient factual allegations to suggest

that the harassment she faced was rooted in her sex or any other protected characteristic.")

Although plaintiff has alleged that other women of different races were treated more favorably

than she in terms of how their requests for reasonable accommodations and FMLA leave were

handled and how their firearms were retrieved after the firearms privileges were revoked, such

conduct is not sufficiently pervasive or severe to constitute a hostile work environment.

Plaintiff's allegations about the circumstances that occurred after her firearms privileges were

revoked, *i.e.*, being "locked up in a room with Captain Posillipo and Dibello and subjected to a

wide range of questions about her firearms and she was told she was not free to leave" for

approximately forty-five (45) minutes, (SAC, ¶¶ 80, 91); riding in a car with officers going

eighty-five (85) miles per hour, (*id.*, ¶¶ 97, 114); the officers "creat[ing] a scene" at her home,

(*id.*, ¶ 98); and Brown entering her home without permission, (*id.*, ¶¶ 99-100), are not

sufficiently severe, either alone or in combination, as to alter her working conditions, and are

limited both in time and scope to a single day in February 2017. Such "[p]eriodic and episodic

incidents are not sufficient to establish hostile work environment claims."[39] *Figueroa v. Johnson*,

109 F. Supp. 3d 532, 553 (E.D.N.Y. 2015), *aff'd*, 648 F. App'x 130 (2d Cir. May 10, 2016)

(summary order); *accord Batchelor v. City of New York*, 12 F. Supp. 3d 458, 478 (E.D.N.Y.

2014); *see also Das v. Consol. Sch. Dist. of New Britain*, 369 F. App'x 186, 189-90 (2d Cir. Mar.

---

[39] Nor is there "a specific basis for imputing" such conduct, *i.e.*, questioning plaintiff in a locked room, driving in excess of the speed limit, creating a scene at plaintiff's home and entering her home without permission, to Fisher. *See generally Duch*, 588 F.3d at 762; *Feingold*, 366 F.3d at 149-50.

10, 2010) (summary order) ("Generally, unless an incident of harassment is sufficiently severe, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.") Accordingly, the branches of defendants' motion seeking dismissal of plaintiff's Section 1983 and NYSHRL hostile work environment claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's Section 1983 and NYSHRL hostile work environment claims are dismissed in their entirety with prejudice for failure to state a plausible claim for relief.

### d.     Retaliation Claims

Initially, plaintiff fails to oppose, or otherwise address, so much of defendants' motion as seeks dismissal of her retaliation claims and, thus, has seemingly abandoned those claims.

"[R]etaliation claims alleging an adverse action because of a complaint of discrimination are actionable under § 1983," *Vega*, 801 F.3d at 80, because, *inter alia*, "an employer's retaliatory action in response to an employee's participation in discrimination investigations and proceedings constitute[s] an 'impermissible' reason to treat an employee differently for purposes of the Equal Protection Clause . . . [and] [w]hen a supervisor retaliates against an employee because he complained of discrimination, the retaliation constitutes intentional discrimination against him for purposes of the Equal Protection Clause." *Id.* at 81-82. "[F]or a retaliation claim under § 1983 to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination." *Id.* at 91; *accord Duplan*, 888 F.3d at 625.

Moreover, "[t]o adequately plead causation, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action. [] 'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Duplan*, 888 F.3d at 625; *see also Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. Feb. 29, 2016) (summary order) ("To plead causation, the plaintiff must plausibly plead a connection between the adverse act and her engagement in protected activity. . . . Moreover, the plaintiff must allege that the retaliation was the 'but-for' cause of the employer's adverse action, *i.e.*, that the adverse action would not have occurred in the absence of the retaliatory motive.") "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Duplan*, 888 F.3d at 625. However, "[a]lthough temporal proximity between protected activity and adverse employment action can support an inference of discriminatory intent, . . . the Supreme Court has suggested that the temporal proximity must be 'very close.'" *Riddle*, 640 F. App'x at 79 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)).

"Retaliation occurs when an employer takes action against an employee . . . because he engaged in protected activity-- complaining about or otherwise opposing discrimination." *Vega*, 801 F.3d at 91; *see also Massaro v. Bd. of Educ. of City Sch. Dist. of City of New York*, 774 F. App'x 18, 21 (2d Cir. May 21, 2019) (summary order) ("As with all retaliation claims, a plaintiff must show that adverse action was taken because of protected activity."); *Rivas v. New York State Lottery*, 745 F. App'x 192, 194 (2d Cir. Dec. 18, 2018) (summary order), *cert. denied*, 140 S. Ct. 43, 205 L. Ed. 2d 35 (2019) ("For a . . . retaliation claim to survive a motion to dismiss,

the plaintiff must plausibly allege that the employer took an adverse employment action against her because she opposed any unlawful employment practice.") "To establish that she engaged in protected activity, [the plaintiff] need not establish that the conduct she opposed was actually a violation of Title VII [or other unlawful employment practice], but only that she possessed a good faith, reasonable belief that the underlying employment practice was unlawful. . . ." *Summa v. Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013); *see also Bamba v. Fenton*, 758 F. App'x 8, 12 (2d Cir. Dec. 4, 2018) (summary order), *cert. denied*, 139 S. Ct. 2757, 204 L. Ed. 2d 1136 (2019) ("To qualify as a protected activity, an employee must have a good faith, reasonable belief that the challenged actions violated the law.") "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998); *accord Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14-15 (2d Cir. 2013).

Moreover, "implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII [or other unlawful discrimination]." *Galdieri-Ambrosini*, 136 F.3d at 292; *accord Kelly*, 716 F.3d at 15. "A mere mention of feeling 'discriminated against' is not enough to put an employer on notice of a protected complaint if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory." *Moore v. City of New York*, 745 F. App'x 407, 409 (2d Cir. Nov. 2, 2018) (summary order).

Protected activity includes "the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including making complaints to management,

66

writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges." *Matima v. Celli*, 228 F.3d 68, 78-79 (2d Cir. 2000). However, "generalized grievances about an unpleasant or even harsh work environment, without more, do not reasonably alert an employer of *discriminatory* conduct and therefore fail to rise to the level of protected activity." *Green v. Mount Sinai Health Sys., Inc.*, 826 F. App'x 124, 125 (2d Cir. Oct. 22, 2020) (summary order) (emphasis in original); *see also Taylor v. Dollar Tree Stores*, No. 18-CV-1306-SJB, 2020 WL 2478663, at *14 (E.D.N.Y. May 13, 2020) ("[I]nformal complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII. Generalized complaints about a supervisor's treatment are insufficient. . . . Complaints centered on general allegations of harassment unrelated to race [or other protected characteristic] are not protected activity.")

The SAC does not allege any facts from which it may reasonably be inferred that plaintiff engaged in any protected activity, *i.e.*, that she ever complained about or otherwise opposed unlawful discrimination. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 and NYSHRL retaliation claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's Section 1983 and NYSHRL retaliation claims are dismissed in their entirety with prejudice for failure to state a plausible claim for relief.

e.     Fourth Amendment Claims

Initially, plaintiff does not oppose, or otherwise address, so much of defendants' motion as seeks dismissal of her Section 1983 claim alleging that Fisher violated her Fourth Amendment

rights or her remaining Fourth Amendment claim in the sixth cause of action alleging that Brown "illegally entered [her] home, looking around the home while he stationed himself by the stairs without permission and without a warrant." (SAC, ¶ 161). Thus, plaintiff has seemingly abandoned those claims.

In any event, the SAC fails to state a plausible claim against either Brown or Fisher for a violation of plaintiff's Fourth Amendment rights. "A 'search' occurs for purposes of the Fourth Amendment if the police seek information by intruding on a person's reasonable expectation of privacy or by means of trespassing upon one's person, house, papers, or effects." *United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020); *see also Florida v. Jardines*, 569 U.S. 1, 5, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013) ("When the Government obtains information by physically intruding on persons, houses, papers, or effects, a 'search' within the original meaning of the Fourth Amendment has undoubtedly occurred."); *United States v. Jones*, 565 U.S. 400, 406, n. 3, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012) ("Where . . . the Government obtains information by physically intruding on a constitutionally protected area, . . . a search [within the original meaning of the Fourth Amendment] has undoubtedly occurred.")

The allegations in the SAC are insufficient to show Brown's personal involvement in any conduct which violated plaintiff's Fourth Amendment rights. The SAC does not allege any facts from which it may reasonably be inferred that Brown entered plaintiff's home and "his eyes looked around the interior of her house," (SAC, ¶ 100), in an attempt to find anything or to obtain information for any purpose. Brown's conduct in accompanying plaintiff into her home and remaining "stationed" by the stairs with his eyes open until she had recovered her firearm does not constitute a search for purposes of the Fourth Amendment. *See, e.g. Jones*, 565 U.S. at

408, n. 5, 132 S. Ct. 945 ("Trespass alone does not qualify [as a Fourth Amendment violation], but there must be conjoined with that . . . an attempt to find something or to obtain information. . . . A trespass on 'houses' or 'effects,' or a *Katz* invasion of privacy, is not alone a search unless it is done to obtain information.")

The allegations in the SAC are also insufficient to show Fisher's personal involvement in any conduct which violated plaintiff's Fourth Amendment rights. The SAC is devoid of any factual allegations indicating that Fisher directly participated in any Fourth Amendment violation; failed to remedy any such violation after being informed of it through a report or appeal; created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; was grossly negligent in supervising subordinates who committed the wrongful acts; or exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. Nor are there any allegations in the SAC from which it may reasonably be inferred that Fisher's actions were the proximate cause of any deprivation of plaintiff's Fourth Amendment rights. Accordingly, the branches of defendants' motion seeking dismissal of plaintiff's Section 1983 claim against Fisher based upon a deprivation of her Fourth Amendment rights (part of fifth cause of action) and plaintiff's Fourth Amendment claim against Brown (remaining sixth cause of action) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are granted and those claims are dismissed in their entirety with prejudice for failure to state a claim for relief.[40]

---

[40] Accordingly, the sixth cause of action in the SAC is dismissed in its entirety with prejudice.

5.    NYCHRL Claims

"[C]ourts must analyze NYCHRL claims separately and independently from any federal

and state law claims, . . . construing the NYCHRL's provisions broadly in favor of

discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik*,

715 F.3d at 109; *accord Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015). The

NYCHRL makes it an unlawful discriminatory practice, *inter alia*, "[f]or an employer or an

employee or agent thereof, because of the actual or perceived . . . race, creed, color, national

origin, gender, [or] disability . . . of any person: . . . [t]o discriminate against such person . . . in

terms, conditions or privileges of employment." N.Y.C. Admin. Code 8-107(1)(a)(3). "The

statute also prohibits 'any person' from aiding and abetting discrimination (id. § 8–107[6] ) or

from retaliating against another person for engaging in certain protected activities (id. § 8–107[7]

)." *Bloomberg*, --- N.E.3d ---, 2021 WL 496608, at *2.


a.    Discrimination and Hostile Work Environment Claims

"To establish a . . . discrimination claim under the NYCHRL, the plaintiff need only

demonstrate . . . that she has been treated less well than other employees because of her gender

[or other protected characteristic]." *Mihalik*, 715 F.3d at 110; *accord Bohlinger v. Abbott*

*Laboratories Inc.*, --- F. App'x ---, 2021 WL 446311, at * 1 (2d Cir. Feb. 9, 2021) (summary

order). With respect to disparate treatment claims, "[t]o prevail on liability, the plaintiff need

only show differential treatment-- that she is treated 'less well'-- because of a discriminatory

intent." *Mihalik*, 715 F.3d at 110 and n. 7; *accord Szewczyk v. Saakian*, 774 F. App'x 37, 38 (2d

Cir. July 30, 2019) (summary order). "The plaintiff still bears the burden of showing that the

conduct is caused by a discriminatory motive. . . . She must show that she has been treated less well at least in part 'because of her gender [or other protected characteristic].'" *Mihalik*, 715 F.3d at 110.

Moreover, the primary issue with respect to hostile work environment claims under the NYCHRL, "as in other terms-and-conditions cases, is whether the plaintiff . . . has been treated less well than other employees because of her gender [or other protected characteristic]." *Williams v New York City Housing Auth.*, 61 A.D.3d 62, 78, 872 N.Y.S.2d 27 (N.Y. App. Div. 2009), *lv. denied*, 13 N.Y.3d 7029, 885 N.Y.S.2d 716, 14 N.E.2d 365 (N.Y. 2009); *see also Lowe v. Mount Sinai Health Sys., Inc.*, 764 F. App'x 120, 121, n. 2 (2d Cir. Apr. 19, 2019) (summary order) ("The 'severe and pervasive' standard does not apply to claims brought pursuant to the NYCHRL. . . . Under the NYCHRL, liability turns on whether the plaintiff was treated less well than other employees because of her protected status.")

Although plaintiff's NYCHRL claims are asserted against all of the individual defendants, she seemingly abandoned her claims against all of the individual defendants except Fisher, and her sex discrimination claims in their entirety, because her opposition only argues that the SAC alleges a plausible NYCHRL claim against Fisher for race and disability discrimination and hostile work environment. (Plf. Opp. at 11). The allegations in the SAC are only sufficient to state a plausible claim that Fisher treated plaintiff less well than non-White officers in terms of her requests for reassignment, her "referral" for a fitness for duty evaluation, the commencement of disciplinary proceedings against her, and how the revocation of her firearms privileges was handled. The SAC is bereft of any factual allegations from which it may reasonably be inferred that any of the individual defendants, including Fisher, treated plaintiff

71

less well than other employees because of her sex or disability; or that Dibello, Posillipo, DeMarco, Brown or Salverno treated plaintiff less well than other employees because of her race. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's NYCHRL discrimination and hostile work environment claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted to the extent that, with the exception of plaintiff's NYCHRL claims against Fisher alleging discrimination and hostile work environment based on race, plaintiff's NYCHRL discrimination and hostile work environment claims are dismissed in their entirety with prejudice for failure to state a claim for relief.

### b.   Retaliation Claims

As with the Section 1983 and NYSHRL retaliation claims, plaintiff seemingly abandoned her NYCHRL retaliation claims by failing to oppose, or otherwise address, the branch of defendants' motion seeking to dismiss those claims.

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112; *accord Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 8 (2d Cir. Mar. 29, 2017)  (summary order). "'[O]pposing any practice' can include situations where a person, before the retaliatory conduct occurred, merely made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment of the victim was wrong." *Mihalik*, 715 F.3d at 112. Moreover, "a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by . . . retaliatory motives." *Id.* at 113; *accord*

*Ya-Chen Chen*, 805 F.3d at 76; *Krasner v. City of New York*, 580 F. App'x 1, 3 (2d Cir. Aug. 28,

2014) (summary order).

The SAC does not allege any facts from which it may reasonably be inferred that plaintiff

took any action opposing defendants' discrimination. Accordingly, the branch of defendants'

motion seeking dismissal of plaintiff's NYCHRL retaliation claims pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure is granted and plaintiff's NYCHRL retaliation claims are

dismissed in their entirety with prejudice for failure to state a plausible claim for relief.


### 6.    Seventh Cause of Action

Plaintiff's seventh cause of action alleges, *inter alia*, that the non-party "MSP officers,

agents of UCS, assaulted the Plaintiff through their unsafe driving." (SAC, ¶ 164).

Initially, plaintiff fails to oppose, or otherwise address, so much of defendants' motion as

seeks dismissal of seventh cause of action and, thus, has seemingly abandoned this claim.

"New York defines 'assault' as an intentional placing of another person in fear of

imminent harmful or offensive contact." *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir.

2006); *accord Williams v. Nat'l R.R. Passenger Corp. (Amtrak)*, 830 F. App'x 46, 48 (2d Cir.

Nov. 25, 2020) (summary order); *see also Rivera v State*, 34 N.Y.3d 383, 389, 119 N.Y.S.3d

749, 142 N.E.3d 641 (N.Y. 2019) ("Battery is the unjustified touching of another person, without

that person's consent, with the intent to cause a bodily contact that a reasonable person would

find offensive; assault involves putting a person in fear of a battery.") "While actual contact is

not required, there must be some manifestation that creates reasonable apprehension of harmful

physical contact." *Cunningham v. United States*, 472 F. Supp. 2d 366, 380 (E.D.N.Y. 2007),

*opinion corrected* (Feb. 2, 2007). The factual allegations in the SAC are insufficient to state a plausible claim that any of the individual defendants or non-party MSP officers acted in a way that placed her "in fear of imminent harmful or offensive contact."

Moreover, to state a claim for civil assault, the plaintiff must allege that the defendant intended either to inflict personal injury or to arouse apprehension of harmful or offensive bodily contact." *Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F. Supp. 2d 506, 528 (S.D.N.Y. 2000); *accord Garcia v. Cnty. of Westchester*, No. 11-CV-7258, 2017 WL 6375791, at *28 (S.D.N.Y. Dec. 12, 2017). The SAC is devoid of any factual allegations from which it may reasonably be inferred that any of the individual defendants or non-party MSP officers intentionally placed plaintiff in a state of apprehension during the ride to and from plaintiff's home.

In addition, the apprehension the plaintiff alleges she suffered as a result of the defendant's conduct "must be reasonable." *Carroll v. Bayeriche Landesbank*, 125 F. Supp. 2d 58, 65 (S.D.N.Y. 2000); *see also Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 368 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 7 (2d Cir. July 2, 2009) ("Under New York law, a civil assault action lies where there is an intentional attempt or threat to do physical injury or commit a battery, . . . thereby placing an individual in reasonable apprehension of bodily harm.") The factual allegations in the SAC are insufficient to state a plausible claim that the conduct of any of the individual defendants or the non-party MSP officers placed plaintiff in reasonable apprehension of imminent bodily harm, particularly given plaintiff's duties and experience. The Court agrees with Magistrate Judge Tomlinson's conclusion that "[t]he connection between the Defendants' conduct and the risk of physical contact – presumably through the risk of a traffic

accident and resulting bodily harm – is simply too attenuated to be considered reasonable." (Report at 54). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's seventh cause of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's seventh cause of action is dismissed in its entirety with prejudice for failure to state a claim for relief.

### 7. Qualified Immunity

Defendants contend, *inter alia*, that Fisher is entitled to qualified immunity with respect to any remaining Section 1983, NYSHRL and NYCHRL claims against her, *i.e.*, plaintiff's Section 1983 and NYSHRL race discrimination claims against Fisher and NYCHRL claims against Fisher alleging discrimination and hostile work environment because of race.

#### a. Immunity with Respect to Remaining Section 1983 Claims

With respect to plaintiff's remaining Section 1983 claims,"[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido, Cal. v. Emmons*, --- U.S. ---, 139 S. Ct. 500, 503, 202 L.Ed.2d 455 (2019); *see also Dist. of Columbia v. Wesby*, --- U.S. ---, 138 S. Ct. 577, 589, 199 L.Ed.2d 453 (2018) ("Under our precedents, officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.") "[T]he clearly established right must be defined with specificity[;] . . . [not] at a high level of generality." *Emmons*, --- U.S. ---, 139 S. Ct. at 503. "An officer cannot be said to have violated a

clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* As explained by the Supreme Court,

> "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, . . . which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. . . . It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. . . . Otherwise, the rule is not one that every reasonable official would know. . . .
>
> The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. . . . This requires a high degree of specificity. . . . We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. . . . A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established."

*Wesby*, --- U.S. ---, 138 S. Ct. at 589-90.

"Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, --- U.S. ---, 138 S. Ct. 1148, 1152, 200 L.Ed.2d 449 (2018); *see also Booker v. Graham*, 974 F.3d 101, 106 (2d Cir. 2020) ("In making this determination [of whether a purported right was 'clearly established'], we consider Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct.") "Although [Supreme Court] caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela*, --- U.S. ---, 138 S. Ct. at 1152. "In other words, immunity protects all but the plainly incompetent or

76

those who knowingly violate the law." *Id.*; *accord Wesby*, --- U.S. ---, 138 S. Ct. at 589.

Thus, to determine whether a right is clearly established, the court must consider: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Matusick v. Erie County Water Auth.*, 757 F.3d 31, 60 (2d Cir. 2014). "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007); *see also Berg v. Kelly*, 897 F.3d 99, 109 (2d Cir. 2018) ("[T]he qualified immunity defense [] protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful.") Accordingly, "[w]hen a plaintiff shows facts making out a violation of a constitutional right, a defendant may establish the affirmative defense of qualified immunity by demonstrating that (1) the right was not 'clearly established' or (2) even if the right was 'clearly established,' it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Elder v. McCarthy*, 967 F.3d 113, 131 (2d Cir. 2020).

"The matter of whether a right was clearly established at the pertinent time is a question of law. In contrast, the matter of whether a defendant official's conduct was objectively reasonable, *i.e.*, whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact." *Higazy*, 505 F.3d at 170. "[A]lthough a conclusion that the defendant official's conduct was objectively reasonable as a

matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual questions must be resolved by the factfinder." *Higazy*, 505 F.3d at 170; *see also Berg*, 897 F.3d 99, at 109-10 ("Whether a defendant official's conduct was objectively reasonable, *i.e.*, whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact. . . . Even so, the objective legal reasonableness of an officer's action can be decided as a matter of law in those cases where the facts concerning the availability of the defense are undisputed or viewed most favorably to plaintiffs.")

As set forth above, the specific right at issue, *i.e.*, the right to be free from race discrimination in the workplace, *i.e.*, of an individual in public employment not to be treated less favorably in the terms, conditions and privileges of her employment because of race, was clearly established at the time of the allegedly discriminatory conduct of Fisher. *See, e.g. Griffin v. New York*, 122 F. App'x 533, 534-35 (2d Cir. Dec. 17, 2004) (summary order) (finding that the plaintiff's right to be free from the defendant's allegedly adverse employment actions based on race was clearly established); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) ("Norville's race discrimination claim rests on her allegation that the hospital refused to accommodate her disability despite having made job accommodations for two disabled white nurses. . . . A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably.") Moreover, assuming the truth of the factual allegations in the SAC, as required on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, it cannot be said at this stage of the litigation that Fisher's conduct was objectively reasonable as a matter of law. Accordingly,

the branch of defendants' motion seeking dismissal of plaintiff's Section 1983 race

discrimination claims against Fisher based upon the doctrine of qualified immunity is denied,

without prejudice to renewal, if warranted, upon a motion for summary judgment.

> b.    Immunity with Respect to Remaining State Law Claims

With respect to plaintiff's remaining claims under the NYSHRL and NYCHRL, "the

principles of New York law governing the availability of qualified immunity for violations of

state law differ somewhat from the above federal principles applicable to violations of federal

law." *Lore v. City of Syracuse*, 670 F.3d 127, 165 (2d Cir. 2012). "In contrast to the federal

standard, which is objectively reasonable reliance on existing law, . . . the New York standard for

entitlement to qualified immunity has both objective and subjective components." *Id.* at 166.

"The objective component distinguishes between official acts that are 'discretionary' and those

that are 'ministerial[,]' . . . making such immunity available only with respect to those that are

discretionary." *Id.* "The subjective component makes qualified immunity entirely unavailable if

there are undisturbed findings of bad faith." *Id.*; *see also Alhovsky v. Paul*, 406 F. App'x 535,

537 (2d Cir. Jan. 19, 2011) (summary order) ("New York law ... grant[s] government officials

qualified immunity on state-law claims except where the officials' actions are undertaken in bad

faith or without a reasonable basis."); *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006) (same);

*Blouin ex rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 364 (2d Cir. 2004) ("The New York

courts recognize the defense of qualified immunity to shield the government official from

liability unless that action is taken in bad faith or without a reasonable basis.") "Government

officials or employees who make decisions that are discretionary, but not judicial in nature, are

entitled to qualified immunity unless there is bad faith or the action is taken without a reasonable

basis, even where a claim is based on a violation of the NYSHRL." *Russell v. Westchester Cmty.*

*Coll.*, No. 16-CV-1712, 2017 WL 4326545, at *13 (S.D.N.Y. Sept. 27, 2017); *see also Dawson*

*v. County of Westchester*, 351 F. Supp. 2d 176, 200 (S.D.N.Y. 2004) ("[G]overnment officials or

employees who make decisions that are discretionary, but not judicial in nature, are entitled to

qualified immunity unless there is bad faith or the action is taken without a reasonable basis,

even where a claim is based on a violation of the NYSHRL.")

While Fisher purportedly made the discretionary decisions to deny plaintiff's requests for

reassignment, commence disciplinary proceedings against plaintiff, refer plaintiff for a fitness for

duty evaluation, and revoke her firearms privileges and immediately retrieve her firearms, as set

forth above, the SAC plausibly alleges that those decisions were taken with discriminatory intent

and, thus, in bad faith. Therefore, the branch of defendants' motion seeking to dismiss plaintiff's

remaining NYSHRL race discrimination claims and NYCHRL discrimination and hostile work

environment claims based on race on the grounds that she is entitled to qualified immunity with

respect to those claims is denied in its entirety, without prejudice to renewal, if warranted, upon a

motion for summary judgment.

IV.    Conclusion

For the reasons set herein, (i) the branch of defendants' motion seeking to dismiss

plaintiff's claims against UCS pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of

Civil Procedure is granted and plaintiff's claims against UCS are dismissed in their entirety for

lack of personal jurisdiction and insufficient service of process, and (ii) the branches of

defendants' motion seeking to dismiss plaintiff's claims in the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted to the extent set forth above, plaintiff's standalone Section 1981 claim in the fourth cause of action and her third, sixth, seventh and eight causes of action are dismissed in their entirety with prejudice for failure to state a claim for relief; plaintiff's NYSHRL claim (first cause of action) is dismissed with prejudice for failure to state a claim for relief, except for plaintiff's NYSHRL race discrimination claim against Fisher; plaintiff's NYCHRL claim (second cause of action) is dismissed with prejudice for failure to state a claim for relief, except for plaintiff's NYCHRL claims against Fisher alleging discrimination and hostile work environment because of race; and plaintiff's Section 1983 claims (fifth cause of action), including her Section 1981 claim in the fourth cause of action as construed to be a Section 1983 claim, are dismissed with prejudice for failure to state a claim for relief, except for plaintiff's Section 1983 claims against Fisher alleging race discrimination in violation of her equal protection rights under the Fourteenth Amendment. For the sake of clarity, the claims against the individual defendants, except Fisher, are dismissed in their entirety with prejudice; and only plaintiff's claims against Fisher for race discrimination under Section 1983 and the NYSHRL, and for discrimination and hostile work environment based on race under the NYCHRL, remain in this action.

SO ORDERED.

_____/s/_____
Sandra J. Feuerstein
United States District Judge

Dated: March 10, 2021
        Central Islip, New York